## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 83** |

**CERTIFICATION OF COUNSEL REGARDING DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING THE MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO AN ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS, AND (D) GRANTING RELATED RELIEF**

On April 17, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving*

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101).  The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

*the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief*
[Docket No. 83] (the "Motion") with the United States Bankruptcy Court for the District of
Delaware (the "Court").  A proposed order (the "Proposed Order") was attached to the Motion as
Exhibit A.

Subsequent to filing the Motion, the Debtors received informal comments to the
Motion from the Office of the United States Trustee for the District of Delaware (the "U.S.
Trustee"), and the Derivative Litigation Plaintiffs[2] filed *The Derivative Litigation Plaintiffs'
Objection to the Bidding Procedures Motion* [Docket No. 142] (the "Derivative Litigation
Plaintiffs' Objection").  No other comments or objections were received.

On May 7, 2024, the Debtors filed the *Debtors' Reply to the Derivative Litigation
Plaintiffs' Objection to the Bidding Procedures Motion* [Docket No. 163], which attached a revised
proposed form of order approving the Motion (the "Revised Proposed Order").

On May 8, 2024, the Court held a hearing to consider the Motion (the "Hearing").
At the Hearing, the Court indicated that it would approve the Motion, subject to certain revisions
stated on the record to resolve the Derivative Litigation Plaintiffs' Objection.  A copy of the further
Revised Proposed Order reflecting these revisions is attached hereto as **Exhibit A** (the "Further
Revised Proposed Order").  For the convenience of the Court and interested parties, a blackline
comparing the Further Revised Proposed Order to the Revised Proposed Order is attached hereto
as **Exhibit B**.

The Debtors submit that the Further Revised Proposed Order is appropriate and
consistent with the relief requested in the Motion and the Court's ruling at the Hearing.  The U.S.

---

[2]   The term "Derivative Litigation Plaintiffs" has the meaning set forth in the *Verified Statement of Paul, Weiss,
Rifkind, Wharton & Garrison LLP and Landis Rath & Cobb LLP Pursuant to Federal Rule of Bankruptcy
Procedure 2019* [Docket No. 111].

31629754.1

Trustee and the Derivative Litigation Plaintiffs do not object to entry of the Further Revised Proposed Order. Accordingly, the Debtors respectfully request that the Court enter the Further Revised Proposed Order at its earliest convenience without further notice or hearing.

Dated: May 9, 2024
Wilmington, Delaware

*/s/ Ashley E. Jacobs*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:     sbeach@ycst.com
     ajacobs@ycst.com
     jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:     (310) 595-9500
Facsimile:     (310) 595-9501
Email:     sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:     cpersons@sidley.com
     jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:     nelner@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*

# EXHIBIT A

## Further Revised Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
|  | **Docket Ref. No. 83 & 101** |

### ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING THE MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion"),[2] of the Debtors in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), seeking, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), an order (this "Order") (a) approving certain bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") for the sale or sales (collectively, the "Sale") of all or substantially all of the Debtors' assets (the "Assets"), or any portion thereof, and the form and manner of notice thereof substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"),

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101). The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

(b) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (c) scheduling an Auction and a Sale Hearing in connection with the Sale, and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice,"); this Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); and this Court having considered the statements of counsel, the First Day Declaration, and the Gupta Declaration in support of the Motion, and the evidence presented at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.     This Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of these Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, this Court granting the Motion to the extent provided in this Order,

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

including (a) approving the Bidding Procedures, attached hereto as **Exhibit 1**, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as **Exhibit 2**, (b) scheduling an Auction and a Sale Hearing in connection with the Sale, and (c) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form of the Assumption and Assignment Notice, attached hereto as **Exhibit 3**.

C.      Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.      In accordance with Local Rule 6004-1, the Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.      The proposed Sale Notice, and the Assumption and Assignment Notice, as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other or further notice shall be required for the Sale or the assumption and assignment of the Assumed Contracts.

F.      The process for the granting of any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (a) the identification of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the

Stalking Horse Bidder's parent company or sponsor); (b) the amount of the Stalking Horse Bid (defined below) and what portion (if any) is cash; (c) to the best of the Debtors' knowledge, whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) any proposed Bid Protections; (e) the Stalking Horse APA; and (f) the Stalking Horse Objection Deadline (as defined below).

G.    The Bidding Procedures are fair, reasonable, and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

H.    The Assumption and Assignment Procedures provided for herein and the Assumption and Assignment Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of Assumed Contracts and related Cure Costs.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED to the extent provided herein.

2.    The Bidding Procedures, attached as **<u>Exhibit 1</u>** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and Bid proceedings relating to the Assets.  The Debtors and Stretto, Inc., their claims and noticing agent, are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.    The Debtors will file and serve a proposed Sale Order on or before **4:00 p.m. (prevailing Eastern Time) on June 10, 2024**.

4

4.    All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

### A.    Designation of Stalking Horse Bidder

5.    Subject to paragraph 6 below and further court order, the Debtors may in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, (a) designate SG Investment America, Inc. as the Stalking Horse Bidder, (b) enter into the Stalking Horse APA in accordance with the Bidding Procedures, and (c) agree to any breakup fee and/or expense reimbursement (the "Bid Protections") subject to further Court approval, in each case in accordance with the Bidding Procedures.

6.    The Debtors filed notice of the terms of the stalking horse bid [Docket No. 101] (the "Stalking Horse Bid"). Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with this Court and served on the Debtors and the Stalking Horse Notice Parties no later than May 13, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline").

7.    If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding any Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid. If no Stalking Horse Objection is timely filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit to this Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "Stalking Horse Approval Order"), which may be entered by this Court without a hearing, including with respect to any Bid Protections. For

the avoidance of doubt, no determination is made in this Order regarding the authorization of any

Bid Protections or the designation of the Stalking Horse Bidder.

8.      Upon entry of an order approving the designation of the Stalking Horse Bidder, the

Debtors' obligation to pay the Bid Protections shall constitute, pursuant to section 503(b) of the

Bankruptcy Code, an administrative expense claim against the Debtors' bankruptcy estates, and

shall survive termination of the Stalking Horse APA.  For the avoidance of doubt, this Order does

not approve any Bid Protections or grant any Bid Protections superpriority expense treatment

pursuant to sections 364(c)(1) or 507(b) of the Bankruptcy Code but the Debtors reserve their right

to seek such relief by filing a separate motion with this Court.

**B.      The Bidding Procedures, Auction, and Sale Hearing**

9.      The deadline for submitting a Qualified Bid shall be **June 10, 2024, at 10:00 a.m.

(prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures

(the "Bid Deadline").

10.     For the purposes of the Bidding Procedures: (a) any designated Stalking Horse

Bidder will be considered a Qualified Bidder, and any Stalking Horse APA will be considered a

Qualified Bid; and (b) in determining whether the Potential Bidders constitute Qualified Bidders,

the Debtors may consider a combination of bids for the Assets.

11.     All bidders submitting a Qualified Bid are deemed to have submitted to the

exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms

and conditions of the transfer of the Assets.

12.     The Debtors shall inform Qualified Bidders that their Bids have been designated as

Qualified Bids no later than **June 11, 2024, at 6:00 p.m. (prevailing Eastern Time)**.

13.     If no Qualified Bid other than any Stalking Horse Bid is submitted on or before the Bid Deadline, the Debtors will not hold an Auction and will request at the Sale Hearing that this Court approve the Stalking Horse APA.

14.     If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction.  The Auction will take place on **June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time)** at the offices of Sidley Austin, LLP, 787 Seventh Avenue, New York, NY 10019 and, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, the US Trustee, any creditors that request access to the Auction at least twenty-four (24) hours prior to the Auction in accordance with the Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.

15.     Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

16.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best Bid for the Assets or subsets thereof; *provided, however* that any decision regarding whether a Qualified Bid is higher or otherwise better than the Stalking Horse Bid shall be made by the Debtors; *provided further*, that to the extent the Stalking Horse Purchaser submits a new bid, including through a materially amended Stalking Horse APA, the DIP Lenders shall not be Consultation Parties during the period

in which such new bid is outstanding.  The Debtors, in consultation with the Consultation Parties, may also determine the next-highest Bid for the Assets or subsets thereof.

17.     Following the Auction, the Debtors will file the proposed form purchase agreement and proposed Sale Order of the Successful Bidder and any Next-Highest Bidder with this Court.

18.     Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline (below)), must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before (a) **June 11, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the  "Sale Objection Deadline") or (b) the Supplemental Objection Deadline (as defined below), as applicable, on the following parties (collectively, the "Notice Parties"):

(a)  proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com));

(b)  proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com));

(c)  FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn));

(d)  the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and

(e)  counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

19.     Objections related solely to conduct at the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder, must be in writing,

state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Notice Parties on or before **June 17, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "<u>Auction Objection Deadline</u>"); *provided*, *however*, that in the event that (a) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (b) any proposed Sale seeks to transfer estate causes of action, the Auction Objection Deadline shall be extended to the Supplemental Objection Deadline.

20.    This Court shall convene the Sale Hearing on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time this Court will consider approval of the Sale to the Successful Bidder(s) or Next-Highest Bidder(s) and the entry of the Sale Order; *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action; *provided further* that in such instance, the deadline to object to the proposed Sale will be extended to **June 21, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Supplemental Objection Deadline</u>").  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Next-Highest Bidder(s).   Subject to consultation with the Consultation Parties, the Debtors may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing or in notice or agenda filed with this Court.  The Debtors shall file a form of Sale Order, which may be amended from time to time, no later than **June 10, 2024**.

### C.    Assumption and Assignment Procedures

21.    Within three (3) business days of the entry of this Order, the Debtors will file an Assumption and Assignment Notice, substantially in the form attached as **<u>Exhibit 3</u>** to this Order, which shall include a schedule of cure obligations (the "<u>Cure Schedule</u>") for the Assumed

Contracts, and shall serve such Assumption and Assignment Notice on each of the non-Debtor parties listed therein by email, where available, or otherwise by first class mail on the date the Assumption and Assignment Notice is filed with this Court.  The Cure Schedule will include a description of each Assumed Contract potentially to be assumed and assigned by a potential buyer and the amount, if any, necessary to cure, or compensate the non-Debtor parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

22.    Objections to (a) the Cure Costs set forth in the Cure Schedule or (b) the assumption and assignment of any Assumed Contracts identified in the Cure Schedule must be in writing, state the basis of such objection with specificity, be filed with this Court, and be served on the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days from the date of service of the Assumption and Assignment Notice.

23.    Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served an objection to the assumption and assignment of its Assumed Contract, such non-Debtor counterparty shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment of such Assumed Contract; and (c) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract.  In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed Contracts for all purposes in these

Chapter 11 Cases and will constitute a final determination of the Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

24.     Where a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by this Court.

### D.    Notice Procedures

25.     The form of the Sale Notice and the Assumption and Assignment Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

26.     As soon as practicable after the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by email, if available, or otherwise by first class mail upon the following; *provided*, *however*, that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further* that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned to the Debtors as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence: (a) the U.S. Trustee; (b) the United States Department of Justice; (c) counsel to any Committee; (d) all state attorneys'

general and consumer protection agencies in jurisdictions in which the Assets are located; (e) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (f) all parties who are known by the Debtors to assert liens against the Assets, if any; (g) all non-Debtor parties to the Assumed Contracts; (h) any party known or reasonably believed to have expressed an interest in acquiring some or all or substantially all of the Assets; (i) all of the Debtors' other known creditors and equity security holders; and (j) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, "Sale Notice Parties").

27.     In addition, the Debtors shall publish the Sale Notice once in each of (a) the *Sacramento Bee* and (b) the national edition of *The New York Times* or another publication with similar national circulation as soon as practicable after entry of this Order and post the Sale Notice, and this Order on the website of the Debtors' claims and noticing agent: https://cases.stretto.com/iconaircraft/.   Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

28.     Failure to timely file an objection in accordance with the deadlines set forth in this Order, or any subsequent Order of this Court, shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

29.     All parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

30.     In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

31.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

32.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon its entry.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     Nothing in this Order should be construed as this Court determining or allowing any fees or expenses incurred or requested in connection with the Auction and Sale, including any fees or expenses of any professionals retained in the Case and the rights of all parties in interest to object to any such fees and expenses hereby are expressly reserved

34.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**Exhibit 1**

**The Bidding Procedures**

# BIDDING PROCEDURES

On April 4, 2024, ICON Aircraft, Inc. and its affiliated entities (the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be used with respect to the sale(s) or disposition(s) (collectively, the "Sale") of the Assets (as defined below) of the Debtors.

**Any party interested in bidding on the Assets should contact Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchessen@ssgca.com) of SSG Advisors, LLC ("SSG"), the Debtors' proposed investment banker in these chapter 11 cases (these "Chapter 11 Cases").**

## *Summary of Key Sale Process Dates*

| Date | Deadline/Event |
|---|---|
| May 8, 2024, at 10:00 a.m. (ET) | Bidding Procedures Hearing |
| Three (3) business days after the entry of the Bidding Procedures Order | Deadline for Debtors to file the Assumption and Assignment Notice and Cure Schedule |
| Fourteen (14) calendar days after service of the Assumption and Assignment Notice at 4:00 p.m. (ET) | Deadline to object to the Debtors' proposed assumption and assignment of the Assumed Contracts and related Cure Costs |
| June 10, 2024, at 10:00 a.m. (ET) | Bid Deadline |
| June 11, 2024, at 4:00 p.m. (ET) | Sale Objection Deadline |
| June 11, 2024, at 6:00 p.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |
| June 13, 2024, starting at 10:00 a.m. (ET) | Auction (if necessary) |
| June 14, 2024, at 4:00 p.m. (ET) | Deadline to file and serve Notice of Successful Bidder(s) |

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion For Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement; and (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrance, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* (the "Motion").

| Date | Deadline/Event |
|---|---|
| June 17, 2024 at 10:00 a.m. (ET) | Deadline to file Limited Objections to Successful Bidder or Conduct at the Auction |
| June 18, 2024, at 10:00 a.m. (ET) | Sale Hearing (subject to Court availability) |
| June 21, 2024 at 4:00 p.m. (ET) | Supplemental Objection Deadline |
| June 27, 2024 at 10:00 a.m. (ET) | Sale Hearing, if (i) the Successful Bidder is an insider other than the Stalking Horse Bidder or (ii) any proposed Sale seeks to transfer estate causes of action (subject to Court availability) |

## I.      Description of the Assets to Be Sold

The Debtors are seeking to sell all or substantially all of their assets, including but not limited to the equipment, intellectual property, unexpired leases, contract rights, and other assets related to or necessary to operate the businesses currently operated by the Debtors (the "Assets"), or any portion thereof, in each case free and clear of all liens, claims, and encumbrances thereon.

The Sale of the Assets shall be subject to a competitive Bidding Process (as defined below) as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules").  The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.     Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into with the Debtors, on or before the Bid Deadline (as defined below), a confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement").  Further, to participate in the diligence process and receive access to due diligence information, a party must submit to the Debtors, or their advisors, sufficient information, as reasonably determined by the Debtors and their advisors in their sole discretion, to allow the Debtors to determine that the interested party (a) has the financial wherewithal to consummate the applicable Sale and (b) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures.  Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."  The Debtors shall inform the Consultation Parties of any person or entity that becomes a Potential Bidder.

After a Potential Bidder enters into a Confidentiality Agreement with the Debtors and provides preliminary proof, the adequacy of which the Debtors and their advisors will determine

in their sole discretion, of its bona fide interest in purchasing some of all of the Assets and its financial capacity to potentially consummate a proposed Sale, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information with respect to the Assets.

## III.     Determination by the Debtor

As appropriate throughout the Bidding Process (as defined below), the Debtors will consult with (a) any statutory committee appointed in these Chapter 11 Cases, if any (each a "Committee") and such Committee's counsel, (b) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn)), and (c) any other party that the Debtors deem appropriate (collectively, the "Consultation Parties" and each, a "Consultation Party"). Following consultation with the Consultation Parties, the Debtors shall (a) coordinate with Potential Bidders regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) negotiate any bid made to acquire any or all of the Assets, and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "Bidding Process"); *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating as a Potential Bidder for the Assets. For the avoidance of doubt, if a member of a Committee (or their affiliates, as applicable) is actively participating as a Potential Bidder for the Assets (a "Bidding Party"), then (a) the remaining members of the Committee other than the Bidding Party and (b) the Committee's counsel shall continue to be Consultation Parties, but shall not provide any information they receive as Consultation Parties to the Bidding Party. Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.

## IV.     Due Diligence

The Debtors have established a confidential electronic data room concerning the Assets (the "Data Room") and will grant each Potential Bidder or Consultation Party, as applicable, access to such Data Room. Up to and including the Bid Deadline (as defined below), the Debtors shall afford any Potential Bidder or Consultation Party such due diligence access or additional information as may be reasonably requested by the Potential Bidder or Consultation Party that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances. The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or Consultation Parties, as applicable. In the event that any such due diligence materials are prepared by the Debtors in written form and have not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to (a) all Potential Bidders and (b) all Consultation Parties. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder or a Consultation Party who does not otherwise comply with the participation requirements set forth above.

## V.  Stalking Horse Designation

Subject to further court order, the Debtors have designated SG Investment America, Inc. as the stalking horse bidder [Docket No. 101] (the "Stalking Horse Bidder"), whose Qualified Bid (as defined below) shall serve as the stalking horse bid (the "Stalking Horse Bid"), and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (the "Stalking Horse APA"), including any breakup fee and/or expense reimbursement (the "Bid Protections") will be binding on the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction. If the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bid may still serve as the Next-Highest Bidder (as defined below), if its bid represents the second-highest or otherwise best bid after the Auction. Notwithstanding any of the foregoing, the Debtors are not obligated to select a Stalking Horse Bidder and may proceed to the Auction without one.

Objections to the designation of the Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Debtors and the Stalking Horse Notice Parties no later than May 13, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline").

If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding any Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid. If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "Stalking Horse Approval Order"), which may be entered by the Court without a hearing, including with respect to any Bid Protections.

## VI.  Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver written copies of its Bid (as defined below) in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to SSG, Attn: Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchessen@ssgca.com), **by no later than June 10, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline"). The Debtors shall provide to the Consultation Parties copies of each Bid (as defined below) received by the Debtors as soon as reasonably practicable following receipt of such Bid.

## VII.    Bid Requirements[2]

All bids (each hereinafter, a "<u>Bid</u>") must comply with the following requirements (collectively, the "<u>Bid Requirements</u>"):

(a)    be accompanied by a letter or email:

(i)    fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder;

(ii)    setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price;

(iii)    stating with specificity the Assets (including any specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including any applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(iv)    providing, other than as may be exclusively applicable to the Stalking Horse Bidder, if designated, that the Bid is not subject to any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Assets; *provided* that, in the event a Stalking Horse Bidder is designated, all bids must provide consideration to the Debtors of at least the sum of (1) the Stalking Horse Bid, (2) the amount of any Bid Protections, and (3) a reasonable minimum overbid amount equal to or greater than $250,000 or such other amount determined by the Debtors in consultation with the Consultation Parties (the "<u>Incremental Overbid</u>") over the Starting Bid or Leading Bid (as defined below);

(v)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable until three (3) business days after the closing of the Sale;

(vi)    providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

---

[2]    The Debtors will also consider proposals to acquire any and all of the Assets through a plan of reorganization. Should any such proposal be received prior to the Bid Deadline that the Debtors, in consultation with the Consultation Parties, concludes is in the best interest of the estates and their stakeholders, then the Debtors reserve the right to postpone the Auction and proceed toward the confirmation of a plan of reorganization.

(vii)   containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets, has relied solely upon its own independent review and investigation and/or inspection of any documents and any other information in making the Bid;

(viii)   providing that the Potential Bidder agrees to serve as a backup bidder (the "Next-Highest Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined below) (the "Next-Highest Bid") with respect to the relevant Assets through the Closing Date (as defined below); and

(b)   be accompanied by (i) an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (a "Qualified Bid Purchase Agreement"), and (ii) if a Stalking Horse APA has been entered into, or if a form purchase agreement is provided, a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the Stalking Horse APA or the form purchase agreement, as applicable, and the applicable schedules and exhibits;

(c)   be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), which may include (i) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (ii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iii) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d)   be accompanied by (i) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtors (a "Good Faith Deposit"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (*provided, however*, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (*provided further* that such commitments may have covenants and conditions acceptable to the Debtors).  The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties, including by requiring Qualified Bidders to provide a Good Faith Deposit for any non-cash consideration based on such Qualified Bidder's estimate of the value of any such non-cash consideration.

The Debtors, in consultation with those Consultation Parties that have not submitted a Bid, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder."  The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than June 11, 2024, at 6:00 p.m. (prevailing Eastern Time).  For the avoidance of doubt, any Stalking Horse Bid will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.  The Debtors shall inform the Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid(s) (as defined below) no later than June 11, 2024, at 9:00 p.m. (prevailing Eastern Time).

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment (in consultation with the Consultation Parties), including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transactions(s) with the Qualified Bidder, (c) any excluded assets or executory contacts and leases, and (d) any other factors that the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

(a)     requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

(b)     is not received by the Bid Deadline;

(c)     does not comport with the Bid Requirements;

(d)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(e)     does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; *provided* that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects.  In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than five (5) business days after the Bid Deadline.

The Debtors may, in consultation with the Consultation Parties, among other things, (a) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (b) cancel the Auction and terminate the proposed Sale for the subject Assets.

**VIII.**    **No Qualified Bids**

If no Qualified Bids other than a Stalking Horse Bid are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate any Stalking Horse Bid as the Successful Bid, and pursue entry of the Sale Order approving the Sale of the Debtors' Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

**IX.**    **Auction**

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below).  The Consultation Parties and their professionals shall be permitted to attend and observe the Auction.  In addition, (a) any creditors of the Debtors that request access to the Auction by contacting SSG, Attn: Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchessen@ssgca.com) prior to the Bid Deadline or (b) other parties that the Debtors deem appropriate may observe the Auction.  At least one (1) day prior to the start of the Auction, each Qualified Bidder must inform the Debtor in writing whether it intends to participate in the Auction. If the Debtors receive only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets.  At any point and at their sole discretion, the Debtors shall have the right to remove any Assets from the Auction.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "Auction") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "Starting Bid(s)").  The determination of which Qualified Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Qualified Bid shall take into account factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the number, type and nature of any changes to the Stalking Horse APA, as applicable, requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors of such modifications or delay; (e) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (f) the net benefit to the Debtors' estate (including after taking account of the Bid Protections); (g) the tax consequences of such Qualified Bid; and (h) the impact on employees and the proposed treatment of employee obligations.  The Starting Bid(s) will be provided to Qualified Bidders on or before June 11, 2024, at 9:00 p.m. (prevailing Eastern Time).

The Auction, if required, will be conducted on June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time) at the offices of Sidley Austin, LLP, 787 Seventh Avenue, New York,

NY 10019 and, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, the US Trustee, any creditors that request access to the Auction at least twenty-four (24) hours prior to the Auction in accordance with these Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.  Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round (a) at least one Qualified Bidder submits a Qualified Bid that improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (b) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Starting Bid, and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  Each Subsequent Bid at the Auction shall provide additional net value to the estate over the Starting Bid or the Leading Bid (as defined below) in an amount equal to or greater than the Incremental Overbid amount.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that it believes to be the highest or otherwise best offer for the subject Assets (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below.  In any Subsequent Bid by the Stalking Horse Bidder, if designated, the amount of the Bid Protections shall be included in the calculation of such Bid.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; *provided* that such rules are disclosed to each Qualified Bidder during the Auction.  The bidding at the Auction shall be transcribed and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid. The Debtors may, in consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale.  Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidder(s) (the "Notice of Successful Bidder(s)").

All bidders at the Auction will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and all agreements entered into in connection with any proposed Sale.

## X.        Acceptance of Qualified Bids

The Debtors, in consultation with the Consultation Parties, may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' business judgment, upon considering any comments of the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Debtors' and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## XI.       No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders, other than the Stalking Horse Bidder, if applicable, shall not be allowed any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement as a precondition to, or in consideration of, presenting any bid or participating in the Bidding Process reflected herein.

## XII.      Sale Hearing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall take place on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Sale Hearing"); *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action. At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Next-Highest Bidder(s). The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of these Chapter 11 Cases.

**XIII.**     **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the applicable closing date (the "Closing Date"). The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than seven (7) business days following the Auction.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction) or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

**XIV.**     **Reservation of Rights and Modifications**

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, reserves the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing; *provided* that the Debtors may not amend these Bidding Procedures or the Bidding Process to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; *provided, however*, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of their fiduciary duties.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.

Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not in any way be affected by these Bidding Procedures. All rights of the Consultation Parties with respect to the proposed Sale are fully reserved.

## XV.      Next-Highest Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.

**<u>Exhibit 2</u>**

**Sale Notice**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 83** |

### NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 4, 2024, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532  (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On April 17, 2024, the Debtors filed a motion (the "Bidding Procedures and Sale Motion"), pursuant to sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an order (the "Bidding Procedures Order") (a) scheduling an auction (the "Auction") for the sale of the Debtors' assets (the "Assets") on or about June 13, 2024, at 10:00 a.m. and a hearing to approve the sale of the Assets (the "Sale Hearing") on or about June 18, 2024, (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets, (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bid Procedures, (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under a purchase agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (e) approving the form and manner of the notice of the Auction and the Sale Hearing, and (f) establishing procedures for the assumption and assignment of the Assumed Contracts (as defined in the Bidding Procedures and Sale Motion) to any purchaser(s) of the Assets and approving the manner of notice thereof (the "Assumption and Assignment Notice"); *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101).  The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.

3.      On May [•], 2024, the Bankruptcy Court entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction. The Auction shall be held on June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time), or such other time as the Debtors shall designate, and notify all Qualified Bidders. Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **June 10, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction. Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801 on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard; *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action *provided further* that in such instance, the deadline to object to the proposed Sale will be extended to **June 21, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Objection Deadline").

5.      The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.

**6.**      Objections to approval of the Sale(with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served on or before (a) **June 11, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") or (b) the Supplemental Objection Deadline, as applicable to the extent set forth in paragraph 4 above, on the following parties (collectively, the "Notice Parties"):

(a) proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com));

(b) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com));

(c) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn));

(d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and

(e) counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

7.     Objections related solely to conduct at the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served on the Notice Parties **on or before June 17, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Auction Objection Deadline"); *provided*, *however*, that in the event that (a) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (b) any proposed Sale seeks to transfer estate causes of action, the Auction Objection Deadline shall be extended to the Supplemental Objection Deadline .

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

8.     This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage all parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures and Sale Motion or the Bidding Procedures Order, may make a written request to Charles Persons (cpersons@sidley.com) and Jeri Leigh Miller (jeri.miller@sidley.com).  In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.stretto.com/iconaircraft/.

*[Remainder of page intentionally left blank]*

Dated: [•], 2024
Wilmington, Delaware

*/s/*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:      (302) 571-1253
Email:          sbeach@ycst.com
                ajacobs@ycst.com
                jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:     (310) 595-9500
Facsimile:      (310) 595-9501
Email:          sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:      (214) 981-3400
Email:          cpersons@sidley.com
                jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:      (212) 839-5599
Email:          nelner@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**EXHIBIT 3**

**Assumption and Assignment Notice**

31636118.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 83** |

## NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

You are receiving this notice because you may be a counterparty to a contract or lease with ICON Aircraft, Inc., Rycon LLC, IC Technologies Inc., and/or ICON Flying Club, LLC. Please read this notice carefully as your rights may be affected by the transactions described herein.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 17, 2024, the above-captioned debtors and debtors-in-possession (the "Debtors") filed a motion seeking approval of the Bidding Procedures for the sale of certain of the Debtors' assets (the "Assets") and approval of the sale such Assets (the "Bidding Procedures and Sale Motion") to the highest or best qualified bidder (the "Successful Bidder"). The Debtors have sought the approval of the Bankruptcy Court (as defined below) of the proposed Bidding Procedures and the form of this notice at a hearing to be held on **May 8, 2024 at 10:00 a.m. (prevailing Eastern Time)**. The Debtors have further requested that a hearing to approve the sale of the Assets (the "Sale Hearing") for **June 18, 2024, at 10:00 a.m. (ET) (prevailing Eastern Time)** in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action.

2.      Pursuant to the Bidding Procedures and Sale Motion, the Debtors may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively, the "Potentially Assigned Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101). The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

3.      The Debtors have indicated on **Schedule A** annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Agreements (in each instance, the "Cure Amount").

4.      Any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in order for such contract or lease to be assumed and assigned, must file an objection (the "Assumption/Assignment Objection") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court and (d) is served on (a) proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com)); (b) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com)); (c) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn)); (d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and (d) counsel to any Committee that has been appointed in these Chapter 11 Cases (collectively, the "Notice Parties") by no later than **4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days after the service of this Assumption and Assignment Notice** (the "Assumption/Assignment Objection Deadline").

5.      The Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice upon parties in interest by June 14, 2024, at 4:00 p.m. (prevailing Eastern Time).

6.      Unless an Assumption/Assignment Objection is timely and properly filed and served before the Assumption/Assignment Objection Deadline, the non-Debtor party to a Potentially Assigned Agreement shall (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to any assumption and assignment of such Potentially Assigned Agreement; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement.  In addition, the proposed Cure Amount set forth in **Schedule A** hereto shall be binding upon the non-Debtor parties to the Potentially Assigned Agreements for all purposes in these Chapter 11 Cases and will constitute a final determination of the Cure Amounts

required to be paid by the Debtors in connection with any assumption and assignment of the Potentially Assigned Agreements.

7.      Where a non-Debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "Disputed Cure Amount"), then (a) the cure amount shall be as agreed between the parties or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court.  All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

8.      An Assumption/Assignment Objection shall not constitute an objection to the relief generally requested in the Bidding Procedures and Sale Motion.  Parties wishing to otherwise object to the relief requested in the Bidding Procedures and Sale Motion must file and serve a separate objection, stating with particularity such party's grounds for objection, on each of the Notice Parties listed above no later than **fourteen (14) calendar days after service of the Assumption and Assignment Notice at 4:00 p.m. (prevailing Eastern Time)**.

9.      If you agree with the Cure Amount indicated on **Schedule A**, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

10.      The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**

Dated: [•], 2024
Wilmington, Delaware

*/s/*
_____

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:          sbeach@ycst.com
                ajacobs@ycst.com
                jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:     (310) 595-9500
Facsimile:     (310) 595-9501
Email:          sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:          cpersons@sidley.com
                jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:          nelner@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*

## Schedule A

### LEASES

| Landlord Name / Address | Address of Subject Property | Cure Amount |
|---|---|---|

### EXECUTORY CONTRACTS

| Counterparty Name / Address | Description of Contract | Cure Amount |
|---|---|---|

**EXHIBIT 2**

**Blackline**

31629754.1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 83 & 101** |

### ORDER (A) APPROVING CERTAIN BIDDING PROCEDURES AND THE FORM AND MANNER OF NOTICE THEREOF, (B) SCHEDULING AN AUCTION AND A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (C) ESTABLISHING CERTAIN ASSUMPTION AND ASSIGNMENT PROCEDURES AND APPROVING THE MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion"),[2] of the Debtors in the above-captioned chapter 11 cases (these "Chapter 11 Cases"), seeking, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), an order (this "Order") (a) approving certain bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") for the sale or sales (collectively, the "Sale") of all or substantially all of the Debtors' assets (the "Assets"), or any portion thereof, and the form and manner of notice thereof substantially in the form attached hereto as **Exhibit 2** (the

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101).  The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

[2]  Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bidding Procedures, as applicable.



"Sale Notice"), (b) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (c) scheduling an Auction and a Sale Hearing in connection with the Sale, and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice,"); this Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); and this Court having considered the statements of counsel, the First Day Declaration, and the Gupta Declaration in support of the Motion, and the evidence presented at the Bidding Procedures Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.     This Court has jurisdiction over this matter and over the property of the Debtors and their bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.  Venue of these Chapter 11 Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.



B.      The Debtors have offered good and sufficient reasons for, and the best interest of their estates will be served by, this Court granting the Motion to the extent provided in this Order, including (a) approving the Bidding Procedures, attached hereto as **Exhibit 1**, and form and manner of notice thereof substantially in the form of the Sale Notice, attached hereto as **Exhibit 2**, (b) ~~authorizing, but not directing, the Debtors to designate~~ the Stalking Horse Bidder ~~and approving the Bid Protections in accordance with the Bidding Procedures, (c)~~ scheduling an Auction and a Sale Hearing in connection with the Sale, and (~~d~~c) establishing certain assumption and assignment procedures and approving the manner of notice thereof substantially in the form of the Assumption and Assignment Notice, attached hereto as **Exhibit 3**.

C.      Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.      In accordance with Local Rule 6004-1, the Debtors have properly filed and noticed the Motion.  The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

E.      The proposed Sale Notice, and the Assumption and Assignment Notice, as set forth in the Motion and this Order, are appropriate, sufficient, and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the assumption and assignment of the Assumed Contracts, and no other

or further notice shall be required for the Sale or the assumption and assignment of the Assumed Contracts.

F.       The process for the granting of any Bid Protections is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of: (a) the identification of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) the amount of the Stalking Horse Bid (defined below) and what portion (if any) is cash; (c) to the best of the Debtors' knowledge, whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (d) any proposed Bid Protections; (e) the Stalking Horse APA, including all exhibits, schedules or attachments thereto; and (f) the Stalking Horse Objection Deadline (as defined below).

G.       The Bidding Procedures are fair, reasonable, and appropriate under the circumstances, and are reasonably designed to maximize the value to be achieved for the Assets.

H.       The Assumption and Assignment Procedures provided for herein and the Assumption and Assignment Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption and Assignment Notice have been tailored to provide an adequate opportunity for all counterparties to assert any objections to the assumption and assignment of Assumed Contracts and related Cure Costs.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.       The Motion is GRANTED to the extent provided herein.

2.       The Bidding Procedures, attached as **<u>Exhibit 1</u>** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids



and Bid proceedings relating to the Assets.  The Debtors and Stretto, Inc., their claims and noticing agent, are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.     The Debtors will file and serve a proposed Sale Order on or before **4:00 p.m. (prevailing Eastern Time) on June 10, 2024**.

4.     All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

**A.     Designation of Stalking Horse Bidder**

5.     ~~The~~Subject to paragraph 6 below and further court order, the Debtors ~~are authorized, but not directed,~~may in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, ~~to~~ (a) designate SG Investment America, Inc. as the Stalking Horse Bidder, (b) enter into the Stalking Horse APA in accordance with the Bidding Procedures, and (c) agree to any breakup fee and/or expense reimbursement (the "Bid Protections") subject to further Court approval, in each case in accordance with the Bidding Procedures.

6.     The Debtors filed notice of the terms of the stalking horse bid [Docket No. 101] (the "Stalking Horse Bid").  Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with this Court and served on the Debtors and the Stalking Horse Notice Parties no later than May 13, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline").



7.      If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding any Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid.  If no Stalking Horse Objection is timely filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit to this Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "Stalking Horse Approval Order"), which may be entered by this Court without a hearing, including with respect to any Bid Protections.  For the avoidance of doubt, no determination is made in this Order regarding the authorization of any Bid Protections or the designation of the Stalking Horse Bidder.

8.      Upon entry of an order approving the designation of the Stalking Horse Bidder, the Debtors' obligation to pay the Bid Protections shall constitute, pursuant to section 503(b) of the Bankruptcy Code, an administrative expense claim against the Debtors' bankruptcy estates, and shall survive termination of the Stalking Horse APA.  For the avoidance of doubt, this Order does not approve any Bid Protections or grant any Bid Protections superpriority expense treatment pursuant to sections 364(c)(1) or 507(b) of the Bankruptcy Code but the Debtors reserve their right to seek such relief by filing a separate motion with this Court.

**B.      The Bidding Procedures, Auction, and Sale Hearing**

9.      The deadline for submitting a Qualified Bid shall be **June 10, 2024, at 10:00 a.m. (prevailing Eastern Time)**, unless extended by the Debtors pursuant to the Bidding Procedures (the "Bid Deadline").

10.      For the purposes of the Bidding Procedures: (a) any designated Stalking Horse Bidder will be considered a Qualified Bidder, and any Stalking Horse APA will be considered a



Qualified Bid; and (b) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

11.    All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

12.    The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than **June 11, 2024, at 6:00 p.m. (prevailing Eastern Time)**.

13.    If no Qualified Bid other than any Stalking Horse Bid is submitted on or before the Bid Deadline, the Debtors will not hold an Auction and will request at the Sale Hearing that this Court approve the Stalking Horse APA.

14.    If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct the Auction.  The Auction will take place on **June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time)** at the offices of Sidley Austin, LLP, 787 Seventh Avenue, New York, NY 10019 and, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, the US Trustee, any creditors that request access to the Auction at least twenty-four (24) hours prior to the Auction in accordance with the Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.

15.    Each Qualified Bidder participating at the Auction will be required to confirm in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.



16.     Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best Bid for the Assets or subsets thereof; *provided, however* that any decision regarding whether a Qualified Bid is higher or otherwise better than the Stalking Horse Bid shall be made by the Debtors; *provided further*, that to the extent the Stalking Horse Purchaser submits a new bid, including through a materially amended Stalking Horse APA, the DIP Lenders shall not be Consultation Parties during the period in which such new bid is outstanding.  The Debtors, in consultation with the Consultation Parties, may also determine the next-highest Bid for the Assets or subsets thereof.

17.     Following the Auction, the Debtors will file the proposed form purchase agreement and proposed Sale Order of the Successful Bidder and any Next-Highest Bidder with this Court.

18.     Objections to approval of the Sale (with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline (below)), must be in writing, state the basis of such objection with specificity, and be filed with this Court and served on or before ~~on~~(a) **June 11, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the  "Sale Objection Deadline") or (b) the Supplemental Objection Deadline (as defined below), as applicable, on the following parties (collectively, the "Notice Parties"):

(a) proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com));

(b) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com));



(c) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn));

(d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and

(e) counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

19.    Objections related solely to conduct at the Auction, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder, must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received by the Notice Parties on or before **June 17, ~~2023~~2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Auction Objection Deadline")~~.~~; *provided, however,* that in the event that (a) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (b) any proposed Sale seeks to transfer estate causes of action, the Auction Objection Deadline shall be extended to the Supplemental Objection Deadline.

20.    This Court shall convene the Sale Hearing on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time this Court will consider approval of the Sale to the Successful Bidder(s) or Next-Highest Bidder(s) and the entry of the Sale Order~~.~~; *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action; *provided further* that in such instance, the deadline to object to the proposed Sale will be extended to **June 21, 2024 at 4:00 p.m. (prevailing Eastern Time)**

(the "Supplemental Objection Deadline").  At the Sale Hearing, the Debtors will seek the entry

of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or

Next-Highest Bidder(s).  Subject to consultation with the Consultation Parties, the Debtors

may adjourn the Sale Hearing from time to time without further notice to creditors or other

parties in interest other than by announcement of said adjournment at the Sale Hearing or in

notice or agenda filed with this Court.  The Debtors shall file a form of Sale Order, which may

be amended from time to time, no later than **June 10, 2024**.

C.    **Assumption and Assignment Procedures**

21.    Within three (3) business days of the entry of this Order, the Debtors will file an

Assumption and Assignment Notice, substantially in the form attached as **Exhibit 3** to this

Order, which shall include a schedule of cure obligations (the "Cure Schedule") for the Assumed

Contracts, and shall serve such Assumption and Assignment Notice on each of the non-Debtor

parties listed therein by email, where available, or otherwise by first class mail on the date the

Assumption and Assignment Notice is filed with this Court.  The Cure Schedule will include a

description of each Assumed Contract potentially to be assumed and assigned by a potential

buyer and the amount, if any, necessary to cure, or compensate the non-Debtor parties for, any

defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure

Costs").

22.    Objections to (a) the Cure Costs set forth in the Cure Schedule or (b) the

assumption and assignment of any Assumed Contracts identified in the Cure Schedule must be in

writing, state the basis of such objection with specificity, be filed with this Court, and be served

on the Notice Parties no later than 4:00 p.m. (prevailing Eastern Time) on the date that is

fourteen (14) calendar days from the date of service of the Assumption and Assignment Notice.

23.    Unless a non-Debtor party to an Assumed Contract has timely and properly filed and served an objection to the assumption and assignment of its Assumed Contract, such non-Debtor counterparty shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed Contract, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment of such Assumed Contract; and (c) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract.  In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed Contracts for all purposes in these Chapter 11 Cases and will constitute a final determination of the Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed Contracts.

24.    Where a non-Debtor counterparty to an Assumed Contract timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount (the "Disputed Cure Amount"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount, the Cure Amount shall be as agreed between the parties, or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by this Court.



### D.    Notice Procedures

25.    The form of the Sale Notice and the Assumption and Assignment Notice annexed hereto are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.

26.    As soon as practicable after the entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by email, if available, or otherwise by first class mail upon the following; *provided*, *however*, that the Debtors need not serve the Sale Notice on any party for whom the Debtors are unable to obtain, after reasonable diligence, an email or physical address as of the entry of the Bidding Procedures Order; *provided*, *further* that the Debtors shall not be obligated to provide supplemental service of the Sale Notice with respect to any Sale Notice that is returned to the Debtors as undeliverable so long as the Debtors have confirmed that any such Sale Notice was sent to the applicable email or physical address on file in the Debtors' books and records and no other email or physical address could be obtained after reasonable diligence: (a) the U.S. Trustee; (b) the United States Department of Justice; (c) counsel to any Committee; (d) all state attorneys' general and consumer protection agencies in jurisdictions in which the Assets are located; (e) the parties included on the Debtors' list of thirty (30) largest unsecured creditors; (f) all parties who are known by the Debtors to assert liens against the Assets, if any; (g) all non-Debtor parties to the Assumed Contracts; (h) any party known or reasonably believed to have expressed an interest in acquiring some or all or substantially all of the Assets; (i) all of the Debtors' other known creditors and equity security holders; and (j) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, "<u>Sale Notice Parties</u>").

27.     In addition, the Debtors shall publish the Sale Notice once in each of (a) the *Sacramento Bee* and (b) the national edition of *The New York Times* or another publication with similar national circulation as soon as practicable after entry of this Order and post the Sale Notice, and this Order on the website of the Debtors' claims and noticing agent: https://cases.stretto.com/iconaircraft/.   Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidder(s), and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

28.     Failure to timely file an objection in accordance with the deadlines set forth in this Order, or any subsequent Order of this Court, shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

29.     All parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.


31625959.1
31636118.1] 3

30.     In the event there is any conflict between this Order and the Bidding Procedures, the terms and conditions of this Order shall control and govern in all respects.

31.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied, modified, or waived.

32.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, this Order shall be immediately effective and enforceable upon its entry.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     Nothing in this Order should be construed as this Court determining or allowing any fees or expenses incurred or requested in connection with the Auction and Sale, including any fees or expenses of any professionals retained in the Case and the rights of all parties in interest to object to any such fees and expenses hereby are expressly reserved

34.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**Exhibit 1**

**The Bidding Procedures**



## BIDDING PROCEDURES

On April 4, 2024, ICON Aircraft, Inc. and its affiliated entities (the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Set forth below are the bidding procedures (the "Bidding Procedures")[1] to be used with respect to the sale(s) or disposition(s) (collectively, the "Sale") of the Assets (as defined below) of the Debtors.

**Any party interested in bidding on the Assets should contact Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchesen@ssgca.com) of SSG Advisors, LLC ("SSG"), the Debtors' proposed investment banker in these chapter 11 cases (these "Chapter 11 Cases").**

### *Summary of Key Sale Process Dates*

| Date | Deadline/Event |
|---|---|
| May 8, 2024, at 10:00 a.m. (ET) | Bidding Procedures Hearing |
| Three (3) business days after the entry of the Bidding Procedures Order | Deadline for Debtors to file the Assumption and Assignment Notice and Cure Schedule |
| Fourteen (14) calendar days after service of the Assumption and Assignment Notice at 4:00 p.m. (ET) | Deadline to object to the Debtors' proposed assumption and assignment of the Assumed Contracts and related Cure Costs |
| June 10, 2024, at 10:00 a.m. (ET) | Bid Deadline |
| June 11, 2024, at 4:00 p.m. (ET) | Sale Objection Deadline |
| June 11, 2024, at 6:00 p.m. (ET) | Deadline for Debtors to notify Potential Bidders of whether their Bids are Qualified Bids |
| June 13, 2024, starting at 10:00 a.m. (ET) | Auction (if necessary) |
| June 14, 2024, at 4:00 p.m. (ET) | Deadline to file and serve Notice of Successful Bidder(s) |

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Motion For Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement; and (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrance, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* (the "Motion").



| Date | Deadline/Event |
|------|----------------|
| June 17, 2024 at 10:00 a.m. (ET) | Deadline to file Limited Objections to Successful Bidder or Conduct at the Auction |
| June 18, 2024, at 10:00 a.m. (ET) | Sale Hearing (subject to Court availability) |
| June 21, 2024 at 4:00 p.m. (ET) | Supplemental Objection Deadline |
| June 27, 2024 at 10:00 a.m. (ET) | Sale Hearing, if (i) the Successful Bidder is an insider other than the Stalking Horse Bidder or (ii) any proposed Sale seeks to transfer estate causes of action (subject to Court availability) |

## I.        Description of the Assets to Be Sold

The Debtors are seeking to sell all or substantially all of their assets, including but not limited to the equipment, intellectual property, unexpired leases, contract rights, and other assets related to or necessary to operate the businesses currently operated by the Debtors (the "Assets"), or any portion thereof, in each case free and clear of all liens, claims, and encumbrances thereon.

The Sale of the Assets shall be subject to a competitive Bidding Process (as defined below) as set forth herein and approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 105, 363, and 365 of title 11 of the Bankruptcy Code, rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules").  The Debtors may consider bids for the Assets (or any portion thereof) in a single bid from a single bidder, or in multiple bids from multiple bidders.

## II.       Confidentiality Agreement

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process (as defined below), each person or entity must enter into with the Debtors, on or before the Bid Deadline (as defined below), a confidentiality agreement in form and substance reasonably satisfactory to the Debtors (the "Confidentiality Agreement").  Further, to participate in the diligence process and receive access to due diligence information, a party must submit to the Debtors, or their advisors, sufficient information, as reasonably determined by the Debtors and their advisors in their sole discretion, to allow the Debtors to determine that the interested party (a) has the financial wherewithal to consummate the applicable Sale and (b) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures.  Each person or entity that enters into the Confidentiality Agreement with the Debtors on or before the Bid Deadline is hereinafter referred to as a "Potential Bidder."  The Debtors shall inform the Consultation Parties of any person or entity that becomes a Potential Bidder.

After a Potential Bidder enters into a Confidentiality Agreement with the Debtors and provides preliminary proof, the adequacy of which the Debtors and their advisors will determine in their sole discretion, of its bona fide interest in purchasing some of all of the Assets and its financial capacity to potentially consummate a proposed Sale, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated information with respect to the Assets.

## III.    <u>Determination by the Debtor</u>

As appropriate throughout the Bidding Process (as defined below), the Debtors will consult with (a) any statutory committee appointed in these Chapter 11 Cases, if any (each a "<u>Committee</u>") and such Committee's counsel, (b) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn)), and (c) any other party that the Debtors deem appropriate (collectively, the "<u>Consultation Parties</u>" and each, a "<u>Consultation Party</u>").  Following consultation with the Consultation Parties, the Debtors shall (a) coordinate with Potential Bidders regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders on any or all of the Assets, (c) negotiate any bid made to acquire any or all of the Assets, and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "<u>Bidding Process</u>"); *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, the Debtors shall not consult with a Consultation Party (or its advisors) that is actively participating as a Potential Bidder for the Assets.  For the avoidance of doubt, if a member of a Committee (or their affiliates, as applicable) is actively participating as a Potential Bidder for the Assets (a "<u>Bidding Party</u>"), then (a) the remaining members of the Committee other than the Bidding Party and (b) the Committee's counsel shall continue to be Consultation Parties, but shall not provide any information they receive as Consultation Parties to the Bidding Party.  Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any party that is not a Potential Bidder or a Consultation Party.

## IV.    <u>Due Diligence</u>

The Debtors have established a confidential electronic data room concerning the Assets (the "<u>Data Room</u>") and will grant each Potential Bidder or Consultation Party, as applicable, access to such Data Room.  Up to and including the Bid Deadline (as defined below), the Debtors shall afford any Potential Bidder or Consultation Party such due diligence access or additional information as may be reasonably requested by the Potential Bidder or Consultation Party that the Debtors, in their business judgment, determine to be reasonable and appropriate under the circumstances.  The Debtors may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders and/or Consultation Parties, as applicable.  In the event that any such due diligence materials are prepared by the Debtors in written form and have not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to (a) all Potential Bidders and (b) all Consultation Parties.  Each Potential



Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person or entity who is not a Potential Bidder or a Consultation Party who does not otherwise comply with the participation requirements set forth above.

## V.    Stalking Horse Designation

~~The~~Subject to further court order, the Debtors have designated SG Investment America, Inc. as the stalking horse bidder [Docket No. 101] (the "Stalking Horse Bidder"), whose Qualified Bid (as defined below) shall serve as the stalking horse bid (the "Stalking Horse Bid"), and any asset purchase agreement memorializing the proposed transaction set forth in the Stalking Horse Bid (the "Stalking Horse APA"), including any breakup fee and/or expense reimbursement (the "Bid Protections") will be binding on the Stalking Horse Bidder and set the floor for all Qualified Bids, subject to higher or otherwise better offers at the Auction.  If the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bid may still serve as the Next-Highest Bidder (as defined below), if its bid represents the second-highest or otherwise best bid after the Auction.  Notwithstanding any of the foregoing, the Debtors are not obligated to select a Stalking Horse Bidder and may proceed to the Auction without one.

Objections to the designation of the Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Court and served on the Debtors and the Stalking Horse Notice Parties no later than May 13, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline").

If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding any Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid.  If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit to the Court an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse APA (the "Stalking Horse Approval Order"), which may be entered by the Court without a hearing, including with respect to any Bid Protections.

## VI.    Bid Deadline

A Potential Bidder that desires to make a Bid shall deliver written copies of its Bid (as defined below) in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to SSG, Attn: Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchessen@ssgca.com), **by no later than June 10, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline").  The Debtors shall provide to the Consultation Parties copies of each Bid (as defined below) received by the Debtors as soon as reasonably practicable following receipt of such Bid.



## VII.    Bid Requirements[2]

All bids (each hereinafter, a "<u>Bid</u>") must comply with the following requirements (collectively, the "<u>Bid Requirements</u>"):

(a)    be accompanied by a letter or email:

(i)    fully disclosing the identity of the Potential Bidder and providing the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale) in the event that the Debtors have any questions or wishes to discuss the Bid submitted by the Potential Bidder;

(ii)    setting forth the purchase price to be paid by such Potential Bidder and forms of consideration the Potential Bidder intends to use to pay such purchase price;

(iii)    stating with specificity the Assets (including any specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including any applicable cure costs) to be assumed by the Potential Bidder in the Sale;

(iv)    providing, other than as may be exclusively applicable to the Stalking Horse Bidder, if designated, that the Bid is not subject to any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement, and including an express waiver of any substantial contribution administrative expense claim under Section 503(b) of the Bankruptcy Code related to bidding for the Assets; *provided* that, in the event a Stalking Horse Bidder is designated, all bids must provide consideration to the Debtors of at least the sum of (1) the Stalking Horse Bid, (2) the amount of any Bid Protections, and (3) a reasonable minimum overbid amount equal to or greater than $250,000 or such other amount determined by the Debtors in consultation with the Consultation Parties (the "<u>Incremental Overbid</u>") over the Starting Bid or Leading Bid (as defined below);

(v)    agreeing that the Potential Bidder's offer is binding, unconditional, and irrevocable until three (3) business days after the closing of the Sale;

---

[2]    The Debtors will also consider proposals to acquire any and all of the Assets through a plan of reorganization. Should any such proposal be received prior to the Bid Deadline that the Debtors, in consultation with the Consultation Parties, concludes is in the best interest of the estates and their stakeholders, then the Debtors reserve the right to postpone the Auction and proceed toward the confirmation of a plan of reorganization.



(vi)  providing that such Bid is not subject to contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence;

(vii)  containing an acknowledgment that the Potential Bidder has had an opportunity to conduct any and all due diligence regarding the Assets, has relied solely upon its own independent review and investigation and/or inspection of any documents and any other information in making the Bid;

(viii)  providing that the Potential Bidder agrees to serve as a backup bidder (the "<u>Next-Highest Bidder</u>") if the Potential Bidder's Qualified Bid (as defined below) is the next highest or best bid after the Successful Bid (as defined below) (the "<u>Next-Highest Bid</u>") with respect to the relevant Assets through the Closing Date (as defined below); and

(b)  be accompanied by (i) an executed purchase agreement in form and substance reasonably satisfactory to the Debtors (a "<u>Qualified Bid Purchase Agreement</u>"), and (ii) if a Stalking Horse APA has been entered into, or if a form purchase agreement is provided, a redline of the executed Qualified Bid Purchase Agreement to reflect any proposed amendments and modifications to the Stalking Horse APA or the form purchase agreement, as applicable, and the applicable schedules and exhibits;

(c)  be accompanied by adequate assurance of future performance information (the "<u>Adequate Assurance Information</u>"), which may include (i) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (ii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iii) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include.  By submitting a Bid, Potential Bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below); and

(d)  be accompanied by (i) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of ten percent (10%) of the cash consideration of the Bid, which funds will be deposited, prior to the Bid Deadline, into an escrow account to be identified and established by the Debtors (a "<u>Good Faith Deposit</u>"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing (if selected as the Successful Bidder (as defined below) with respect to the relevant Assets (*provided, however*, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (*provided further* that such commitments may have covenants and conditions acceptable to the Debtors).  The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after



consulting with the Consultation Parties, including by requiring Qualified Bidders to provide a Good Faith Deposit for any non-cash consideration based on such Qualified Bidder's estimate of the value of any such non-cash consideration.

The Debtors, in consultation with those Consultation Parties that have not submitted a Bid, will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above.  A bid received from a Potential Bidder for any portion of the Assets that is determined by the Debtors, in consultation with the Consultation Parties, to meet the above requirements will be considered a "Qualified Bid" and each Potential Bidder that submits such a Qualified Bid will be considered a "Qualified Bidder."  The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than June 11, 2024, at 6:00 p.m. (prevailing Eastern Time).  For the avoidance of doubt, any Stalking Horse Bid will be deemed a Qualified Bid and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Potential Bidder must satisfy to be a Qualified Bidder.  The Debtors shall inform the Stalking Horse Bidder of the Qualified Bids received and shall provide copies of the Starting Bid(s) (as defined below) no later than June 11, 2024, at 9:00 p.m. (prevailing Eastern Time).

A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent in their reasonable business judgment (in consultation with the Consultation Parties), including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transactions(s) with the Qualified Bidder, (c) any excluded assets or executory contacts and leases, and (d) any other factors that the Debtors, in consultation with the Consultation Parties, may reasonably deem relevant.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid if such Bid, among other things:

(a)     requires any indemnification of the Potential Bidder in any Qualified Bid Purchase Agreement submitted as part of the Bid;

(b)     is not received by the Bid Deadline;

(c)     does not comport with the Bid Requirements;

(d)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets; or

(e)     does not, in the Debtors' determination (after consultation with the Consultation Parties), include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; *provided* that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects.  In the event that any Bid is so rejected, the Debtors shall cause the Good Faith



Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it as soon as reasonably practicable, but no later than five (5) business days after the Bid Deadline.

The Debtors may, in consultation with the Consultation Parties, among other things, (a) extend such Bid Deadline with respect to the subject Assets and postpone the Auction, or (b) cancel the Auction and terminate the proposed Sale for the subject Assets.

## VIII.    No Qualified Bids

If no Qualified Bids other than a Stalking Horse Bid are received by the Bid Deadline, then the Debtors, after consultation with the Consultation Parties, may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, to designate any Stalking Horse Bid as the Successful Bid, and pursue entry of the Sale Order approving the Sale of the Debtors' Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.

## IX.    Auction

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below).  The Consultation Parties and their professionals shall be permitted to attend and observe the Auction.  In addition, (a) any creditors of the Debtors that request access to the Auction by contacting SSG, Attn: Neil Gupta (ngupta@ssgca.com), Matthew Karlson (mkarlson@ssgca.com), and Mark Chesen (mchessen@ssgca.com) prior to the Bid Deadline or (b) other parties that the Debtors deem appropriate may observe the Auction.  At least one (1) day prior to the start of the Auction, each Qualified Bidder must inform the Debtor in writing whether it intends to participate in the Auction.  If the Debtors receive only one Qualified Bid with regard to any particular Assets (or all of the Assets), (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Qualified Bid, as applicable, will be deemed the Successful Bid with respect to such Assets; and (c) the Qualified Bidder will be named the Successful Bidder with respect to such Assets.  At any point and at their sole discretion, the Debtors shall have the right to remove any Assets from the Auction.

If at least two Qualified Bids are received by the Bid Deadline with regard to any particular Assets, the Debtors will conduct an auction (the "Auction") with respect to such Assets and shall determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "Starting Bid(s)").  The determination of which Qualified Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with the Consultation Parties) reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the number, type and nature of any changes to the Stalking Horse APA, as applicable, requested by each Qualified Bidder; (d) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors of such modifications or delay; (e) the likelihood of the



Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (f) the net benefit to the Debtors' estate (including after taking account of the Bid Protections); (g) the tax consequences of such Qualified Bid; and (h) the impact on employees and the proposed treatment of employee obligations.  The Starting Bid(s) will be provided to Qualified Bidders on or before June 11, 2024, at 9:00 p.m. (prevailing Eastern Time).

The Auction, if required, will be conducted on June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time) at the offices of Sidley Austin, LLP, 787 Seventh Avenue, New York, NY 10019 and, if determined by the Debtors to be necessary or convenient, via teleconference and/or videoconference.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, the US Trustee, any creditors that request access to the Auction at least twenty-four (24) hours prior to the Auction in accordance with these Bidding Procedures, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.  Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

Bidding at the Auction for the Assets (or subset thereof) that are subject to Qualified Bids will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round (a) at least one Qualified Bidder submits a Qualified Bid that improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (b) the Debtors reasonably determine, in consultation with the Consultation Parties, that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Starting Bid, and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  Each Subsequent Bid at the Auction shall provide additional net value to the estate over the Starting Bid or the Leading Bid (as defined below) in an amount equal to or greater than the Incremental Overbid amount.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that it believes to be the highest or otherwise best offer for the subject Assets (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below.  In any Subsequent Bid by the Stalking Horse Bidder, if designated, the amount of the Bid Protections shall be included in the calculation of such Bid.

The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of the Incremental Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; *provided* that such rules are disclosed to each Qualified Bidder during the Auction.  The bidding at the Auction shall be transcribed and the Debtors shall maintain a transcript of all Bids made and announced at the Auction.

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will, for the Assets (or subset thereof) that were subject to the Auction: (a) determine,



consistent with the Bidding Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the subject Assets, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") with respect to the subject Assets, and the amount and other material terms of the Successful Bid.  The Debtors may, in consultation with the Consultation Parties, designate the Next-Highest Bid (and the corresponding Next-Highest Bidder) to close with respect to the subject Assets in the event that the Successful Bidder does not close the Sale.  Unless the Bankruptcy Court orders otherwise upon application by the Debtors, the Debtors shall not consider any Bids or Subsequent Bids submitted after the conclusion of the Auction and any and all such Bids and Subsequent Bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s) for the Assets (or subset thereof) and any applicable Next-Highest Bidder(s) (the "Notice of Successful Bidder(s)").

All bidders at the Auction will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale and all agreements entered into in connection with any proposed Sale.

## X.        Acceptance of Qualified Bids

The Debtors, in consultation with the Consultation Parties, may reject at any time, before entry of an order of the Bankruptcy Court approving the Sale, any Bid that, in the Debtors' business judgment, upon considering any comments of the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Debtors' and their estates.

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

## XI.       No Fees for Potential Bidders or Qualified Bidders

Potential Bidders or Qualified Bidders, other than the Stalking Horse Bidder, if applicable, shall not be allowed any bidding fee, break-up fee, termination fee, transaction fee, expense reimbursement or any similar type of reimbursement as a precondition to, or in consideration of, presenting any bid or participating in the Bidding Process reflected herein.

## XII.      Sale Hearing

Each Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder) shall be subject to approval by the Bankruptcy Court.  The hearing to approve a Successful Bid and any Next-Highest Bid (or if no Qualified Bid other than that of



one Qualified Bidder is received with respect to the Assets (or subset thereof), then the Qualified Bid of such Qualified Bidder shall take place on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Sale Hearing"); *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action.  At the Sale Hearing, the Debtors will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder(s) or Next-Highest Bidder(s).  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of these Chapter 11 Cases.

## XIII.      Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court.  The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder.  At the closing of a Sale contemplated by a Successful Bidder, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.  The Good Faith Deposits of any Next-Highest Bidder shall be retained until three (3) business days after the applicable closing date (the "Closing Date").  The Good Faith Deposits of any other Qualified Bidders will be returned as soon as reasonably practicable, but no later than seven (7) business days following the Auction.

If a Successful Bidder (or, if the Sale is to be closed with a Next-Highest Bidder, then the Next-Highest Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable Qualified Bid Purchase Agreement (as such agreement may be amended or modified at the Auction) or any other form of purchase agreement reasonably satisfactory to the Debtors, the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale is to be closed with the Next-Highest Bidder, then such Next-Highest Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

## XIV.      Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, reserves the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing; *provided* that the Debtors may not amend these Bidding Procedures or the Bidding Process to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures; *provided, however*, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of their fiduciary duties.

Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.

Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not in any way be affected by these Bidding Procedures. All rights of the Consultation Parties with respect to the proposed Sale are fully reserved.

## XV.　　Next-Highest Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable purchase agreement (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the Assets (or subset thereof), the Next-Highest Bidder will be deemed to be the Successful Bidder for such Assets, and the Debtors will be authorized, but not directed, to close the Sale to the Next-Highest Bidder subject to the terms of the Next-Highest Bid as approved by further order of the Bankruptcy Court.



## Exhibit 2



**Sale Notice**



**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 83** |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 4, 2024, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532  (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.      On April 17, 2024, the Debtors filed a motion (the "Bidding Procedures and Sale Motion"), pursuant to sections 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an order (the "Bidding Procedures Order") (a) scheduling an auction (the "Auction") for the sale of the Debtors' assets (the "Assets") on or about June 13, 2024, at 10:00 a.m. and a hearing to approve the sale of the Assets (the "Sale Hearing") on or about June 18, 2024, (b) approving procedures (the "Bidding Procedures")[2] for submitting competing bids for the Assets, (c) authorizing, but not directing, the Debtors to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bid Procedures, (d) subject to final Court approval at the Sale Hearing, authorizing and approving the Debtors to enter into and perform under a purchase agreement, as applicable, subject to higher or otherwise better offers submitted in accordance with the Bidding Procedures, (e) approving the form and manner of the notice of the Auction and the Sale Hearing, and (f) establishing procedures for the assumption and assignment of the Assumed Contracts (as defined in the Bidding Procedures and Sale Motion) to any purchaser(s) of the Assets and approving the manner of notice thereof (the "Assumption and Assignment Notice")*; provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101).  The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures.



3.      On May [•], 2024, the Bankruptcy Court entered the Bidding Procedures Order. Pursuant to the Bidding Procedures Order, if at least two (2) Qualified Bids with regard to any Assets (as defined in the Bidding Procedures Order) are received by the Bid Deadline (as defined below), the Debtors will conduct the Auction.  The Auction shall be held on June 13, 2024, starting at 10:00 a.m. (prevailing Eastern Time), or such other time as the Debtors shall designate, and notify all Qualified Bidders.  Professionals and principals for the Debtors, each Qualified Bidder (including, its representative(s), if any), each of the Consultation Parties, any creditors that request access to the Auction prior to the Bid Deadline, and any other parties the Debtors deem appropriate shall be permitted to attend and observe the Auction.  Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than **June 10, 2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline") may bid at the Auction.  Any party that wishes to submit a Bid (as defined in the Bidding Procedures) for all or any portion of the Assets must submit a Bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, free and clear of all liens, claims and encumbrances, will be held before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, 824 North Market Street, 3rd Floor, Courtroom #7, Wilmington, Delaware 19801 on **June 18, 2024, at 10:00 a.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard~~ —~~; *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action *provided further* that in such instance, the deadline to object to the proposed Sale will be extended to **June 21, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Objection Deadline").

5.      The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by including such adjournment on any agenda filed with the Bankruptcy Court or by the filing of a notice with the Bankruptcy Court.

**6.**      ~~5.~~ Objections to approval of the Sale(with the exception of objections related solely to the conduct of the Auction, identity of the Successful Bidder, and ability of the Successful Bidder to provide adequate assurance of future performance, which must be received by a different deadline), must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served on or before ~~on~~(a) **June 11, 2024 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline") ~~by~~or (b) the Supplemental Objection Deadline, as applicable to the extent set forth in paragraph 4 above, on the following parties (collectively, the "Notice Parties"):

(a) proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com));

2



(b) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com));

(c) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn));

(d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and

(e) counsel to any statutory committee that has been appointed in these Chapter 11 Cases.

**7.**    6. Objections related solely to conduct at the Auction, identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and served on the Notice Parties **on or before June 17, ~~2023~~2024, at 10:00 a.m. (prevailing Eastern Time)** (the "Auction Objection Deadline")~~.~~*; provided, however, that in the event that (a) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (b) any proposed Sale seeks to transfer estate causes of action, the Auction Objection Deadline shall be extended to the Supplemental Objection Deadline .*

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.**

8.    7. This Sale Notice is subject to the fuller terms and conditions of the Bidding Procedures and Sale Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage all parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures and Sale Motion or the Bidding Procedures Order, may make a written request to Charles Persons (cpersons@sidley.com) and Jeri Leigh Miller (jeri.miller@sidley.com). In addition, copies of the Bidding Procedures and Sale Motion, the Bidding Procedures Order and this Notice are on file with the Clerk of the Bankruptcy Court, Third Floor, 824 North Market Street, Wilmington, Delaware 19801 and are available on the Debtors' claims and noticing agent's website free of charge at https://cases.stretto.com/iconaircraft/.

*[Remainder of page intentionally left blank]*



Dated: [•], 2024
Wilmington, Delaware

/s/
_____

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253
Email:          sbeach@ycst.com
                ajacobs@ycst.com
                jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:      (310) 595-9500
Facsimile:      (310) 595-9501
Email:          sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:      (214) 981-3400
Email:          cpersons@sidley.com
                jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:      (212) 839-5300
Facsimile:      (212) 839-5599
Email:          nelner@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*



## **EXHIBIT 3**

### **Assumption and Assignment Notice**



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. No. 83** |

## NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS

**You are receiving this notice because you may be a counterparty to a contract or lease with ICON Aircraft, Inc., Rycon LLC, IC Technologies Inc., and/or ICON Flying Club, LLC. Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On April 17, 2024, the above-captioned debtors and debtors-in-possession (the "Debtors") filed a motion seeking approval of the Bidding Procedures for the sale of certain of the Debtors' assets (the "Assets") and approval of the sale such Assets (the "Bidding Procedures and Sale Motion") to the highest or best qualified bidder (the "Successful Bidder"). The Debtors have sought the approval of the Bankruptcy Court (as defined below) of the proposed Bidding Procedures and the form of this notice at a hearing to be held on **May 8, 2024 at 10:00 a.m. (prevailing Eastern Time)**. The Debtors have further requested that a hearing to approve the sale of the Assets (the "Sale Hearing") for **June 18, 2024, at 10:00 a.m. (ET) (prevailing Eastern Time)** in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")~~;~~: *provided* that the Sale Hearing shall be adjourned to **June 27, 2024 at 10:00 a.m. (prevailing Eastern Time)** if (i) the Successful Bidder is not the Stalking Horse Bidder and is an insider or (ii) any proposed Sale seeks to transfer estate causes of action.

2.    Pursuant to the Bidding Procedures and Sale Motion, the Debtors may potentially assume and assign to the Successful Bidder one or more of those executory contracts and unexpired leases listed on **Schedule A** annexed hereto (collectively, the "Potentially Assigned Agreements" and each, a "Potentially Assigned Agreement"), pursuant to section 365 of the Bankruptcy Code.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101). The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.



3.      The Debtors have indicated on **Schedule A** annexed hereto the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Agreements (in each instance, the "Cure Amount").

4.      Any party seeking to object to the validity of the Cure Amount as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Agreements in order for such contract or lease to be assumed and assigned, must file an objection (the "Assumption/Assignment Objection") that (a) is in writing, (b) sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, (c) is filed with the Clerk of the Bankruptcy Court and (d) is served on  (a) proposed counsel to the Debtors, Sidley Austin LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067 (Attn.: Sam Newman (sam.newman@sidley.com), Charles Persons (cpersons@sidley.com), Jeri Leigh Miller (jeri.miller@sidley.com) and Nathan Elner (nelner@sidley.com)); (b) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn.: Sean M. Beach (sbeach@ycst.com) and Ashley E. Jacobs (ajacobs@ycst.com)); (c) FeiRen International Co., Ltd., as administrative agent under the DIP Credit Agreement, 12/F, Henley Building, 5 Queen's Road Central, Central, Hong Kong, China (Attn: Zheng Ying (zhengy@flymen.com.cn) and Hao Zheng (teamxu1@tylaw.com.cn)); (d) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn.: Joseph Cudia (joseph.cudia@usdoj.gov) and Malcolm Bates (malcolm.m.bates@usdoj.gov)); and (d) counsel to any Committee that has been appointed in these Chapter 11 Cases (collectively, the "Notice Parties") by no later than **4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days after the service of this Assumption and Assignment Notice** (the "Assumption/Assignment Objection Deadline").

5.      The Debtors shall file a notice identifying the Successful Bidder with the Bankruptcy Court and serve such notice upon parties in interest by June 14, 2024, at 4:00 p.m. (prevailing Eastern Time).

6.      Unless an Assumption/Assignment Objection is timely and properly filed and served before the Assumption/Assignment Objection Deadline, the non-Debtor party to a Potentially Assigned Agreement shall (a) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Potentially Assigned Agreement, and the Debtors and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount; (b) be deemed to have consented to any assumption and assignment of such Potentially Assigned Agreement; and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Potentially Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Potentially Assigned Agreement.  In addition, the proposed Cure Amount set forth in **Schedule A** hereto shall be binding upon the non-Debtor parties to the Potentially Assigned Agreements for all purposes in these Chapter 11 Cases and will constitute a



final determination of the Cure Amounts required to be paid by the Debtors in connection with any assumption and assignment of the Potentially Assigned Agreements.

7.      Where a non-Debtor counterparty to a Potentially Assigned Agreement timely and properly files an objection asserting a cure amount higher or different than the proposed Cure Amount, (the "<u>Disputed Cure Amount</u>"), then (a) the cure amount shall be as agreed between the parties or (b) to the extent the parties are unable to consensually resolve the dispute, then such objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court.  All other objections to the proposed assumption and assignment of a Potentially Assigned Agreement will likewise be heard at the Sale Hearing, unless adjourned by agreement of the parties.

8.      An Assumption/Assignment Objection shall not constitute an objection to the relief generally requested in the Bidding Procedures and Sale Motion.  Parties wishing to otherwise object to the relief requested in the Bidding Procedures and Sale Motion must file and serve a separate objection, stating with particularity such party's grounds for objection, on each of the Notice Parties listed above no later than **fourteen (14) calendar days after service of the Assumption and Assignment Notice at 4:00 p.m. (prevailing Eastern Time)**.

9.      If you agree with the Cure Amount indicated on **<u>Schedule A</u>**, and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

10.     The Debtors' decision to assume and assign the Potentially Assigned Agreements is subject to Bankruptcy Court approval and consummation of the sale of the Assets.

**Inclusion of any document on the list of Potentially Assigned Agreements shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder(s) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are being expressly reserved.**



Dated: [•], 2024
Wilmington, Delaware

*/s/* _____

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **SIDLEY AUSTIN LLP** |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        sbeach@ycst.com
              ajacobs@ycst.com
              jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:    (310) 595-9500
Facsimile:    (310) 595-9501
Email:        sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:        cpersons@sidley.com
              jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:        nelner@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*



**<u>Schedule A</u>**

**LEASES**

| Landlord Name / Address | Address of Subject Property | Cure Amount |
|---|---|---|

**EXECUTORY CONTRACTS**

| Counterparty Name / Address | Description of Contract | Cure Amount |
|---|---|---|


31625959.1
31636118.1

| Summary report:<br>Litera Compare for Word 11.5.0.74 Document comparison done on 5/9/2024 10:28:11 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ycstwork.ycst.com/YCST01/31625959/1 | |
| **Modified DMS:** iw://ycstwork.ycst.com/YCST01/31636118/1 | |
| **Changes:** | |
| Add | 52 |
| Delete | 49 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 2 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 105 |