**PLEASE NOTE THAT A HOLDER OF A CLAIM WHO VOTES TO ACCEPT THE PLAN AND WHO DOES NOT TIMELY SUBMIT A RELEASE OPT-OUT IN ACCORDANCE WITH THE BALLOT TO VOTE TO ACCEPT OR REJECT THE PLAN WILL BE DEEMED TO <u>CONSENT TO THE RELEASES CONTAINED IN ARTICLE IX OF THE PLAN</u>, WHICH RELEASES ARE ALSO DISCUSSED IN ARTICLE X OF THIS DISCLOSURE STATEMENT.  PLEASE CAREFULLY REVIEW SUCH RELEASES BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |

## DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR ICON AIRCRAFT, INC. AND ITS DEBTOR AFFILIATES

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:     (310) 595-9500
Facsimile:     (310) 595-9501

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Icon Aircraft, Inc. (7443); Rycon LLC (5297); IC Technologies Inc. (7918); and ICON Flying Club, LLC (6101).  The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

## DISCLOSURE STATEMENT DATED May 13, 2024[2]

\*        \*        \*

**All creditors are encouraged to read and carefully consider this Disclosure Statement, including the Plan, and the matters described under "Risk Factors" in Article XIV prior to submitting ballots in response to this solicitation.  This Disclosure Statement is being delivered to you because you are the holder of, or have otherwise asserted, a Claim or Claims against ICON Aircraft, Inc., Rycon LLC, IC Technologies Inc., and/or ICON Flying Club, LLC (collectively, the "Company", "ICON", or the "Debtors").**

\*        \*        \*

**The Debtors believe that the Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and its Debtor Affiliates (the "Plan") is in the best interests of creditors and other stakeholders.  All claimants entitled to vote thereon are urged to vote in favor of the Plan.  A summary of the voting instructions is set forth in Article I.F.2.  More detailed instructions are included in the ballots distributed to the creditors entitled to vote on the Plan.  To be counted, your ballot must be duly completed, executed, and received by the Debtors' voting agent by 4:00 p.m., prevailing Eastern Time, on July 10, 2024 (the "Voting Deadline"), unless extended.**

\*        \*        \*

**All of the projected Recoveries (as defined below) to creditors are based upon the analysis performed by the Debtors and their professionals. Although the Debtors have made every effort to verify the accuracy of the information presented herein and in the exhibits attached hereto, the Debtors cannot make any representations or warranties regarding the accuracy of the information.**

\*        \*        \*

**Although the Debtors have made every effort to ensure that this summary provides adequate information with respect to the Plan, it does not purport to be complete and is qualified to the extent it does not set forth the entire text of the Plan.  If there is any inconsistency between the Plan and the summary of the Plan contained in this Disclosure Statement, the Plan shall control.  Accordingly each Holder of a Claim should review the Plan in its entirety.**

\*        \*        \*

**The Confirmation Date and the Effective Date of the proposed Plan are subject to material conditions precedent.  *See* Article IX.  There is no assurance that these conditions will be satisfied or waived.**

---

[2]    Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the *Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and its Debtor Affiliates*.

\*     \*     \*

**The Plan provides that Holders of Impaired Claims entitled to vote who do not submit a Ballot voting to accept or reject the Plan or those who vote to accept or reject the Plan but do not timely opt-out of the release provisions of the Plan are deemed to have granted the releases therein. Creditors in Classes 3 and 4 should read the release provisions carefully as well as the information on the Ballot. If you do not wish to be a Releasing Party, you must return the Ballot AND check the opt-out box of the release. Otherwise, you will be deemed a Releasing Party.**

\*     \*     \*

No person is authorized by the Debtors in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein. If such information or representation is given or made, it may not be relied upon as having been authorized by the Debtors. The Debtors will make available to creditors entitled to vote on the Plan such additional information as may be required by applicable law prior to the Voting Deadline.

\*     \*     \*

The summaries of the Plan and other documents contained in this Disclosure Statement are qualified by reference to the Plan itself, the exhibits thereto, and documents described therein. In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.

\*     \*     \*

The information contained in this Disclosure Statement, including the information regarding the history, businesses and operations of the Debtors, the historical and projected financial information regarding the Debtors, and the liquidation analysis relating to the Debtors, is included for purposes of soliciting acceptances of the Plan, but, as to contested matters and adversary proceedings, is not to be construed as admissions or stipulations, but rather as statements made in settlement negotiations.

\*     \*     \*

This Disclosure Statement contains forward-looking statements based primarily on the current expectations of the Debtors and projections about future events and financial trends affecting the financial condition of the Debtors. The words "believe," "may," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions identify these forward-looking statements. These forward-looking statements are subject to a number of risks, uncertainties, and assumptions, including those described below under the caption "Risk Factors" in Article XIV. In light of these risks and uncertainties, the forward-looking events and circumstances discussed in this Disclosure Statement may not occur, and actual results could differ materially from those anticipated in the forward-looking statements. The Debtors do not undertake

any obligation to update or revise publicly any forward-looking statements, whether as a result of new information, future events, or otherwise.

31646352.3

**TABLE OF CONTENTS**

I.      OVERVIEW OF THE PLAN ......................................................................................... 1

  A.   Introduction ................................................................................................................ 1

  B.   The Plan ..................................................................................................................... 1

  C.   The Adequacy of This Disclosure Statement ............................................................ 2

  D.   Summary of Classes and Treatment of Claims or Interests ....................................... 3

  E.   Solicitation Package ................................................................................................... 4

  F.   Voting and Confirmation of the Plan ......................................................................... 5

    1.   Certain Factors to be Considered Prior to Voting ................................................ 5

    2.   Voting Procedures and Requirements ................................................................... 5

    3.   Plan Objection Deadline ....................................................................................... 6

    4.   Combined Hearing ................................................................................................ 6

    5.   Confirmation ......................................................................................................... 7

    6.   Acceptance ............................................................................................................ 8

    7.   Feasibility ............................................................................................................. 8

    8.   Best Interests Test; Liquidation Analysis ............................................................ 8

    9.   Compliance with Applicable Provisions of the Bankruptcy Code ...................... 9

    10.  Alternatives to Confirmation and Consummation of the Plan .............................. 9

  G.   Releases by the Debtors Set Forth in the Plan ........................................................... 9

II.     HISTORY OF THE DEBTORS ..................................................................................... 9

  A.   The Debtors' Corporate Structure and History .......................................................... 9

  B.   Debtors' Prepetition Business Operations ................................................................ 10

  C.   The Debtors' Capital Structure ................................................................................ 11

    1.   Funded Debt ........................................................................................................ 11

    2.   Trade and Related Debt ....................................................................................... 12

    3.   Equity ................................................................................................................. 12

  D.   Events Leading to these Chapter 11 Cases .............................................................. 12

    1.   The Debtors' Declining Liquidity ...................................................................... 13

    2.   Initial Strategic Transactions Process ................................................................ 14

    3.   Appointment of Special Committee .................................................................... 14

    4.   Prepetition Sale Process ...................................................................................... 15

III.    EVENTS DURING CHAPTER 11 CASE ................................................................... 15

  A.   Commencement of these Chapter 11 Cases and the Debtors' Professionals ................... 15

B. First Day Motions ................................................................................................ 16

C. Second Day Motions ........................................................................................... 16

D. Approval of the DIP ............................................................................................ 17

E. Approval of the Proposed Bidding Procedures ................................................... 17

F. The Stalking Horse Bid ....................................................................................... 19

G. Special Committee Investigation ........................................................................ 19

H. Bar Dates ............................................................................................................ 20

I. Creditors' Committee Appointment .................................................................... 20

IV. TREATMENT OF CLAIMS AND INTERESTS ............................................. 20

A. Unclassified Claims ............................................................................................ 20

   1. Administrative Claims ..................................................................................... 20

   2. Priority Tax Claims .......................................................................................... 23

B. Classified Claims ................................................................................................ 23

   1. Class 1 – Other Secured Claims ...................................................................... 23

   2. Class 2 – Other Priority Claims ....................................................................... 24

   3. Class 3 – Noteholder Claims ........................................................................... 24

   4. Class 4 – General Unsecured Claims ............................................................... 24

   5. Class 5 – Intercompany Claims ....................................................................... 25

   6. Class 6 – Section 510(b) Claims ..................................................................... 25

   7. Class 7 – Interests ........................................................................................... 25

   8. Class 8 – Intercompany Interests .................................................................... 26

C. Special Provisions Governing Unimpaired Claims ............................................ 26

D. Elimination of Vacant Classes ............................................................................ 26

E. Voting Classes; Presumed Acceptance by Non-Voting Classes ......................... 26

F. Controversy Concerning Impairment .................................................................. 26

G. Subordination of Claims ..................................................................................... 27

H. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .................. 27

I. Reservation of Rights Regarding Claims ............................................................ 27

J. Post-Petition Interest on Claims ......................................................................... 27

K. Insurance ............................................................................................................ 27

V. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 27

A. General Settlement of Claims and Interests ........................................................ 27

B. Sources of Consideration for Plan Distributions ................................................ 28

C. Sale Transaction ................................................................................................. 28

31646352.3

D.  Wind-Down..............................................................................................28

E.  Limited Substantive Consolidation ....................................................29

F.  Vesting of Assets ...............................................................................29

G.  Preservation of Causes of Action.......................................................29

H.  Corporate Action................................................................................29

I.  Cancellation of Existing Securities and Agreements .........................30

J.  Effectuating Documents and Further Transactions.............................30

K.  Section 1146 Exemption from Certain Taxes and Fees.......................30

L.  Sale Order ..........................................................................................31

M.  Authority to Act .................................................................................31

N.  Settlement of Claims and Controversies ............................................31

VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND
INSURANCE POLICIES .......................................................................................31

A.  General Treatment ..............................................................................31

B.  Rejection Damages Claims .................................................................32

C.  Reservation of Rights..........................................................................32

D.  Preexisting Obligations to Debtors Under Executory Contracts or Unexpired Leases ....32

E.  D&O Policies ......................................................................................33

F.  Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........33

G.  Nonoccurrence of Effective Date........................................................33

H.  Employee Compensation and Benefits ...............................................33

VII.    PROVISIONS GOVERNING DISTRIBUTIONS ...............................................33

A.  Distribution Record Date ....................................................................33

B.  Compliance with Tax Requirements....................................................34

C.  Date of Distributions ..........................................................................35

D.  Disbursing Agent ................................................................................35

E.  Powers of Disbursing Agent ...............................................................35

F.  Surrender of Instruments.....................................................................35

G.  Delivery of Distributions ....................................................................35

H.  Manner of Payment.............................................................................36

I.  Foreign Currency Exchange Rate ........................................................36

J.  Setoffs and Recoupments....................................................................36

K.  Minimum Distributions.......................................................................36

L.  Allocation of Distributions Between Principal and Interest ................36

M.  Distributions Free and Clear ...............................................................37

31646352.3

N.  Claims Paid or Payable by Third Parties ................................................................. 37

   1.  Claims Paid by Third Parties ......................................................................... 37

   2.  Claims Payable by Third Parties.................................................................... 37

   3.  Applicability of Insurance Policies ............................................................... 37

VIII.   PROCEDURES FOR RESOLVING DISPUTED CLAIMS........................................ 38

A.  Allowance of Claims....................................................................................... 38

B.  Claims Administration Responsibilities ......................................................... 38

C.  Estimation of Claims....................................................................................... 38

D.  Adjustment to Claims Without Objection........................................................ 38

E.  Time to File Objections to Claims .................................................................. 39

F.  Disallowance of Late Claims .......................................................................... 39

G.  Disputed Claims.............................................................................................. 39

H.  Disputed Claims Reserve ................................................................................ 39

I.  Amendment to Claims ..................................................................................... 39

J.  No Distributions Pending Allowance .............................................................. 39

K.  Distributions After Allowance ........................................................................ 40

IX.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .................................... 40

A.  Conditions to Effective Date........................................................................... 40

B.  Waiver of Conditions to Effective Date.......................................................... 41

C.  Effect of Vacatur of the Confirmation Order.................................................. 41

D.  Votes Solicited in Good Faith ......................................................................... 41

X.   EXCULPATION, RELEASES, AND INJUNCTION .................................................. 41

A.  Exculpation ..................................................................................................... 41

B.  Releases........................................................................................................... 42

   1.  Releases by the Debtors ................................................................................. 42

   2.  Releases by Holders of Claims and Interests................................................. 43

C.  Injunction ........................................................................................................ 44

D.  No Discharge ................................................................................................... 45

E.  Release of Liens .............................................................................................. 45

XI.   RETENTION OF JURISDICTION ............................................................................. 46

XII.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .............. 48

A.  Modification of the Plan ................................................................................. 48

B.  Other Amendments .......................................................................................... 48

C.  Effect of Confirmation on Modifications ........................................................ 48

D.    Revocation of the Plan; Effect of Non-Occurrence of Conditions to the Effective Date . 48

XIII.    MISCELLANEOUS PROVISIONS ................................................................. 49

A.    Debtors' Operation from Combined Hearing Through Effective Date ........................... 49

B.    Immediate Binding Effect ................................................................................. 49

C.    Dissolution of the Creditors' Committee ............................................................... 49

D.    Substantial Consummation ............................................................................... 49

E.    Term of Injunctions or Stays ............................................................................. 50

F.    Inconsistency ................................................................................................. 50

G.    Exhibits and Schedules .................................................................................... 50

H.    Additional Documents ..................................................................................... 50

I.    Entire Agreement ........................................................................................... 50

J.    Nonseverability of Plan Provision Upon Confirmation ........................................... 51

K.    Reservation of Rights ...................................................................................... 51

L.    Successors and Assigns .................................................................................... 51

M.    Determination of Tax Liabilities ........................................................................ 51

N.    Preservation of Books and Records .................................................................... 51

O.    Governing Law .............................................................................................. 52

P.    Closing of Chapter 11 Cases ............................................................................. 52

Q.    Service of Documents ..................................................................................... 52

XIV.    RISK FACTORS ........................................................................................... 53

A.    Bankruptcy Law Considerations ........................................................................ 53

   1.    The Sale May Not Be Approved and/or Confirmation Could Be Delayed .................. 53

   2.    Parties in Interest May Object to Provisions of the Plan, Including the Release and Exculpation Provisions and the Plan's Classification Scheme ...................................... 54

   3.    The Conditions Precedent to the Effective Date May Not Occur ............................... 54

   4.    The Debtors May Fail to Satisfy the Vote Requirements ............................................... 55

   5.    The Debtors May Not Be Able to Secure Nonconsensual Confirmation Over Certain Impaired, Non-Accepting Classes ...................................................................... 55

   6.    The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code ............................................................................................................. 55

   7.    The Debtors May Object to the Amount or Classification of a Claim ......................... 55

   8.    Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan .. 56

B.    Allowance of Claims ....................................................................................... 56

   1.    The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims .......................................................................................... 56

31646352.3

2.    Any Valuation of Any Assets to be Distributed Under the Plan is Speculative ............ 56

3.    The Debtors Cannot Guarantee the Timing of Distributions ......................................... 57

4.    Certain Tax Implications of the Debtors' Bankruptcy .................................................. 57

C.    Risks Related to the Debtors' Businesses ......................................................................... 57

1.    The Debtors Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Cases .......................................................................................................... 57

2.    Operating in Bankruptcy for a Long Period of Time May Harm the Debtors' Businesses 57

3.    The Debtors' Business Is Subject to Various Laws and Regulations That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business .......................................... 58

4.    The Loss of Key Personnel Could Adversely Affect the Debtors' Operations ............. 58

D.    Disclosure Statement Disclaimer ..................................................................................... 58

1.    The Financial Information Contained in This Disclosure Statement Has Not Been Audited .......................................................................................................................... 58

2.    Information Contained in This Disclosure Statement Is For Soliciting Votes .............. 58

3.    This Disclosure Statement Was Not Reviewed or Approved by the SEC ..................... 59

4.    This Disclosure Statement May Contain Forward Looking Statements ........................ 59

5.    No Legal or Tax Advice Is Provided to You by This Disclosure Statement ................. 59

6.    No Admissions Made .................................................................................................... 59

7.    Failure to Identify Potential Objections ....................................................................... 59

8.    No Waiver of Right to Object or Right to Recover Transfers and Assets ..................... 59

9.    Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors ........................................................................................................................ 60

10.   Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update ............... 60

11.   No Representations Outside This Disclosure Statement are Authorized ....................... 60

XV.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN ......................................................................................... 60

A.    U.S. Federal Income Tax Consequences to the Debtors .................................................. 62

B.    U.S. Federal Income Tax Consequences to Holders of Allowed Claims ......................... 63

1.    U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Claims in Class 3 and 4 ............................................................................................................................. 63

2.    Accrued Interest ........................................................................................................... 63

3.    Market Discount ........................................................................................................... 64

4.    Bad Debt Deduction ..................................................................................................... 64

5.    Medicare Surtax ........................................................................................................... 64

C.    U.S. Federal Income Tax Consequences to Non-U.S. Holders ....................................... 64

    1.    Gain Recognition ........................................................................................... 64

    2.    Interest on Allowed Claims ........................................................................... 65

  D.    Backup Withholding and Information Reporting ............................................ 66

  E.    Importance of Obtaining Professional Tax Assistance .................................... 67

XVI.    ADDITIONAL INFORMATION.................................................................... 67

XVII.    RECOMMENDATION AND CONCLUSION............................................... 67

## **EXHIBITS**

Exhibit A    *Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and its Debtor Affiliates*

Exhibit B    Liquidation Analysis

## I.    OVERVIEW OF THE PLAN

---

### RECOMMENDATION BY THE DEBTORS

It is the Debtors' opinion that confirmation and implementation of the Plan is in the best interests of the Debtors' Estates and their creditors.  Therefore, the Debtors recommend that all creditors whose votes are being solicited submit a ballot to **accept** the Plan.

---

### A.    Introduction

The following is a brief overview of certain material provisions of the Plan.  This overview is qualified by reference to the provisions of the Plan, which is attached hereto as **Exhibit A**, and the exhibits hereto, as amended from time to time.  In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.  The requirements for confirmation, including the vote of creditors entitled to vote on the Plan and certain of the statutory findings that must be made by the Bankruptcy Court for a plan to be confirmed, are set forth in Article I.F.  Confirmation of the Plan and the occurrence of the Effective Date are subject to certain conditions, which are summarized in Article IX.  There is no assurance that these conditions will be satisfied or waived.  At the Combined Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a chapter 11 plan are that the plan: (1) is accepted by the requisite holders of claims or interests in impaired classes under the plan; (2) is in the "best interests" of each holder of a claim or interest in each impaired class under the plan; (3) is feasible; and (4) complies with the applicable provisions of the Bankruptcy Code.  In this instance, only Holders of Claims in Classes 3 and 4 are entitled to vote to accept or reject the Plan.  Because Classes 5, 6, 7, and 8 will receive no distributions under the Plan, those Classes are deemed to reject the Plan.  Because Classes 1 and 2 are unimpaired, they are deemed to vote to accept the Plan.  *See* Article I.F.5 for a discussion of the Bankruptcy Code's requirements for Plan confirmation.

### B.    The Plan

The Debtors filed for chapter 11 bankruptcy protection on April 4, 2024.  The Debtors are pursuing the sale of substantially all of their assets pursuant to section 363(f) of the Bankruptcy Code prior to confirmation of the Plan.  The following phase of these Chapter 11 Cases is the confirmation and Consummation of the Plan, pursuant to which the Debtors will (1) wind-down the Debtors; (2) liquidate the Debtors' remaining assets after the consummation of the Sale, if any; and (3) make distributions to Holders of Claims as set forth in the Plan.

A chapter 11 bankruptcy case permits a debtor to resolve its affairs and distribute the proceeds of its estate pursuant to a confirmed chapter 11 plan.  To that end, the Debtors filed the Plan, the terms of which are more fully described herein, contemporaneously with the filing of this Disclosure Statement.  The Plan contemplates a liquidation of the Debtors and their Estates and is therefore referred to as a "plan of liquidation."  The primary objective of the Plan is to maximize the value of recoveries to Holders of Allowed Claims and to distribute all property of the Debtors' Estates that is or becomes available for distribution in accordance with the Bankruptcy Code and the Plan.  The Debtors assert that the Plan and contemporaneous sale of substantially all of the

31646352.3

Debtors' assets accomplishes this objective and is in the best interests of their Estates, and therefore seek to confirm the Plan. The Plan classifies Holders of Claims or Interests according to the type and nature of the Holder's Claim or Interest, as more fully described below.

The Plan designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (1) Impaired or Unimpaired by the Plan; (2) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (3) deemed to accept or reject the Plan. Claims against the Debtors and Interests in the Debtors are classified in eight separate Classes, as described herein.

### C.  The Adequacy of This Disclosure Statement

Before soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. The Debtors are providing this Disclosure Statement in accordance with those requirements. This Disclosure Statement includes, without limitation, information about:

- the Plan, including a summary, the procedures for voting on the Plan and projected recoveries thereunder (Article I hereof);

- the statutory requirements for confirming the Plan (Article I.F hereof);

- the Debtors' organizational structure, business operations, and financial obligations (Article II hereof);

- the events leading to the filing of the Debtors' chapter 11 cases (Article II.D hereof);

- the major events during these chapter 11 cases, including significant pleadings filed in the Debtors' chapter 11 cases and certain relief granted by the Bankruptcy Court (Article III hereof);

- certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Article XIV hereof);

- the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Article IV hereof);

- the means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims and other significant aspects of the Plan (Articles V, VII, and VIII hereof);

- the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan (Article X hereof); and

- certain United States federal income tax consequences of the Plan (Article XV hereof).

**D.     Summary of Classes and Treatment of Claims or Interests**

The classification of Claims or Interests, the estimated aggregate amount of Claims in each Class and the amount and nature of distributions to holders of Claims or Interests in each Class are summarized in the table below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.  For a discussion of certain additional matters related to Administrative Claims and Priority Tax Claims, see Article II.A of the Plan.

Each amount designated in the table below as "Estimated Percentage Recovery" for each Class is the quotient of the estimated Cash or other assets to be distributed to holders of Allowed Claims in that Class, divided by the estimated aggregate amount of Allowed Claims in that Class. In determining those amounts, the Debtors have assumed that the Plan is consummated as described herein.

For a discussion of various factors that could materially affect the amount of assets to be distributed pursuant to the Plan, see Article XIV of this Disclosure Statement.

| CLASS | CLAIM OR INTEREST | STATUS/ ENTITLED TO VOTE | ESTIMATED ALLOWED CLAIMS | ESTIMATED RECOVERY (%) |
|---|---|---|---|---|
| **Class 1** | Other Secured Claims | **Unimpaired** <br><br>Deemed to Accept the Plan. <br><br>Not Entitled to Vote. | $0 | 100% |
| **Class 2** | Other Priority Claims | **Unimpaired** <br><br>Deemed to Accept the Plan. <br><br>Not Entitled to Vote. | To Be Determined | 100% |
| **Class 3** | Noteholder Claims | **Impaired** <br><br>Entitled to Vote. | $170,400,000 | Recovery is subject to the Sale |
| **Class 4** | General Unsecured Claims | **Impaired** <br><br>Entitled to Vote. | $3,300,000 | Recovery is subject to the Sale |
| **Class 5** | Intercompany Claims | **Impaired** | Undetermined | 0% |

| | | | | |
|---|---|---|---|---|
| | | Deemed to Reject the Plan. Not Entitled to Vote. | | |
| **Class 6** | Section 510(b) Claims | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | $0 | 0% |
| **Class 7** | Interests | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | $0 | N/A |
| **Class 8** | Intercompany Interests | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | $0 | N/A |

### E.    Solicitation Package

The package of materials (the "<u>Solicitation Package</u>") to be sent to Holders of Claims on the Plan will contain:

- a cover letter describing (1) the contents of the Solicitation Package; (2) information about how to obtain access, free of charge, to the Plan, this Disclosure Statement, and the order approving the Disclosure Statement (the "<u>Disclosure Statement Order</u>"), together with the exhibits thereto, on the case administration website; and (3) information about how to obtain, free of charge, paper copies of any of the documents included in the Solicitation Package;

- a notice of the Combined Hearing;

- for Holders of Claims in the Voting Classes (*i.e.*, Holders of Claims in Classes 3 and 4), an appropriate form of Ballot, instructions on how to complete the Ballot, a pre-paid,

preaddressed Ballot return envelope, and such other materials as the Bankruptcy Court may direct;

- for Holders of Claims or Interests in Classes 1, 2, 6, and 7, the form of Notice of Non-Voting Status Package, which shall include the Release Opt-Out; and

- any supplemental documents filed with the Bankruptcy Court that the Bankruptcy Court orders to be included in the Solicitation Package.

The Debtors will cause the Notice and Claims Agent to complete the distribution of the Solicitation Packages to Holders of Claims in the Voting Classes within three (3) Business Days after entry of the Disclosure Statement Order.

The Solicitation Package may also be obtained free of charge from Stretto, Inc., the Debtors' Bankruptcy Court-appointed claims and noticing agent (the "Notice and Claims Agent") by: (1) visiting https://cases.stretto.com/iconaircraft; (2) emailing the Notice and Claims Agent at teamiconaircraft@stretto.com; or (3) calling (866) 993-1870 or (949) 892-1896.

### F.    Voting and Confirmation of the Plan

The Disclosure Statement Order, among other things, (1) approved this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and (2) established Plan voting tabulation procedures, which include certain vote tabulation rules that temporarily allow or disallow Claims for voting purposes (the "Tabulation Rules") pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3018.

#### 1.    Certain Factors to be Considered Prior to Voting

There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan.  These factors may impact recoveries under the Plan, including:

- the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

- although the Debtors assert that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan; and

- any delays of either the Confirmation Date or Consummation could result in, among other things, increased Administrative Claims or Professional Fee Claims that would likely reduce the recoveries to the Holders of Claims.

#### 2.    Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization are entitled to

vote to accept or reject a plan. A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity. Classes of Claims or Interests that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes of Claims or Interests that do not receive distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan. The classification of Claims or Interests is summarized, together with an indication of whether each Class of Claims or Interests is impaired or unimpaired, in Article I.D. June 3, 2024 shall serve as the voting record date (the "Voting Record Date") for purposes of determining which Holders of Filed or scheduled Claims in Classes 3 and 4 are entitled to receive a Solicitation Package.

**Voting on the Plan by each Holder of a Claim in Classes 3 and 4 is important. Please carefully follow all of the instructions contained on the Ballot(s) provided to you. All Ballots must be completed and returned in accordance with the instructions provided. To be counted, your Ballot or Ballots must be received by 4:00 p.m., prevailing Eastern Time, on July 10, 2024 (the "Voting Deadline") at the address set forth on the preaddressed envelope provided to you.**

**If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please call or email the Debtors' voting agent, Stretto, Inc. (the "Voting Agent"), at (866) 993-1870 or (949) 892-1896 or teamiconaircraft@stretto.com. Also, this Disclosure Statement, the Plan and all of the related exhibits and schedules are available, without charge, to any party in interest at https://cases.stretto.com/iconaircraft.**

**Ballots cannot be transmitted orally, by email or by facsimile. Accordingly, you are urged to return your signed and completed Ballot, by hand delivery, overnight service, regular U.S. mail, or electronically via the Voting Agent's e-Ballot portal (https://balloting.stretto.com) promptly, so that it is received by the Voting Agent before the Voting Deadline.**

3.    Plan Objection Deadline

The deadline to file objections to the confirmation of the Plan (the "Confirmation Objections") is July 10, 2024 @ 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline"). All Confirmation Objections must be in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim or Interest held by the objector. Any Confirmation Objection must be filed with the Bankruptcy Court and served on the Debtors, the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Creditors' Committee"), if any, and the Office of the United States Trustee, Region 3 (the "U.S. Trustee"), and certain other parties in interest in accordance with the Disclosure Statement Order on or before the Objection Deadline.

4.    Combined Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. On June 3, 2024, the Debtors

requested that the Bankruptcy Court conditionally approve this Disclosure Statement and set a Combined Hearing to approve this Disclosure Statement on a final basis and confirm the Plan. The Debtors have requested the Combined Hearing be set on July 22, 2024, at 10:00 a.m. (prevailing Eastern Time), before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Third Floor, Courtroom 7, Wilmington, Delaware 19801.

The Combined Hearing may be conducted virtually, with access instructions filed on the Bankruptcy Court's docket in these Chapter 11 Cases. The Combined Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on the Entities who have filed Confirmation Objections, without further notice to other parties in interest. The Bankruptcy Court, in its discretion and before the Confirmation Hearing, may put in place additional procedures governing the Combined Hearing. The Plan may be modified in accordance with its terms, if necessary, before, during or as a result of the Combined Hearing, without further notice to parties in interest.

     5.    <u>Confirmation</u>

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtors, including that:[3]

- the Plan has classified Claims and Interests in a permissible manner;

- the Plan complies with the applicable provisions of the Bankruptcy Code;

- the Debtors have complied with the applicable provisions of the Bankruptcy Code;

- the Debtors, as proponents of the Plan, have proposed the Plan in good faith and not by any means forbidden by law;

- the disclosure required by section 1125 of the Bankruptcy Code has been made;

- the Plan has been accepted by the requisite votes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code, of creditors and equity interest holders;

- the Plan is feasible;

- all Statutory Fees due and owing have been paid or the Plan provides for the payment thereof on the Effective Date; and

- the Plan is in the "best interests" of all Holders of Claims or Interests in an impaired Class by providing to those Holders on account of their Claims or Interests property of a value,

---

[3]    The descriptions contained herein are only a summary of certain confirmation requirements; they are not exhaustive of all confirmation requirements and should not be construed as such.

as of the Effective Date, that is not less than the amount that each Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in that Class has accepted the Plan.

6.    Acceptance

A Plan is accepted by an impaired class of Claims if Holders of at least two-thirds in dollar amount and a majority in number of Claims of that Class vote to accept the Plan.  Only those Holders of Claims who actually vote (and are entitled to vote) to accept or to reject a Plan count in this tabulation.

7.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor (unless liquidation or reorganization is proposed in the Plan). Because the Plan proposes a liquidation of all of the Debtors' assets, for purposes of this test the Debtors have analyzed the ability of the Plan Administrator to meet its obligations under the Plan. Based on the Debtors' analysis, regarding recoveries available to Holders of Allowed Claims under the Plan, the Plan Administrator is expected to have sufficient assets to accomplish its tasks under the Plan.  Therefore, the Debtors have determined that their liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

8.    Best Interests Test; Liquidation Analysis

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any impaired Class who has not voted to accept the Plan.  Accordingly, if an impaired Class does not unanimously accept the Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of that impaired Class a recovery on account of the Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that the Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

Because the Plan proposes a liquidation of all the Debtors' assets, the Debtors have analyzed factors that will impact recoveries (the "Recoveries") available to creditors in each scenario.  These factors include professionals fees and expenses, asset disposition expenses, applicable taxes, potential Claims arising during the pendency of the Plan or chapter 7 case and trustee fees and expenses.

In summary, the Debtors have determined that a chapter 7 liquidation would result in diminution in the Recoveries to be realized by Holders of Allowed Claims, as compared to the proposed distributions under the Plan.  Consequently, the Debtors have determined that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a chapter 7 liquidation of the Debtors.

31646352.3

9.     Compliance with Applicable Provisions of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code.  The Debtors considered each of these issues in the development of the Plan and have determined that the Plan complies with all provisions of the Bankruptcy Code.

10.     Alternatives to Confirmation and Consummation of the Plan

The Debtors evaluated alternatives to the Plan, including alternative structures and terms of the Plan.  While the Debtors concluded that the Plan is the best alternative and will maximize recoveries by Holders of Allowed Claims, if the Plan is not confirmed, the Debtors, or (subject to the Debtors' exclusive periods under the Bankruptcy Code to file and solicit acceptances of a plan or plans) any other party in interest in these Chapter 11 Cases could attempt to formulate and propose a different plan.  Further, if no plan under chapter 11 of the Bankruptcy Code can be confirmed, these chapter 11 cases may be converted to chapter 7 cases.  In liquidation cases under chapter 7 of the Bankruptcy Code, a trustee would be appointed to liquidate the remaining assets of the Debtors and distribute proceeds to creditors.  The proceeds of the liquidation would be distributed to the respective creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code.  For further discussion of the potential impact on the Debtors of the conversion of these chapter 11 cases to chapter 7 liquidation, see Article XIV.A of this Disclosure Statement.  The Debtors have determined that confirmation and Consummation of the Plan is preferable to the available alternatives.

**G.     Releases by the Debtors Set Forth in the Plan**

Article IX.A of the Plan provides that each Released Party is deemed released by the Debtors and their Estates from any and all claims and Causes of Action except as set forth therein.  The Debtors have determined that applicable law and the facts support those releases and that the Bankruptcy Court can and should approve them.  **If you do not wish to be a Releasing Party, you must return the ballot AND check the opt-out box of the Release Opt-Out.  Otherwise, you will be deemed a Releasing Party.**

**II.     HISTORY OF THE DEBTORS**

**A.     The Debtors' Corporate Structure and History**

ICON Aircraft, Inc. was founded in 2006 in response to the Federal Aviation Administration's ("FAA") establishment of the light-sport aircraft ("LSA") category and the sport pilot license ("SPL") class.  Among other aircraft, the LSA category includes powered airplanes and gliders, powered parachutes, balloons, and airships.  LSAs are less expensive, safe aircraft that can be flown with a SPL, which only takes about four weeks to complete—democratizing the aviation industry by providing an easier entry point for flying enthusiasts.

ICON Aircraft, Inc. is incorporated under the laws of Delaware.  ICON's corporate structure includes several subsidiaries, including Rycon LLC, IC Technologies Inc., and ICON Flying Club, LLC.  Rycon LLC and ICON Flying Club, LLC were each created for insurance purposes, which are no longer applicable.  As such, neither of these subsidiaries have ongoing

operations or assets.  IC Technologies Inc. is used to manage ICON's manufacturing activities in Tijuana, Mexico, which remain ongoing.

### B.    Debtors' Prepetition Business Operations

From its inception, designers and engineers at ICON worked rigorously to produce a first-of-its-kind, high performance, amphibious aircraft with simple flight characteristics for safe and easy operation.  The culmination of these efforts was the first iteration of the Debtors' signature aircraft—the A5—which the Debtors brought to market and began production on in 2016.  The A5 is an amphibious sport plane that fuses outstanding aeronautical engineering with world-class product design and unprecedented safety features.  The A5 is the world's first production aircraft that is spin-resistant, making it one of the safest small aircraft ever created.  In addition, the A5 has won some of the world's most prestigious design awards and has inspired a global following.

The ICON A5 has historically been well received by aviation enthusiasts, with over 200 aircraft completed and sold to date.  As part of its customer experience, the Debtors have historically partnered with more than fifty (50) service partners in thirty (30) states to ensure owners have access to convenient repair and maintenance services.  As of late 2023, the Debtors received flight certification of the A5 outside the United States, opening up foreign markets, like Europe and China, for the marketing and sale of the A5.

The Debtors' assets are comprised of several leased facilities in Tijuana, Mexico, Vacaville, California, and Tampa, Florida, along with its highly trained employees, innovative intellectual property portfolio, and strategic partnerships in the manufacturing and maintenance sectors.

As of the Petition Date, the Debtors directly and indirectly employed a U.S.-based workforce of approximately fifty-five (55) individuals, of which forty (40) are full-time, salaried employees and fifteen (15) of which are hourly employees.  Substantially all of the workforce is located in Vacaville, California.  In addition to its employees, the Debtors have historically relied on a number of specialized individuals on a temporary or project basis.  As of the Petition Date, the Debtors retained approximately seventeen (17) independent contractors to provide services as needed.  None of the employees or independent contractors are represented by a union or employed pursuant to a collective bargaining agreement.

The Debtors hold thirteen (13) critical U.S. patents and forty (40) U.S. and foreign patent applications related to the A5 aircraft.

The Debtors are party to a Manufacturing Services Agreement (the "Services Agreement") with Co-Production International, Inc. ("CPI"), under which CPI provides manufacturing employees and facilities services at the Debtors' production center in Tijuana, Mexico.  The Services Agreement allows the Company to utilize the local workforce in Tijuana, Mexico through CPI and passes along certain costs of employment and facility maintenance to CPI.

Further details regarding the Debtors' business and operations may be found in the *Declaration of Thomas M. McCabe in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 2] (the "First Day Declaration").

31646352.3

10

C.      **The Debtors' Capital Structure**

1.      Funded Debt

As of the Petition Date, the Debtors had approximately $169.15 million in total funded debt obligations, consisting of approximately $105.4 million in convertible note obligations and approximately $63.75 million in other unsecured note obligation.  The Debtors' only secured debt is a deposit account with East West Bank, held for the benefit of the Debtors to secure the East West Bank unsecured note obligations.  The Debtors understand that certain of the East West Bank notes are subject to a guaranty.  A summary chart of the Debtors' prepetition capital structure is set forth below:

| Note | Issuance Date | Principal | Maturity Date |
|---|---|---|---|
| **Convertible Notes** | | | |
| PDSTI | 3/20/2020 | $12,500,000 | 3/20/2021 (ext. 3/20/2025) |
| PDSTI | 1/26/2021 | $23,900,000 | 1/26/2022 (ext. 1/26/2025) |
| PDSTI | 2/24/2022 | $1,027,090 | 2/24/2023 (ext. 2/24/2024) |
| Unimax | 3/30/2022 | $2,400,000 | 9/30/2022 (ext. 9/25/2024) |
| PDSTI | 5/3/2022 | $1,300,000 | 11/3/2022 (ext. 5/3/2024) |
| PDSTI | 5/16/2022 | $2,300,000 | 11/14/2022 (ext. 5/16/2024) |
| Feiren | 6/28/2022 | $5,000,000 | 6/27/2023 (ext. 11/28/2024) |
| PDSTI | 8/11/2022 | $4,000,000 | 12/30/2022 (ext. 6/30/2024) |
| PDSTI | 11/25/2022 | $1,500,000 | 5/26/2023 (ext. 5/25/2024) |
| PDSTI | 12/9/2022 | $1,500,000 | 6/9/2023 (ext. 6/9/2024) |
| PDSTI | 1/11/2023 | $1,500,000 | 7/11/2023 (ext. 7/11/2024) |
| Feiren | 3/14/2023 | $5,000,000 | 11/12/2023 (ext. 11/13/2024) |
| PDSTI | 3/29/2023 | $28,972,910 | 3/29/2024 |
| PDSTI | 6/12/2023 | $1,000,000 | 12/12/2023 (ext. 12/12/2024) |
| PDSTI | 6/29/2023 | $2,000,000 | 12/29/2023 (ext. 12/29/2024) |

| | | | |
|---|---|---|---|
| PDSTI | 7/26/2023 | $3,000,000 | 1/22/2024 |
| PDSTI | 8/31/2023 | $1,000,000 | 2/27/2024 |
| PDSTI | 9/28/2023 | $2,000,000 | 3/26/2024 |
| PDSTI | 10/27/2023 | $1,500,000 | 4/26/2024 |
| PDSTI | 11/10/2023 | $2,000,000 | 5/10/2024 |
| PDSTI | 12/13/2023 | $2,000,000 | 12/12/2024 |
| | | | **Total (Convertible Notes): $105,400,000** |
| **Other Notes** | | | |
| East West Note 12/24/2020 | 12/24/2020 | $40,000,000[4] | 6/23/2021 (ext. 6/22/2024) |
| East West Note 12/22/2022 | 12/22/2022 | $16,500,000 | 12/23/2023 (ext. 6/22/2024) |
| East West Note 2/6/2023 | 2/6/2023 | $6,500,000 | 8/1/2023 (ext. 8/1/2024) |
| Ext. of 12/22/2022 Note | 1/8/2024 | $750,000 | 3/22/2024 (ext. 6/22/2024) |
| | | | **Total (Other Notes): $63,750,000[5]** |

2.    Trade and Related Debt

In addition to their funded debt, the Debtors have trade and other unsecured debt. As of the Petition Date, the Debtors estimate that they owe approximately $3.3 million on account of unpaid invoices owed to vendors or suppliers or other general unsecured debt.

3.    Equity

The Debtors' equity is privately held, with ICON Aircraft, Inc. authorized to issue up to 322 million shares of preferred stock and 488 million shares of common stock.  As of January 26, 2024, the Debtors had nine series of preferred stock issued and outstanding, constituting approximately 176.9 million of outstanding preferred equity shares.  The Debtors estimate that only approximately 11.3 million shares of common stock are outstanding

**D.    Events Leading to these Chapter 11 Cases**

The development of LSA vehicles is a capital intensive, time-consuming process. Historically, the Debtors have been plagued by a number of issues, relating to manufacturing

---

[4]    The original principal of the 12/24/2020 note was $50 million, which was increased by $1.5 million and $1.25 million respectively at various points.  The 12/24/20 note was then replaced by a $40 million and a $16.5 million note in December 2022, which extended maturity to the dates listed in the chart.

[5]    The Debtors listed an additional $1.250 million in unsecured notes owed to East West Bank in their First Day Declaration.  Subsequent to the Petition Date, the Debtors were informed that the additional note had not been executed prior to the Petition Date and the amounts thereunder were never funded.

delays and supply chain disruptions.  Although the Debtors learned from these growing pains and have taken steps to alleviate or mitigate the issues, these issues required the Debtors to borrow additional capital, leading to its unsustainable capital structure and culminating in their current liquidity crisis.  Stated simply, the revenue produced cannot support the Debtors' significant levels of funded unsecured debt.  As set forth in more detail below, the Debtors' declining liquidity, along with a failed out-of-court merger process, required them to engage advisors to explore strategic alternatives, ultimately choosing to file these Chapter 11 Cases and initiate the section 363 sale process discussed herein.

1.    The Debtors' Declining Liquidity

a.    *Manufacturing and Supply Chain Issues*

Despite their status as a first mover in the amphibious LSA market, the Debtors have faced manufacturing and supply chain challenges since they began constructing the A5.  Specifically, internal tooling bottlenecks prevented the Debtors from producing the eight to ten aircraft per month that they needed to reach a breakeven EBITDA level.  In addition, delays in receiving type certification in the primary category for the A5 from the FAA, and transitory supply chain disruptions driven by the COVID-19 pandemic contributed to the growing cash crunch.

An additional challenge facing the Debtors was that, prior to late 2023, flight certification of the A5 outside of the United States had not been obtained.  Although certification has since been received, the restrictions severely limited ICON's ability to market the A5 in other markets like Europe and China, where untapped markets could have yielded significant sales that would have allowed the Debtors to avoid the need for these Chapter 11 Cases.

b.    *Shareholder and Management Disputes*

On June 4, 2021, certain shareholders, directors, and former officers of the Company filed a lawsuit in Delaware Chancery Court, against certain other shareholders, directors, and the president of the Company, asserting direct and derivative claims regarding breach of fiduciary duties, unjust enrichment, fraudulent inducement, misappropriation of technology, and self-dealings (the "Derivative Lawsuit").[6]  The Company was named as a nominal defendant solely in connection with the derivative claims.

The Derivative Complaint was subsequently amended to, among other things, remove certain direct claims and add allegations regarding purported transfers of the Company's technology to China, the termination of the former Chief Executive Officer of the Company, a special committee of the Company that was formed in 2021, a financing transaction with East West Bank, and the appointment and resignations of various directors.  The Chancery Court denied the defendants' and the Company's Motions to Dismiss in January 2023, and discovery has commenced in the case.  Following the Petition Date, the Debtors filed a suggestion of bankruptcy in the Derivative Lawsuit, and the Derivative Lawsuit is currently stayed.

---

[6]    *See Asset Mgmt. Co. Venture Fund, L.P., et al. v. Shanghai Pudong Science & Tech. Inv. Co., Ltd.*, Case No. 2021-0475-JTL (Del. Ch. Ct. June 4, 2021).

On June 26, 2020, Kirk Hawkins filed a complaint against ICON Aircraft, Inc. and others in the Superior Court for the State of California, Los Angeles County, alleging, among other things, breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentations, retaliation, tortious interference with prospective economic advantage, and declaratory judgment relating to what Mr. Hawkins alleges to be a wrongful termination by ICON Aircraft, Inc. (the "State Court Suit").[7] Following the Petition Date, the Debtors filed a suggestion of bankruptcy in the State Court Suit, and the State Court Suit is currently stayed.

### c.    *CFIUS Investigation*

Pudong Science and Technology Investment (Cayman) Co., Ltd. ("PDSTI") is one of the Debtors' major shareholders, holding approximately fifty percent (50%) of the Debtors' outstanding preferred shares through one or more of its affiliate companies.  In August 2021, the Committee on Foreign Investment in the United States ("CFIUS") initiated a review of PDSTI's investment in the Debtors.  CFIUS cleared PDSTI's investment without the need for mitigation in February 2022.

### 2.    Initial Strategic Transactions Process

In November 2021, ICON Aircraft, Inc.'s Board of Directors (the "Board") was presented with a strategic business plan designed to make the Debtors EBITDA positive, and the Board approved such plan, which included, among other things, the engagement of Stifel Miller Buckfire.  Unfortunately, the engagement with Stifel Miller Buckfire did not result in any financing or strategic transactions.

In June of 2023, the Board then engaged SSG Advisors, LLC ("SSG") to assist in fundraising activities.  In January 2024, the Debtors received a letter of interest from a strategic aircraft manufacturer that proposed a merger of the two companies ("Merger LOI").  SSG presented the Board with a summary of the fundraising process and detailed explanation of the Merger LOI.

### 3.    Appointment of Special Committee

In January 2024, the Board formed a special committee (the "Special Committee") consisting solely of one independent director, Thomas G. FitzGerald.  The Special Committee is authorized by the Board to evaluate, negotiate, deem advisable, approve, execute, consummate and implement, or reject, strategic options with respect to the Debtors to the maximum extent permitted by the Debtors' charter, bylaws, stockholders agreement and the other organizational documents.  Specifically, the Special Committee was authorized to evaluate and move forward with a sale, financing, intellectual property licensing, business combination with a special purpose acquisition company, restructuring, reorganization, recapitalization, bankruptcy, insolvency or other transaction deemed necessary or desirable by the Special Committee; provided that the decision to file for bankruptcy remained a decision requiring the approval of the full Board.

---

[7]    *See Hawkins v. ICON Aircraft, Inc., et al.*, Case No. 20STCV24193 (Cal. Sup. Ct. June 26, 2020).

The Special Committee evaluated and negotiated the transaction contemplated by the Merger LOI.  Unfortunately, the proposed merger was unable to be completed primarily due to the lack of support from the Company's stakeholders and, in part, due to the strategic counterparty's decision not to proceed beyond preliminary due diligence.  Following the determination that the Merger LOI was not feasible, the Special Committee began to explore additional strategic alternatives—including an array of restructuring options and other potentially value maximizing transactions—as the Debtors' cash position became critically low.  After evaluating all strategic options and (after no other strategic option materialized), the Special Committee ultimately approved the facility with the proposed DIP lender and recommended a chapter 11 filing to the Debtors' full Board, who approved.  On April 4, 2024, the Debtors filed these Chapter 11 Cases.

4.    Prepetition Sale Process

SSG began its marketing and sale process on September 11, 2023.  The buyer universe included strategic investors such as aircraft manufacturers (including LSA manufacturers and electric vertical take off and landing ("eVTOL") vehicle manufacturers), airlines, aircraft solutions and services providers, power sport manufacturers and auto manufacturers.  SSG also approached parties for potential financing opportunities, including private equity, growth equity, venture capital firms and family offices that either invest in or have identified an interest in investing in aerospace and defense, general manufacturing and aircraft manufacturing, including companies of all categories (*e.g.*, business jets, small jets, twins and turbo props, light single engines, LSA and eVTOL), or invest in special situation type transactions.

SSG directly contacted 468 investors in total, and twenty parties ultimately executed a confidentiality agreement ("CA").  The Confidential Information Memorandum prepared by the Company and SSG along with data room access were provided to parties that executed the CA.  In an effort to supplement the marketing process, SSG also posted the opportunity on a no-names basis to several global deal platforms.  SSG also conducted outreaches to various Asian and Middle Eastern investment funds, venture lenders and high-net worth individuals.

While the marketing process was robust and generated interest from both strategic and financial buyers, no party was willing to move forward with a sale outside of the protections offered by chapter 11 of the Bankruptcy Code.

## III.    EVENTS DURING CHAPTER 11 CASE

### A.    Commencement of these Chapter 11 Cases and the Debtors' Professionals

On April 4, 2024 (the "Petition Date"), each of the Debtors filed a petition for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases were assigned to the Honorable Craig T. Goldblatt and are being jointly administered for procedural purposes only.

The Debtors retained, effective as of the Petition Date, Stretto, Inc. ("Stretto") as their claims and noticing agent [D.I. 3, 42].

B.      **First Day Motions**

On the Petition Date, the Debtors filed a number of motions and other pleadings (collectively the "First Day Motions") to ensure an orderly transition into chapter 11, including the following:

- motion to authorize the joint administration of these chapter 11 cases [D.I. 4];

- application to retain Stretto as the Debtors' claims and noticing agent and certain related relief [D.I. 5];

- motion to establish procedures for determining adequate assurance for the provision of utility services and to prohibit utility service providers from altering, refusing, or discontinuing service and certain related relief [D.I. 6];

- motion to authorize the Debtors to redact certain personally identifiable information and certain related relief [D.I. 7];

- motion to authorize the Debtors to maintain and administer their prepetition customer programs in the ordinary course of business and honor certain prepetition obligations thereto [D.I. 8];

- motion for authority to maintain certain insurance policies and programs, to honor insurance obligations and for certain related relief [D.I. 9];

- motion relating to the continued use of the Debtors' existing cash management system and certain related relief [D.I. 10];

- motion for authority to pay certain prepetition taxes and fees and certain related relief [D.I. 11];

- motion for authority to pay certain prepetition employee-related obligations and certain related relief [D.I. 12]; and

- motion for authority to obtain postpetition financing pursuant to a senior secured superpriority, debtor-in-possession, multiple draw term loan facility [D.I. 13].

The relief sought in the First Day Motions was granted on an interim or final basis, as applicable, on April 5, 2024.  *See* [D.I. 46; D.I. 47; D.I. 48; D.I. 49; D.I. 50; D.I. 51; D.I. 53; D.I. 54; and D.I. 55].  The Debtors were granted final approval of the First Day Motions not already granted on a final basis on or around May 6, 2024 [D.I. 139; D.I. 140; D.I. 144; D.I. 145; D.I. 146; D.I. 156; and D.I. 168].

C.      **Second Day Motions**

On or around April 17, 2024 and April 24, 2024, the Debtors filed a number of motions and other pleadings (collectively the "Second Day Motions") to ensure the preservation of value of the Debtors' assets through the Chapter 11 Cases:

- motion to retain Armanino [D.I. 77];

- application to retain Young Conaway as co-counsel to the Debtors [D.I. 78];

- application to retain Stretto as Debtors' administrative advisor [D.I. 79];

- application to retain SSG as Debtors' investment banker [D.I. 80];

- motion to pay critical vendors and certain related relief [D.I. 81];

- application to retain Sidley as co-counsel to the Debtors [D.I. 82];

- motion to extend time for the Debtors to file schedules and statements [D.I. 92];

- motion authorizing the Debtors to retain and compensate professionals utilized in the ordinary course of business and certain related relief [D.I. 93];

- motion to establish procedures for interim compensation [D.I. 94]; and

- motion to set bar dates for filing proofs of claim and certain related relief [D.I. 95].

The relief sought in the Second Day Motions was granted on a final basis, as applicable, on or around May 8, 2024. *See* [D.I. 141; D.I. 143; D.I. 147; D.I. 148; D.I. 149; D.I. 151; D.I. 152; D.I. 153; and D.I. 154].

### D.    Approval of the DIP

On April 4, 2024, the Debtors executed a debtor-in-possession financing facility with Feiren International Co., Ltd. (the "DIP Lender"), which the Bankruptcy Court approved on an interim basis on April 5, 2024. PDSTI, who holds approximately 50% of the of the Company's outstanding preferred shares through one or more of its affiliate companies and approximately $93,000,000 of the convertible unsecured notes—holds an indirect minority equity interest in the Proposed DIP Lender. The Proposed DIP Lender is also the licensee of the Intellectual Property License Agreement with ICON Aircraft, Inc., dated July 29, 2021. In addition, a PDSTI affiliate is party to an arrangement with the Proposed DIP Lender's ultimate parent, Shanghai Feiren Technology Co. Ltd. ("Feiren Shanghai"), pursuant to which the PDSTI affiliate agreed to manage all assets, business, and daily operations of Feiren Shanghai. All rights and obligations under the arrangement were then assigned to a different PDSTI affiliate.

The facility with the DIP Lender was the only debtor-in-possession financing offer received by the Debtors sufficient to fund these Chapter 11 Cases. The Debtors were granted final approval of the facility with the DIP Lender on May 8, 2024. *See* [D.I. 168]

### E.    Approval of the Proposed Bidding Procedures

On April 17, 2024, the Debtors filed the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of All or Substantially All of the Debtors'*

*Assets, (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [D.I. 11] (the "Bidding Procedures Motion") which seeks an order approving bidding procedures (the "Bidding Procedures Order") and an order (the "Sale Order") approving the sale of substantially all of the Debtors' assets (the "Sale").

Shortly after commencing these chapter 11 cases, SSG launched the postpetition marketing process. This process was designed to build upon the prepetition efforts by marketing the Debtors' assets to an even broader group of potential buyers, which included the parties contacted prepetition and additional parties identified by the Debtors and their advisors. The expanded process included strategic and financial parties as well as distress-oriented investors who may be interested in the Debtors' intellectual property and fixed assets. As a result, the Debtors and their advisors have increased the total pool of potential purchasers and the information available to such potential purchasers postpetition, all in an effort to maximize value for the Debtors' Estates.

As stated in the Bidding Procedures Motion, given the Debtors' liquidity situation and the robust prepetition marketing process, the Debtors have determined that their best opportunity to maximize the value of their Estates for the benefit of all the Debtors' stakeholders relies on their ability to expeditiously proceed through these chapter 11 cases and complete the proposed Sale (as defined below) in a manner that minimizes administrative expenses.

On May 9, 2024, the Bankruptcy Court entered the Bidding Procedures Order (a) approving certain procedures for interested parties to submit competing bids and, if applicable, participate in an auction (the "Auction") for the Assets (the "Bidding Procedures"), (b) approving the form and manner of the notice of the Auction and the Sale Hearing (the "Sale Notice"), and (c) establishing procedures for the assumption and assignment of the Assumed Contracts, among other things. The Bidding Procedures Order would provide the Debtors broad discretion to modify the timeline and other procedures set forth in the Bidding Procedures, in consultation with any Creditors' Committee and the DIP Agent (together the "Consultation Parties"),[8] in order to maximize value.[9]

---

[8]    Section III of the Bidding Procedures, entitled "Determination by the Debtors," provides that the Debtors will consult with the Consultation Parties "as appropriate throughout the Bidding Process."

[9]    Specifically, section XIV of the Bidding Procedures provides, "Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, reserves the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing; provided that the Debtors may not amend these Bidding Procedures or the Bidding Process to reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court."

Following entry of the Bidding Procedures Order, the Debtors served the Sale Notice on the Sale Notice Parties and published the Sale Notice in both the *Sacramento Bee* and the national edition of the *New York Times*.

### F.      The Stalking Horse Bid

The Debtors were permitted to, at any time prior to the Auction, in consultation with certain consultation parties designate a stalking horse bidder, whose qualified bid shall serve as the stalking horse bid.

On May 1, 2024, the Stalking Horse Bidder (defined below) delivered a copy of that certain Asset Purchase Agreement by and among Debtor ICON Aircraft, Inc., its Debtor affiliates, and SG Investment America, Inc. (the "Stalking Horse Bidder") (as amended, supplemented, or otherwise modified by the parties thereto, and including the exhibits, schedules or attachments thereto, the "Stalking Horse APA") to the Debtors that was executed by the Stalking Horse Bidder. The Stalking Horse APA contemplates the sale of substantially all of the Debtors' assets to the Stalking Horse Bidder for (i)  $13,000,000 in cash, plus (ii) the assumption of certain liabilities by the Stalking Horse Bidder (the "Purchase Price").

On May 1, 2024, pursuant to the Bidding Procedures, the Debtors filed a supplement to the Bidding Procedures Motion (the "Stalking Horse Supplement") (i) disclosing the material terms of the Stalking Horse APA and (ii) seeking approval of the designation of the Stalking Horse Bidder and the Stalking Horse APA.

Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid (the "Stalking Horse Objection") shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, (c) state, with specificity, the legal and factual bases thereof, and (d) be filed with the Bankruptcy Court and served on the Debtors and Stalking Horse Notice Parties no later than May 13, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Stalking Horse Objection Deadline").

A hearing to approve the Debtors' designation of the Stalking Horse Bidder, along with the bid protections set forth in the Stalking Horse APA, is scheduled for May 21, 2024 at 3:00 p.m. (prevailing Eastern Time).

### G.      Special Committee Investigation

As discussed in more detail above, in January 2024 the Board formed the Special Committee, which is composed of an independent director—Thomas G. FitzGerald.  Among other things, the Special Committee's mandate includes the authority to evaluate any Claims or Causes of Action of the Debtors, including those raised in the Derivative Lawsuit and the State Court Suit (the "Investigation Matters").

The Special Committee, with the assistance and advice of counsel, Young Conaway Stargatt & Taylor, LLP ("Young Conaway") is conducting an investigation of the Investigation Matters.  Following the completion of its investigation of the Investigation Matters, the Special Committee will recommend what, if any, Claims or Causes of Action should be retained by the

Debtors on the Retained Causes of Action list. The Retained Causes of Action list will be filed as a Plan Supplement document at least one week prior to the Voting Deadline.

### H.   Bar Dates

On April 24, 2024, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Notice of Bar Dates; and (III) Granting Related Relief* [D.I. 95] (the "Bar Date Motion") to establish certain bar dates for filing Proofs of Claim against the Debtors. On May 6, 2024, the Bankruptcy Court entered the order (the "Bar Date Order") approving the Bar Bate Motion.

The Bar Date Order provides, among other things, that each person or entity (excluding governmental units) that asserts a claim against the Debtors that arose (or is deemed to have arisen) before the Petition Date shall be required to file an original written Proof of Claim so that such Proof of Claim is actually received on or before June 3, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Claims Bar Date"). All governmental units holding claims that arose (or is deemed to have arisen) before the Petition Date shall be required to file an original written Proof of Claim so that such Proof of Claim is actually received on or before October 1, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "Government Claims Bar Date").

The Debtors anticipate commencing the process of reviewing Proofs of Claim in the near future and expect that they may file one or more claims objections once that process is underway. Consequently, the Debtors anticipate that the figures set forth above in Article I.D, which reflect estimates of Allowed Claims, may change significantly following the claims reconciliation process.

### I.   Creditors' Committee Appointment

As of the filing of this Disclosure Statement, no Creditors' Committee has been appointed in these Chapter 11 Cases.

## IV.   TREATMENT OF CLAIMS AND INTERESTS

### A.   Unclassified Claims

#### 1.   Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, and notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Plan Administrator (as applicable) and their counsel, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such Proofs of Claim must be Filed and served on the requesting party within one hundred twenty (120) days after the Effective Date. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.D of the Plan, Holders of Administrative Claims that do not File and serve a Proof of Claim or application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Plan Administrator, the Estates, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court.**

a. *DIP Claims*

Except to the extent that a Holder of a DIP Claim agrees to a different treatment, each Holder of a DIP Claim shall receive, in full and final satisfaction of such Claim (1) the proceeds of the Sale or any other sale of the DIP Facility Collateral; and (2) in the event that the DIP Lender determines to exercise its right to credit bid resulting in a sale of the DIP Facility Collateral to the DIP Lender or its designee, ownership of such assets; *provided* with respect to clause (2) above, such satisfaction, compromise, settlement, release, and discharge of the DIP Claims shall be equal to and not exceed the amount of the applicable credit bid by the DIP Lender with respect to such assets.

The DIP Secured Party Expenses shall constitute Allowed Administrative Claims with priority over all administrative expenses of the kind specified in sections 503(b) and 507 of the Bankruptcy Code, except for the Professional Fee Claims, and shall be paid in full in Cash no later than the Effective Date and without any requirement to file a fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval. The DIP Secured Party Expenses shall not be discharged, modified, or otherwise affected by the Plan and shall not be subject to disgorgement, setoff, disallowance, impairment, challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, subordination, recharacterization, avoidance, or other claim or cause of action of any nature under the Bankruptcy Code or applicable nonbankruptcy law

b. *Statutory Fees*

All Statutory Fees due and payable to the U.S. Trustee prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-

MOR. After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court UST Form 11-PCR reports when they become due, until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors or the Plan Administrator (as applicable) shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of the Debtors' case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Neither the U.S. Trustee nor any other Governmental Unit is required to File a request for an Administrative Claim for Statutory Fees. The U.S. Trustee shall not be treated as providing any release under the Plan.

c. <em>Professional Compensation</em>

(i)    <strong>Final Fee Applications and Payment of Professional Fee Claims</strong>.

All requests for payment of Professional Fee Claims by Retained Professionals (other than OCPs) for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals (other than OCPs) after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, except to the extent such procedures are inconsistent with the express terms of the Plan. Unless otherwise agreed to by the Debtors and the Retained Professional, the Plan Administrator shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve.

(ii)    <strong>Administrative Claims of OCPs</strong>.

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Plan Administrator (as applicable) from the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

(iii)    <strong>Post-Confirmation Date Fees and Expenses</strong>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Plan Administrator (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Plan Administrator (as applicable). Upon the Confirmation Date, any requirement that the Retained Professionals comply with sections 327 through 331, 363, and 1003 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Plan Administrator (as applicable) may employ and pay any Retained Professional in the ordinary

course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

(iv)   **Professional Fee Reserve.**

The Retained Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than two (2) Business Days before the Confirmation Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Retained Professionals' final request for payment of Filed Professional Fee Claims. If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional. The Debtors shall fund and reserve the Professional Fee Reserve until payment in full of all Allowed Professional Fee Claims. If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator as Allowed Administrative Claims. The Professional Fee Reserve cannot be used to pay any Secured, Priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

2.   Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Plan Administrator (as applicable) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**B.   Classified Claims**

1.   Class 1 – Other Secured Claims

    a.   **Composition**. Class 1 consists of all Other Secured Claims against the Debtors.

    b.   **Treatment**. On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

    c.   **Voting**. Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of

Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims

a.      **Composition**. Class 2 consists of all Other Priority Claims against the Debtors.

b.      **Treatment**.  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

c.      **Voting**. Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Noteholder Claims

a.      **Composition**.  Class 3 consists of all Noteholder Claims against the Debtors.

b.      **Treatment**.  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Noteholder Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Noteholder Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the other Plan Beneficiaries.

c.      **Voting**.  Class 3 is Impaired, and Holders of Noteholder Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – General Unsecured Claims

a.      **Composition**.  Class 4 consists of all General Unsecured Claims against the Debtors.

b.      **Treatment**.  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full

31646352.3

24

and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the other Plan Beneficiaries.

    c.    **Voting**.  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – Intercompany Claims</u>

    a.    **Composition**.  Class 5 consists of all Intercompany Claims.

    b.    **Treatment**.  On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims.

    c.    **Voting**.  Class 5 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Section 510(b) Claims</u>

    a.    **Composition**.  Class 6 consists of all Section 510(b) Claims against the Debtors.

    b.    **Treatment**.  On the Effective Date, all Section 510(b) Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claims.

    c.    **Voting**.  Class 6 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 – Interests</u>

    a.    **Composition**.  Class 7 consists of all Interests in the Debtors.

    b.    **Treatment**.  On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

      c.      **Voting**.  Class 7 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Interests Claims are not entitled to vote to accept or reject the Plan.

8.      <u>Class 8 – Intercompany Interests</u>

      a.      **Composition**.  Class 8 consists of all Intercompany Interests.

      b.      **Treatment**.  On the Effective Date, all Intercompany Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Intercompany Interests shall not receive any distribution, property, or other value under the Plan on account of such Interest.

      c.      **Voting**.  Class 8 is Impaired, and Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 8 Intercompany Interests Claims are not entitled to vote to accept or reject the Plan.

**C.**      **Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Plan Administrator's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

**D.**      **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.**      **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan.

**F.**      **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Hearing.

### G.    Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Plan Administrator (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtors hereby request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plan.

### I.    Reservation of Rights Regarding Claims

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors' or the Plan Administrator's respective rights and defenses, whether legal or equitable, with respect to any Claim, including without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### J.    Post-Petition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, post-petition interest will not accrue or be payable on account of any Claim.

### K.    Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## V.    MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General Settlement of Claims and Interests

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any

31646352.3

distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

### B.     Sources of Consideration for Plan Distributions

Subject to the provisions of the Plan concerning the Professional Fee Reserve and the Wind-Down Budget, the Debtors or the Plan Administrator (as applicable) shall fund distributions under the Plan with (1) Cash on hand on the Effective Date; and (2) all other Plan Assets. Distributions to Plan Beneficiaries shall occur *pro rata* from the Plan Assets.

### C.     Sale Transaction

The Debtors shall engage in a process for the sale of all or substantially all of their assets and shall seek approval of the Sale Motion and the entry of the Sale Order, which shall approve the sale of all or substantially all of the Debtors' assets to the Purchaser(s) pursuant to the Asset Purchase Agreement(s).

### D.     Wind-Down

Following the Effective Date, the Plan Administrator shall wind-down the affairs and operations of the Debtors and their Estates, including, but not limited to: (1) liquidating any remaining assets; (2) prosecuting the Retained Causes of Action, if any, and any other claims or Causes of Action of the Debtors preserved in the Plan; and (3) making distributions to Holders of Allowed Claims in accordance with the terms of the Plan.

The responsibilities and authority of the Plan Administrator shall include the following rights and responsibilities: (1) preserving and liquidating any remaining assets; (2) prosecuting the Retained Causes of Action, if any; (3) administering and paying taxes, including, among other things, (a) filing tax returns (to the extent not the obligation of any Purchaser), and (b) representing the interest and account of the Debtors before any taxing authority in all matters; (4) retaining and paying, without the need for retention or fee applications, professionals in connection with the Plan Administrator's performance of its duties under the Plan; (5) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (6) Filing an application for entry by the Bankruptcy Court of a final decree closing these Chapter 11 Cases; (7) making distributions to Professionals for Allowed Professional Fee Claims from the Professional Fee Reserve; (8) making distributions to Holders of Allowed Claims in accordance with the terms of the Plan; (9) procuring the necessary insurance to facilitate the Wind-Down, including appropriate D&O Policies; and (10) such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

E.    **Limited Substantive Consolidation**

The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for purposes of the Plan, including voting on the Plan by Holders of Claims and making any Plan Distributions to Holders of Claims.  Specifically, on the Effective Date, (1) all assets and liabilities of the Debtors will, solely for voting and Plan Distribution purposes, be treated as if they were merged; (2) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors; (3) any Claims Filed or to be Filed in these Chapter 11 Cases will be deemed single Claims against all of the Debtors; (4) all transfer, disbursements, and Plan Distributions on account of Claims made by or on behalf of any of the Debtors' Estates will be deemed to be made by or on behalf of all of the Debtors' Estates; and (5) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.  Holders of Allowed Claims entitled to Plan Distributions under the Plan shall be entitled to their share of assets available for distribution to such Claim without regard to which Debtor was originally liable for such Claim.  Except as set forth in the Plan, such limited substantive consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Debtors.

F.    **Vesting of Assets**

Except as otherwise provided in the Plan or the Sale Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, any remaining assets, including all Plan Assets, claims, rights, Retained Causes of Action, Causes of Action, and any remaining property acquired by the Debtors under or in connection with the Plan, shall vest in each respective Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Subject to the terms of the Plan, on and after the Effective Date, the Plan Administrator may use, acquire, and dispose of any of the remaining assets, and may prosecute, compromise, or settle any Claims and Causes of Action, including the Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

G.    **Preservation of Causes of Action**

Except as otherwise provided in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and vest in the Debtors on the Effective Date.  Except as may otherwise be expressly set forth in the Retained Causes of Action, no Causes of Action shall be retained or preserved against the Debtors' directors and officers.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Causes of Action of the Debtors against it.

H.    **Corporate Action**

On the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes unless the Plan

Administrator determines that dissolution can have any adverse impact on the remaining assets, including the Retained Causes of Action; *provided*, that neither the Debtors nor any party released pursuant to Article IX of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, that nothing in the Plan shall be construed as relieving the Debtors or the Plan Administrator (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Debtors' cases or the cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan or the Confirmation Order.

## I.        Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator.  The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

## J.        Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtors or the Plan Administrator (as applicable), all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## K.        Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles

or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

### L.    Sale Order

Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall affect, impair or supersede the Sale Orders or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### M.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### N.    Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies held by the Debtors, the Creditors' Committee, if any, and the DIP Secured Parties that are settled by the Plan. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and their Estates, and is fair, equitable and reasonable. Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

## VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.    General Treatment

On the Effective Date, except as otherwise provided in the Plan (which exclusion includes the D&O Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or the Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

B.     **Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.4 of the Plan.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties.**

C.     **Reservation of Rights**

Neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

D.     **Preexisting Obligations to Debtors Under Executory Contracts or Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular,

notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### E.    D&O Policies

Each D&O Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code.  Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies.  In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Policies.

### F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

### G.    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### H.    Employee Compensation and Benefits

All employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

## VII.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any

31646352.3

33

of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims or as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Plan Administrator (as applicable); *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

### B.    Compliance with Tax Requirements

In connection with the Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under the Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipients for all purposes of the Plan.

Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator and any Claim in respect of such distribution under the Plan shall be discharged and forever barred from assertion against such Debtor, the Plan Administrator, or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### C.    Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Disbursing Agent

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Plan Administrator.

### E.    Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

### F.    Surrender of Instruments

As a condition precedent to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within ninety (90) calendar days after the mailing of such distribution, the Plan Administrator shall be authorized to cancel such distribution check and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable distribution or uncashed distribution, as applicable.  If, after the passage of thirty (30) calendar

days after such Filing, the payment or distribution on the Allowed Claim still cannot be made, then (1) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Plan Administrator; and (2) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### H.    Manner of Payment

Except as specifically provided in the Plan, at the option of the Debtors or the Plan Administrator, as applicable, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### I.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, on the Petition Date.

### J.    Setoffs and Recoupments

The Debtors and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or nonbankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claim the Debtors or their Estates may have against the Holder of such Claim.

### K.    Minimum Distributions

No payment of Cash in an amount of less than one hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Wind-Down Budget.  If the Cash available for the final distribution is less than the cost to distribute such funds, the Plan Administrator may donate such funds to the unaffiliated charity of its choice.

### L.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

**M.      Distributions Free and Clear**

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan, including distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

**N.      Claims Paid or Payable by Third Parties**

1.      <u>Claims Paid by Third Parties</u>

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors and/or the Plan Administrator (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors and/or the Plan Administrator (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors and/or the Plan Administrator (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtors or Plan Administrator (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article IX of the Plan, nothing in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Plan Administrator, may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained therein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

31646352.3

## VIII.   PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.  Allowance of Claims

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.   Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.   Estimation of Claims

Before or after the Effective Date, the Debtors or the Plan Administrator (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged or disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.   Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by Purchaser(s) in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

### E.      Time to File Objections to Claims

Except as otherwise provided in the Plan, any objections to Claims shall be Filed on or before the Claims Objection Bar Date (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

### F.      Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtors or the Plan Administrator (as applicable), any Holder of a Claim Filed, via Proof of Claim, after the Bar Date shall not receive any distributions on account of such Claims, unless on or before the Combined Hearing such late Claim has been deemed timely Filed by a Final Order.

### G.      Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan.  A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors or the Plan Administrator from such Holder have been paid.

### H.      Disputed Claims Reserve

The Debtors or the Plan Administrator (as applicable) shall establish and maintain a Disputed Claims Reserve, which shall hold amounts as necessary to reserve for each of the Disputed Claims to the extent such Disputed Claims are subsequently Allowed and entitled to distributions, or such lower amounts as may be determined by the Bankruptcy Court.

### I.      Amendment to Claims

Except as provided in the Plan, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Plan Administrator, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### J.      No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

### K.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## IX.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions to Effective Date

The occurrence of the Effective Date of the Plan is subject to each of the following conditions precedent.

1.      The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Confirmation Order shall have been entered and shall be in full force and effect.

3.      There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by the Plan from being consummated.

4.      The Professional Fee Reserve shall have been fully funded pursuant to the terms of the Plan.

5.      The Debtors shall have sufficient Cash to satisfy all DIP Secured Party Expenses upon the Effective Date.

6.      All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.      The Plan Administrator shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

8.      The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement the Plan and any transaction contemplated hereby that are required by law, regulation, or order.

B.      **Waiver of Conditions to Effective Date**

Unless otherwise specifically provided for in the Plan, the conditions set forth in Article VIII.A of the Plan may be waived in whole or in part by the Debtors without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

C.      **Effect of Vacatur of the Confirmation Order**

If the Confirmation Order is vacated (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

D.      **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

X.      **EXCULPATION, RELEASES, AND INJUNCTION**

A.      **Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party[10] shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action for any Claim related to any act or omission occurring between the Petition Date and the Effective Date of the Plan in connection with, relating to, or arising out of, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other act, occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

---

[10]   As set forth in the Plan, "Exculpated Party" means, in each case in its capacity as such, (a) the Debtors; (b) the Debtors' directors and officers during these Chapter 11 Cases; (c) the Creditors' Committee, if any; and (d) the Retained Professionals.

### B.    Releases

#### 1.    Releases by the Debtors

As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party[11] is deemed released by the Debtors and their estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, if any.

---

[11]    As set forth in the Plan, "Released Party" means each of, and in each case in its capacity as such: (a) the Debtors; (b) the DIP Secured Parties; (c) the Creditors' Committee, if any; and (d) each Related Party of the Debtors or the Creditors' Committee, including any professional retained by the Debtors, DIP Secured Parties, or the Creditors' Committee, if any, in connection with these Chapter 11 Cases.  Notwithstanding the foregoing, the definition of "Released Party" shall not include any Non-Released Parties.

"Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, the Special Committee, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

Each Person and Entity deemed to grant the Debtors releases shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

          2.    <u>Releases by Holders of Claims and Interests</u>

As of the Effective Date, each Releasing Party[12] is deemed to have released each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any

---

[12]    As set forth in the Plan, "<u>Releasing Party</u>" means collectively, and in each case, in their respective capacities as such, (a) the DIP Secured Parties; (b) the Creditors' Committee, if any; (c) all Holders of Claims deemed hereunder to have accepted the Plan that have not filed an objection to the release contained in Article IX herein prior to the Voting Deadline; (d) all Holders of a Claim that (i) vote to accept or reject the Plan and do not timely submit a Release Opt-Out, or (ii) do not vote to accept or reject the Plan and either do not timely submit a Release Opt-Out or do not file an objection to the releases contained in Article IX herein prior to the Voting Deadline; (e) all Holders of Claims or Interest deemed hereunder to have rejected the Plan that have not filed an objection to the release contained in Article IX herein prior to the Voting Deadline or otherwise timely submitted a Release Opt-Out; (f) each current and former Affiliate of each Person or Entity in clauses (a) through (e) solely to the extent such Affiliate may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (e); and (g) each Related Party of each Entity in clauses (a) through (e) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (e).

other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person; *provided further*, that notwithstanding anything to the contrary in the Disclosure Statement and Plan, this provision shall not apply with respect to any unimpaired Claim until such unimpaired Claim has been paid in full in the Allowed amount of such Claim determined in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Debtors or the Plan Administrator, as applicable, at which time this provision shall apply in all respects as to the applicable unimpaired Claim. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, recovery on account of which, other than with respect to the Severance Payment Claim, if any.

Each Person and Entity deemed to grant the releases described in this Section shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

C.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a Purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to,

**any released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Released Parties, or Exculpated Parties (as applicable): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding any other indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released or settled pursuant to the Plan.**

**Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtors, the Plan Administrator, and their respective affiliates, employees, advisors, officers and directors, or agents.**

### D.    No Discharge

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests.

### E.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including

the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

## XI.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to each of the following:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.      Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action, if any.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

31646352.3

46

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13. Determine any other matters that may arise in connection with or related to the Sale Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20. To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

21. To hear and determine any Causes of Action that may be brought by the Plan Administrator.

22. To hear and determine any other rights, claims, or Causes of Action held by or accruing to the Debtors or the Plan Administrator pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

23. Enter an order or final decree concluding or closing these Chapter 11 Cases.

24. Enforce all orders previously entered by the Bankruptcy Court.

25. Hear any other matter over which the Bankruptcy Court has jurisdiction.

## XII.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

In the event that the Sale is not consummated prior to the Effective Date, the Debtors shall use commercially reasonable efforts to modify the Plan to effectuate and structure the Plan in a tax efficient manner as determined by the Debtors and the Purchaser(s).

### B.    Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.    Revocation of the Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtors, reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## XIII.   MISCELLANEOUS PROVISIONS

### A.   Debtors' Operation from Combined Hearing Through Effective Date

During the period from the Combined Hearing through and until the Effective Date, the Debtors shall continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B.   Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder is entitled to receive any distribution under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### C.   Dissolution of the Creditors' Committee

On the Effective Date, any duly appointed official committee of unsecured creditors will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases; *provided,* that, after the Effective Date, the Creditors' Committee (if any) will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Creditors' Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (2) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order.  Following the Effective Date, the Creditors' Committee's Retained Professionals, if any, shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) – (2).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### D.   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.    Term of Injunctions or Stays

Except as otherwise provided in the Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that these Chapter 11 Case are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### F.    Inconsistency

In the event of an inconsistency between the Plan and the Disclosure Statement, or the Plan and the Plan Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

### G.    Exhibits and Schedules

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

### H.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Plan Administrator (as applicable), all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### I.    Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

31646352.3

### J.        Nonseverability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

### K.        Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### L.        Successors and Assigns

Except as expressly provided otherwise in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### M.        Determination of Tax Liabilities

As of the Effective Date, the Plan Administrator will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates (to the extent not the responsibility of the Purchaser(s)); *provided*, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to the Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Plan Administrator (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' Estate for any tax incurred during the administration of these Chapter 11 Cases.

### N.        Preservation of Books and Records

On the Effective Date, the Debtors shall provide the Plan Administrator with timely access to all of the books and records of the Debtors in the Debtors' possession.  The Debtors shall also

31646352.3

instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator.

### O.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### P.    Closing of Chapter 11 Cases

After the full administration of these Chapter 11 Cases, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

### Q.    Service of Documents

In order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

1.  The Debtors

> **ICON Aircraft, Inc.**
> Attn: Jerry Meyer
> 2141 Icon Way, Suite 100,
> Vacaville, CA 95688
> Email: jerry.meyer@iconaircraft.com
>
> With a copy to:
>
> **Sidley Austin LLP**
> Attn: Samuel A. Newman
> 1999 Avenue of the Stars, 19th Floor
> Los Angeles, CA 90067
> fsadler@sidley.com
> sam.newman@sidley.com
>
> -and-

31646352.3

**Sidley Austin LLP**
Attn: Charles M. Persons
     Jeri Leigh Miller
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
cpersons@sidley.com
jeri.miller@sidley.com

-and-

**Young Conaway Stargatt & Taylor, LLP**
Attn: Sean M. Beach
     Ashley Jacobs
1000 N. King Street
Wilmington, DE 19801
sbeach@ycst.com
ajacobs@ycst.com

2. The Plan Administrator: to be included in the Plan Supplement

## XIV.  RISK FACTORS

Prior to voting on the Plan, Holders of Claims in Classes 3 and 4 as well as entities in non-voting Classes, should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the Exhibits hereto.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation. See Article XV for a discussion of tax law considerations.

### A.  Bankruptcy Law Considerations

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to holders of Allowed Claims under the Plan but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes.

#### 1.  <u>The Sale May Not Be Approved and/or Confirmation Could Be Delayed</u>

If the Sale is not approved, the Debtors will consider all available restructuring alternatives, including the filing of an alternative chapter 11 plan, converting to cases under chapter 7, and any other transaction that would maximize the value of the Debtors' Estates.  The terms of any alternative proposal may be less favorable to Holders of Claims against and Interests in the Debtors than the terms of the Plan as described in this Disclosure Statement.

Any material delay in the confirmation of the Plan, the Chapter 11 Cases, or the threat of rejection of the Plan by the Bankruptcy Court would add substantial expense and uncertainty to the process.

The uncertainty surrounding a prolonged liquidation would have other adverse effects on the Debtors.  For example, it would adversely affect:

- the Debtors' ability to raise additional capital;

- the Debtors' liquidity;

- the Debtors' enterprise value;

- how the Debtors' assets are viewed by investors, lenders, and the market as a whole; and

- the Debtors' business relationships with customers and vendors.

2. <u>Parties in Interest May Object to Provisions of the Plan, Including the Release and Exculpation Provisions and the Plan's Classification Scheme</u>

There is no guarantee that the Plan will be confirmed.  If the Plan, or a substantially similar plan, is not confirmed, the terms and timing of any plan of liquidation ultimately confirmed in these Chapter 11 Cases, and the treatment of Claims and Interest will be unknown.  In addition, if the Plan is not confirmed, a significant risk exists that these Chapter 11 Cases may be converted to cases under chapter 7.  In that event, the Debtors believe that creditor recoveries would be substantially diminished.

In particular, certain parties may object to the release and exculpation provisions in the Plan.  The Debtors believe that any such objection is without merit; however, in the event that an objection is filed and sustained by the Bankruptcy Court and such release and/or exculpation provisions are modified or stricken from the Plan, it may prevent the Debtors from being unable to confirm the Plan or any other chapter 11 plan.

In addition, there is no guarantee that the Bankruptcy Court will agree with the classification of Claims and Interests as proposed by the Plan.  Section 1122 of the Bankruptcy Code provides that a chapter 11 plan may place a claim or an equity interest in a particular class only if that claim or interest is substantially similar to the other claims or interests in that class.  As is described herein, the Debtors believe that the Plan's classification of Claims and Interests complies with the requirements under the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

3. <u>The Conditions Precedent to the Effective Date May Not Occur</u>

The Plan provides that there are conditions precedent to the occurrence of the Effective Date.  There is no guarantee as to the timing of the Effective Date.  Additionally, if the conditions precedent to the Effective Date are not satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order.  In that event, the Plan would be deemed null and void, and the Debtors or any other party may propose or solicit votes on an alternative plan of liquidation that may not be as favorable to parties in interest as the Plan.

4.      The Debtors May Fail to Satisfy the Vote Requirements

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may need to seek to confirm an alternative chapter 11 plan or transaction.  There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the Holders of Interests and Allowed Claims as those proposed in the Plan, and the Debtors do not believe that any such transaction exists or is likely to exist that would be more beneficial to the Estates than the Plan.

5.      The Debtors May Not Be Able to Secure Nonconsensual Confirmation Over Certain Impaired, Non-Accepting Classes

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtors' request if at least one Impaired Class has accepted the Plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each Impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired Class(es).  The Debtors believe that the Plan satisfies these requirements, and the Debtors may request such nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

6.      The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (a) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (b) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

7.      The Debtors May Object to the Amount or Classification of a Claim

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection.  Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

31646352.3

8. <u>Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan</u>

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

**B.      Allowance of Claims**

This Disclosure Statement has been prepared based on preliminary information concerning filed Claims and the Debtors' books and records. The actual amount of Allowed Claims may differ from the Debtors' current estimates.

1. <u>The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims</u>

The distributions available to Holders of Allowed Claims in Classes 3 and 4 under the Plan can be affected by a variety of contingencies, including, without limitation, the amount of Allowed Administrative Claims, Priority Tax Claims, Class 1 Claims, and Class 2 Claims, thereby reducing the amount of distributions available for other Holders of Allowed Claims. Additionally, distributions available to Holders of Allowed Claims in Classes 3 and 4 can be affected by the aggregate amount of Allowed Claims in Classes 1 and 2. The Debtors cannot determine with any certainty at this time the number or amount of such Claims that will ultimately be Allowed. Thus, the projected recoveries for Holders of Allowed Claims in Classes 3 and 4 disclosed in this Disclosure Statement are highly speculative.

2. <u>Any Valuation of Any Assets to be Distributed Under the Plan is Speculative</u>

Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, including but not limited to the potential recoveries, if any, in respect of any Retained Causes of Action. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Holders of Allowed Claims in Classes 3 and 4.

3.      The Debtors Cannot Guarantee the Timing of Distributions

The timing of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, the Debtors cannot guarantee the timing of any recovery on an Allowed Claim.

4.      Certain Tax Implications of the Debtors' Bankruptcy

Holders of Allowed Claims should carefully review Article XV of this Disclosure Statement, "Certain U.S. Federal Income Tax Consequences of Consummation of the Plan," for a description of certain tax implications of the Plan and the Debtors' Chapter 11 Cases.

## C.      Risks Related to the Debtors' Businesses

1.      The Debtors Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Cases

For the duration of the Chapter 11 Cases, the Debtors' ability to consummate the Sale and Plan Distributions contemplated in the Plan will be subject to the risks and uncertainties associated with bankruptcy.   These risks include the following: (a) ability to develop, confirm, and consummate the Plan; (b) ability to obtain Bankruptcy Court approval with respect to motions Filed in the Chapter 11 Cases from time to time; (c) ability to close a value maximizing Sale; (d) ability of third parties to seek and obtain Bankruptcy Court approval to terminate or shorten the exclusivity period for the Debtors to propose and confirm a chapter 11 plan, to appoint a chapter 11 trustee, or to convert the Chapter 11 Cases to chapter 7 proceedings; and (e) the actions and decisions of the Debtors' creditors and other third parties who have interests in the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

These risks and uncertainties could affect the Debtors' businesses and operations in various ways.  For example, negative events associated with the Chapter 11 Cases could adversely affect the Debtors' relationships with suppliers, service providers, customers, employees, and other third parties, which in turn could adversely affect the Debtors' Sale.  Also, the Debtors will need the prior approval of the Bankruptcy Court for transactions outside the ordinary course of business, which may limit the Debtors' ability to respond timely to certain events or take advantage of certain opportunities.  Because of the risks and uncertainties associated with the Chapter 11 Cases, the Debtors cannot accurately predict or quantify the ultimate impact of events that occur during the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

2.      Operating in Bankruptcy for a Long Period of Time May Harm the Debtors' Businesses

A long period of operations under Bankruptcy Court protection could have a material adverse effect on the Debtors' marketing and sale of their assets and liquidity.  So long as the proceedings related to the Chapter 11 Cases continue, senior management will be required to spend a significant amount of time and effort dealing with the Chapter 11 Cases instead of focusing exclusively on maximizing the value of the assets through a sale.  A prolonged period of operating under Bankruptcy Court protection also may make it more difficult to retain management and other key personnel necessary to the success of the Debtors' sale process.

So long as the proceedings related to the Chapter 11 Cases continue, the Debtors will be required to incur substantial costs for professional fees and other expenses associated with the administration of the Chapter 11 Cases.  The chapter 11 proceedings also required the Debtors to seek debtor-in-possession financing to fund operations.  If the Debtors are unable to fully draw on the availability under their debtor-in-possession financing facility, the chances of conversion to a chapter 7 proceeding may be increased, and, as a result, creditor recoveries may be significantly impaired.

3. The Debtors' Business Is Subject to Various Laws and Regulations That Can Adversely Affect the Cost, Manner, or Feasibility of Doing Business

The Debtors' operations are subject to various federal, state and local laws and regulations, including occupational health and safety laws.  The Debtors may be required to make large expenditures to comply with such regulations.  Failure to comply with these laws and regulations may result in the suspension or termination of operations and subject the Debtors to administrative, civil and criminal penalties, which could have a material adverse effect on the recoveries set forth in the Plan.

4. The Loss of Key Personnel Could Adversely Affect the Debtors' Operations

The Debtors' operations are dependent on a relatively small group of key management personnel and a highly-skilled employee base.  The Debtors' recent liquidity issues and the Chapter 11 Cases have created distractions and uncertainty for key management personnel and employees.  As a result, the Debtors may experience increased levels of employee attrition.  Because competition for experienced personnel can be significant, the Debtors may be unable to find acceptable replacements with comparable skills and experience, and the loss of such key management personnel could adversely affect the Debtors' ability to operate their businesses for the benefit of maximizing value during the Sale.

**D.    Disclosure Statement Disclaimer**

1. The Financial Information Contained in This Disclosure Statement Has Not Been Audited

In preparing this Disclosure Statement, the Debtors and their advisors relied on financial data derived from the Debtors' books and records that was available at the time of such preparation.  Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information, and any conclusions or estimates drawn from that financial information, provided in this Disclosure Statement, and although the Debtors believe that the financial information herein fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant that the financial information contained herein, or any conclusions or estimates drawn therefrom, is without inaccuracies.

2. Information Contained in This Disclosure Statement Is For Soliciting Votes

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

3.      This Disclosure Statement Was Not Reviewed or Approved by the SEC

This Disclosure Statement was not filed with the Securities and Exchange Commission ("SEC") under the Securities Act or applicable state securities laws.  Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement or the exhibits or the statements contained in this Disclosure Statement.

4.      This Disclosure Statement May Contain Forward Looking Statements

This Disclosure Statement may contain "forward looking statements" within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, as amended. Statements containing words such as "may," "believe," "anticipate," "expect," "intend," "plan," "project," "projections," "business outlook," "estimate," or similar expressions constitute forward-looking statements and may include, without limitations, information regarding the Debtors' expectations with respect to future events.  These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those risks described in this Article.

5.      No Legal or Tax Advice Is Provided to You by This Disclosure Statement

This Disclosure Statement is not legal advice to you.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Interest should consult his or her own legal counsel, accountant or other applicable advisor with regard to any legal, tax and other matters concerning his, her or its Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

6.      No Admissions Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Interests, or any other parties in interest.

7.      Failure to Identify Potential Objections

No reliance should be placed on the fact that a particular Retained Cause of Action or potential objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement.  The Plan Administrator may, pursuant to the Plan, object to applicable Claims or Interests after the Effective Date of the Plan irrespective of whether this Disclosure Statement identifies a particular Retained Cause of Action or objection to a Claim.

8.      No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a Holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any Claims, Causes of Action or rights of the Debtors (or any entity, as the case may be) to object to that Holder's Claim or Interest, or recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any Claims or Causes of Action of the Debtors or their Estates are specifically or generally identified in this Disclosure Statement.

31646352.3

9.      <u>Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors</u>

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement.  Although the Debtors' advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

10.     <u>Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update</u>

The statements contained in this Disclosure Statement are made by the Debtors as of the date of this Disclosure Statement, unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply that there has not been a change in the information set forth in this Disclosure Statement since that date.  While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

11.     <u>No Representations Outside This Disclosure Statement are Authorized</u>

No representations concerning or relating to the Debtors, these Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.  You should promptly report unauthorized representations or inducements to counsel to the Debtors and the U.S. Trustee.

## XV.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and certain Holders of Allowed Claims.  The following summary is based on the Internal Revenue Code of 1986, as amended (the "<u>IRC</u>"), Treasury Regulations promulgated thereunder, judicial decisions, administrative rules, and pronouncements as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described herein.  This summary addresses certain U.S. federal income tax consequences only to Holders of Claims that are entitled to vote (i.e., Holders of Claims in Classes 3 and 4) and it does not address the U.S. federal income tax consequences to Holders of Interests or to Holders of Claims that are not entitled to vote on the Plan. The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.

This discussion does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder of an Allowed Claim in light of such Holder's particular facts and circumstances (such as the effects of Section 451(b) of the IRC conforming the timing of certain

income accruals to financial statements). In addition, this summary addresses only U.S. federal income taxes. Thus, the following discussion does not address foreign, state, or local tax consequences, or any estate, gift, or other non-income tax consequences, of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan to Holders of Allowed Claims that are subject to special treatment under the IRC (such as Persons who are related to the Debtors within the meaning of the IRC, Holders liable for the alternative minimum tax, Holders whose functional currency is not the U.S. dollar, Holders that received their Claims as compensation, broker dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax exempt organizations, governmental entities, pass-through entities such as partnerships or S corporations and investors therein, and Holders of Claims who are themselves in bankruptcy). Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular Holder of a Claim.

If a partnership (including any entity or arrangement treated as a partnership for U.S. federal income tax purposes) holds an Allowed Claim, the tax treatment of a partner or other investor in such partnership will generally depend upon the status of the partner or investor and the activities of the partnership. If you are a partner or other investor in a partnership holding an Allowed Claim, you should consult your tax advisors.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of Allowed Class 3 or 4 Claims that is: (A) an individual citizen or resident of the United States for U.S. federal income tax purposes; (B) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (C) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (D) a trust (1) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons have authority to control all substantial decisions of the trust or (2) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person (as defined in the IRC), and a "Non-U.S. Holder" is a Holder (other than an entity treated as a partnership for U.S. federal income tax purposes) that is not a U.S. Holder.

The following discussion assumes that the Plan will be implemented as described herein and does not address the tax consequences if the Plan is not carried out. Furthermore, this discussion assumes that Holders of Allowed Claims only hold Claims in a single Class. This discussion further assumes that the various debt and other arrangements to which the Debtors are a party will be respected for U.S. federal income tax purposes in accordance with their form. In addition, a substantial amount of time may elapse between the confirmation date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as additional tax legislation, court decisions or administrative changes, could affect the U.S. federal income tax consequences of the Plan and the transactions contemplated thereunder.

This summary of the U.S. federal income tax consequences of the Plan is not binding on the Internal Revenue Service ("IRS"), and no ruling will be sought or has been sought from the IRS with respect to any of the tax aspects of the Plan, no opinion of counsel has been obtained or will be obtained by the Debtors with respect thereto, and no tax opinion is given by this Disclosure Statement. The U.S. federal income tax consequences of certain aspects of the Plan may therefore

31646352.3

be uncertain due to the lack of applicable legal authority and may be subject to administrative or judicial interpretations that differ from the discussion below.

The following discussion is not exhaustive and the U.S. federal income tax consequences to each Holder of an Allowed Claim will differ and will depend on factors specific to each such Holder, including (A) whether the Holder's Allowed Claim (or portion thereof) constitutes a claim for principal or interest; (B) the origin of the Holder's Allowed Claim; (C) whether the Holder reports income using the accrual or cash basis method; (D) whether the Holder receives distributions under the Plan in more than one taxable year; (E) whether the Holder has previously included in income any accrued but unpaid interest with respect to the Allowed Claim; and (F) whether the Holder has previously taken a bad debt deduction or otherwise recognized a loss with respect to the Allowed Claim.  The discussion is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each Holder of an Allowed Claim.  Accordingly, each Holder of an Allowed Claim is strongly urged to consult with its own tax advisor regarding the U.S. federal, state, local, and foreign income and other tax consequences of the Plan.

### A.    U.S. Federal Income Tax Consequences to the Debtors

The proposed Sale contemplated by the Plan is expected to be treated as a taxable sale of the Debtors' assets for U.S. federal income tax purposes.  The Debtors have minimal tax basis in the assets that are the subject of the Sale and thus expects to recognize a gain generally equal to the net cash sales proceeds arising from the Sale.  As of the Petition Date, the Debtors had approximately $431 million of net operating loss ("NOL") carryforwards and approximately $3 million in research and development credit.  Subject to the limitation on the use of NOLs discussed below, the Debtors can use their NOLs to offset their gain resulting from the Sale.  If the available NOLs exceed the gain, the Debtors should not be required to pay any U.S. federal income tax as a result of any gain triggered by the Sale.  As described more fully below, the Debtors expects that they will have sufficient NOL carryforwards eligible to be used against expected gain from the Sale so that no material U.S. federal income tax should arise as a result of the Sale.

A corporation's use of its NOL carryforwards is subject to various limitations in the IRC.  For example, NOLs generated after December 31, 2017 generally can only be utilized to offset eighty (80%) percent of a corporation's taxable income in a subsequent taxable year.  In this regard, approximately $270.6 million of the Debtors' $431 million NOL carryforwards as of the Petition Date were generated after December 31, 2017, while approximately $160.4 million were generated prior to that date (and thus are not subject to the eighty (80%) percent limitation).  These unrestricted NOLs are generally available to be used prior to the restricted NOLs.

The NOLs could be utilized to offset gains from the Sale and Retained Causes of Action, subject to the limitations described above.  The Debtors do not expect that the fair market value of the right to proceeds from the Retained Causes of Action, if any, together with the cash received in the Sale, will exceed $160.4 million on the Effective Date.  Accordingly, the Debtors do not expect the eighty (80%) percent limitation to apply to their use of the NOLs.

Another potential limitation on use of NOLs is IRC Section 382.  If a corporation is treated as undergoing an ownership change under Section 382, its annual use of its pre-ownership change

NOLs is limited to a specified amount (the "Annual Section 382 Limitation"), generally the product of its equity value immediately before the ownership change multiplied by a rate published monthly by the Treasury Department (for example, 3.37% for ownership changes that occurred during April 2024). Any unused portion of the Annual Section 382 Limitation generally is available for use in subsequent years. The Annual Section 382 Limitation is increased in the case of a corporation that has net unrealized built-in gains ("NUBIG"), i.e., gains economically accrued but unrecognized at the time of the ownership change, in excess of a threshold amount. Such a corporation can use NOLs in excess of its Annual Section 382 Limitation to the extent that it realizes (or is deemed to realize) those NUBIGs for U.S. federal income tax purposes in the five years following the ownership change.

It is possible that the Debtors may undergo an ownership change under section 382 of the Tax Code prior to the Sale, which may affect the Debtors' ability to use their NOLs to offset any gain arising from the Sale or the transfer of the Retained Causes of Action. The Debtors are currently unable to determine whether they will have a significant NUBIG at the time of any future ownership change.

## B.    U.S. Federal Income Tax Consequences to Holders of Allowed Claims

### 1.    U.S. Federal Income Tax Consequences to U.S. Holders of Allowed Claims in Class 3 and 4

In accordance with the Plan, each Holder of Allowed Claims in Classes 3 and 4 will receive the proceeds from the Sale. Each U.S. Holder of an Allowed Claim in Classes 3 and 4 will recognize gain or loss upon Consummation of the Plan equal to the difference between the "amount realized" by such U.S. Holder and such U.S. Holder's adjusted tax basis in its Claim (other than any tax basis attributable to accrued but unpaid interest and possibly accrued original issue discount ("OID")). The amount realized will include (a) the amount of any Cash received from the Debtors (or, if such Holder receives the ownership of the assets of the Debtors, the fair market value of such assets received), less the amount (if any) allocable to accrued but unpaid interest, as discussed below under the heading "Accrued Interest." Any such gain or loss realized by a U.S. Holder generally should constitute capital gain or loss to such U.S. Holder, unless such Claim is not a capital asset in the hands of such U.S. Holder. If an Allowed Claim in Classes 3 or 4, as applicable, is a capital asset and it has been held for more than one year, the U.S. Holder will realize long-term capital gain or loss. The deductibility of capital losses is subject to limitations.

### 2.    Accrued Interest and (OID)

A U.S. Holder of an Allowed Claim generally will recognize ordinary income to the extent that such Holder receives Cash or property that is allocable to accrued but unpaid interest that such Holder has not yet included in its income. If an Allowed Claim includes interest, and if the U.S. Holder receives less than the amount of the Allowed Claim pursuant to the Plan, the U.S. Holder must allocate the Plan consideration between principal and interest. The Plan provides that all distributions to a U.S. Holder of an Allowed Claim will apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim prior to the Petition Date.

31646352.3

There is no assurance, however, that the IRS will respect this treatment and will not determine that all or a portion of amounts distributed to such U.S. Holder, and attributable to principal under the Plan, is properly allocable to interest. U.S. Holders of Allowed Claims are urged to consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the U.S. Holder has previously included as interest income (or accrued OID), the previously included but unpaid interest may be deducted, generally as a loss.

3.    Market Discount

If a U.S. Holder of an Allowed Claim purchased the Claim for an amount that is less than its stated redemption price at maturity, the amount of the difference may be treated as "market discount" for U.S. federal income tax purposes, unless the difference is less than a specified de minimis amount. Under the market discount rules, the U.S. Holder is required to treat any gain on the sale, exchange, retirement or other disposition of the Allowed Claim as ordinary income to the extent of the market discount that the U.S. Holder has not previously included in income and which is treated as having accrued on the Allowed Claim at the time of its payment or disposition.

4.    Bad Debt Deduction

A U.S. Holder who receives in respect of an Allowed Claim an amount less than the U.S. Holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under IRC Section 166(a). The rules governing the character, timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the U.S. Holder, the obligor and the instrument with respect to which a deduction is claimed. U.S. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

5.    Medicare Surtax

Subject to certain limitations and exceptions, U.S. Holders who are individuals, estates or trusts may be required to pay a 3.8% Medicare surtax on all or part of that U.S. Holder's "net investment income," which includes, among other items, dividends on stock and interest (including original issue discount) on debt, royalties, and capital gains from the sale or other taxable disposition of stock or debt. U.S. Holders should consult their own tax advisors regarding the effect, if any, of this surtax on their receipt of distributions pursuant to the Plan.

**C.    U.S. Federal Income Tax Consequences to Non-U.S. Holders**

Whether a Non-U.S. Holder of Allowed Claims in Classes 3 or 4 realizes gain or loss on the consummation of the Plan and the amount of such gain or loss is determined in the same manner as set forth above in connection with U.S. Holders under the Article XV.B.

1.    Gain Recognition

Any gain recognized by a Non-U.S. Holder of Allowed Claims in Classes 3 or 4 generally will not be subject to U.S. federal income tax with respect to property (including Cash) received in exchange for such Claim, unless:

31646352.3

- such Non-U.S. Holder is engaged in a trade or business in the United States to which such gain is "effectively connected" for U.S. federal income tax purposes (and, if required, by an applicable income tax treaty, the Non-U.S. Holder maintains a permanent establishment or fixed base in the United States to which gain is attributable); or

- if such Non-U.S. Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the disposition and certain other requirements are met.

Gain described in the first situation above generally will be subject to U.S. federal income tax on a net income basis at the regular rates.  A Non-U.S. Holder that is a foreign corporation also may be subject to a branch profits tax at a rate of 30 percent (or such lower rate specified by an applicable income tax treaty) on such effectively connected gain, as adjusted for certain items.

Gain described in the second situation above will be subject to U.S. federal income tax at a rate of 30 percent (or such lower rate specified by an applicable income tax treaty), which may be offset by certain U.S. source capital losses of the Non-U.S. Holder (even though the individual is not considered a resident of the United States), provided the Non-U.S. Holder has timely filed U.S. federal income tax returns with respect to such losses.

Non-U.S. Holders should consult their tax advisors regarding any applicable income tax treaties that may provide for different rules.

2.    <u>Interest on Allowed Claims</u>

Payments to a Non-U.S. Holder that are attributable to accrued but untaxed interest on its Claim generally will not be subject to U.S. federal income or withholding tax, provided that the withholding agent has received or receives, prior to payment, appropriate documentation (generally, IRS Form W-8BEN or W-8BEN-E) establishing that the Non-U.S. Holder is not a U.S. person, unless:

(i)    the Non-U.S. Holder actually or constructively owns ten (10) percent or more of the total combined voting power of all classes of the Debtors' stock entitled to vote (after application of certain attribution rules);

(ii)    the Non-U.S. Holder is a "controlled foreign corporation" that is a "related person" with respect to the Debtors as described in Section 881(c)(3)(C) of the IRC;

(iii)    the Non-U.S. Holder is a bank receiving interest described in Section 881(c)(3)(A) of the IRC; or

(iv)    such interest is effectively connected with the conduct by the Non-U.S. Holder of a trade or business within the United States and, if required by an applicable income tax treaty, is attributable to a U.S. permanent establishment or fixed base of the Non-U.S. Holder (in which case, provided the Non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the Non-U.S. Holder (x) generally will not be subject to withholding tax, but (y) will be

subject to U.S. federal income tax in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a Non-U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a branch profits tax with respect to such Non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued but untaxed interest at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty)).

A Non-U.S. Holder that does not qualify for exemption from withholding tax pursuant to clauses (i)–(iv) above generally will be subject to withholding of U.S. federal income tax on such interest or imputed interest at a thirty percent (30%) rate (or at a reduced rate or exemption from tax under an applicable income tax treaty). To claim such treaty exemption, the Non-U.S. Holder must provide the applicable withholding agent with a properly executed IRS Form W-8BEN or W-8BEN-E (or other applicable documentation) claiming a reduction in or exemption from withholding tax under the benefit of an income tax treaty between the United States and the country in which the Non-U.S. Holder resides or is established. For purposes of providing a properly executed IRS Form W-8BEN or W-BENE, special procedures are provided under applicable Treasury Regulations for payments through qualified foreign intermediaries or certain financial institutions that hold customers' securities in the ordinary course of their trade or business.

The certifications described above must be provided to the applicable withholding agent prior to the payment of interest and must be updated periodically. Non-U.S. Holders that do not timely provide the applicable withholding agent with the required certification, but that qualify for a reduced rate under an applicable income tax treaty, may obtain a refund of any excess amounts withheld by timely filing an appropriate claim for refund with the IRS. Non-U.S. Holders should consult their tax advisors regarding their entitlement to benefits under any applicable income tax treaty.

## D. Backup Withholding and Information Reporting

Generally, information reporting requirements will apply to all payments or distributions under the Plan, unless you are an exempt recipient. Additionally, a U.S. Holder may be subject to backup withholding at applicable rates, unless the U.S. Holder (1) is a person exempt from backup withholding and, when required, demonstrates this or (2) provides a correct taxpayer identification number ("TIN") on IRS Form W-9 (or a suitable substitute form) and timely provides the other information, makes the representations required by such form and complies with the other requirements of the backup withholding rules. A U.S. Holder may become subject to backup withholding if, among other things, the U.S. Holder (1) fails to properly report interest and dividends for U.S. federal income tax purposes or (2) in certain circumstances, fails to certify, under penalty of perjury, that it has furnished a correct TIN. A U.S. Holder that does not timely provide a correct TIN also may be subject to penalties imposed by the IRS. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a refund or a credit against your U.S. federal income tax liability provided the required information is properly furnished to the IRS.

Under the Foreign Account Tax Compliance Act ("FATCA"), unless otherwise subject to an exception, foreign financial institutions and certain other foreign entities must report certain

information with respect to their U.S. account holders and investors or be subject to withholding on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of fixed or determinable, annual or periodical income (including interest). FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax. Each Non-U.S. Holder should consult its own tax advisor regarding the possible impact of these rules, including the availability of an exemption on such Non-U.S. Holder's ownership of the consideration being received under the Plan.

### E.   Importance of Obtaining Professional Tax Assistance

**The foregoing is intended to be only a summary of certain U.S. federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The U.S. federal, state, local, and foreign income and other tax consequences of the Plan are complex and in some cases uncertain. Such consequences may also vary based on the individual circumstances of each Holder of an Allowed Claim. Accordingly, each Holder of an Allowed Claim is strongly urged to consult with his, her, or its own tax advisor regarding the U.S. federal, state, local, and foreign income and other tax consequences of the Plan.**

## XVI.   ADDITIONAL INFORMATION

Any statements in this Disclosure Statement concerning the provisions of any document are not necessarily complete, and in each instance reference is made to such document for the full text thereof. Certain documents described or referred to in this Disclosure Statement have not been attached as exhibits because of the impracticability of furnishing copies of these documents to all recipients of this Disclosure Statement. The Debtors will file all supplements to the Plan with the Bankruptcy Court and make them available for review on http://www. https://cases.stretto.com/iconaircraft no later than seven (7) days before the deadline to object to confirmation.

## XVII.  RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that the confirmation and Consummation of the Plan is preferable to all other alternatives. Consequently, the Debtors urge all Holders of Claims in Classes 3 and 4, the only Classes entitled to vote on the Plan, to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before the Voting Deadline.

Dated: May 13, 2024

Respectfully submitted,

_/s/ Thomas M. McCabe_

By: Thomas M. McCabe
Chief Restructuring Officer
ICON Aircraft, Inc.

**Exhibit A**

**Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and its Debtor Affiliates**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION
## FOR ICON AIRCRAFT, INC. AND ITS DEBTOR AFFILIATES

**YOUNG CONAWAY**
**STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253




Dated: May 13, 2024

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

*and*

Charles M. Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (213) 981-3400

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443), Rycon LLC (5297), IC Technologies Inc. (7918), and ICON Flying Club, LLC (6101). The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

# TABLE OF CONTENTS

ARTICLE I.   DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

   A.    Definitions ......................................................................................................... 1

   B.    Rules of Interpretation ..................................................................................... 12

   C.    Computation of Time ...................................................................................... 12

   D.    Controlling Document ..................................................................................... 12

ARTICLE II.   ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND
STATUTORY FEES ....................................................................................................... 12

   A.    Administrative Claims ..................................................................................... 13

   B.    DIP Claims ....................................................................................................... 13

   C.    Professional Fee Claims ................................................................................. 14

      1.   Final Fee Applications .................................................................................... 14

      2.   Administrative Claims of OCPs...................................................................... 14

      3.   Post-Confirmation Date Fees and Expenses ................................................... 14

      4.   Professional Fee Reserve ................................................................................ 15

   D.    Priority Tax Claims ......................................................................................... 15

   E.    U.S. Trustee Statutory Fees ............................................................................ 15

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 15

   A.    Classification of Claims and Interests ............................................................ 15

   B.    Treatment of Claims and Interests.................................................................. 16

      1.   Class 1 – Other Secured Claims..................................................................... 16

      2.   Class 2 – Other Priority Claims ..................................................................... 17

      3.   Class 3 – Noteholders Claims ........................................................................ 17

      4.   Class 4 – General Unsecured Claim ............................................................... 17

      5.   Class 5 – Intercompany Claims ...................................................................... 17

      6.   Class 6 – Section 510(b) Claims..................................................................... 18

      7.   Class 7 – Interests .......................................................................................... 18

      8.   Class 8 – Intercompany Interests ................................................................... 18

   C.    Special Provisions Governing Unimpaired Claims........................................ 19

   D.    Elimination of Vacant Classes ....................................................................... 19

   E.    Voting Classes; Presumed Acceptance by Non-Voting Classes ................... 19

   F.    Controversy Concerning Impairment ............................................................ 19

   G.    Subordination of Claims................................................................................. 19

   H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............ 19

31647715.1

I.    Reservation of Rights Regarding Claims. ................................................................ 20

J.    Postpetition Interest on Claims ............................................................................... 20

K.    Insurance ................................................................................................................. 20

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 20

A.    General Settlement of Claims and Interests .......................................................... 20

B.    Sources of Consideration for Plan Distributions .................................................. 20

C.    Sale Transaction ..................................................................................................... 20

D.    Wind-Down ............................................................................................................ 21

E.    Limited Substantive Consolidation ...................................................................... 21

F.    Vesting of Assets ................................................................................................... 22

G.    Preservation of Causes of Action ......................................................................... 22

H.    Corporate Action ................................................................................................... 22

I.    Cancellation of Existing Securities and Agreements ............................................ 23

J.    Effectuating Documents and Further Transactions ............................................... 23

K.    Section 1146 Exemption from Certain Taxes and Fees ........................................ 23

L.    Sale Order .............................................................................................................. 23

M.    Authority to Act ..................................................................................................... 23

N.    Settlement of Claims and Controversies ............................................................... 24

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND INSURANCE POLICIES ................................................................................................ 24

A.    General Treatment .................................................................................................. 24

B.    Rejection Damages Claims .................................................................................... 24

C.    Reservation of Rights ............................................................................................ 25

D.    Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases. 25

E.    D&O Policies ......................................................................................................... 25

F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ...... 26

G.    Nonoccurrence of Effective Date .......................................................................... 26

H.    Employee Compensation and Benefits .................................................................. 26

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 26

A.    Distribution Record Date ....................................................................................... 26

B.    Compliance with Tax Requirements ...................................................................... 27

C.    Date of Distributions ............................................................................................. 27

D.    Disbursing Agent ................................................................................................... 27

E.    Powers of Disbursing Agent .................................................................................. 28

F.    Surrender of Instruments ....................................................................................... 28

G. Delivery of Distributions ................................................................................. 28

H. Manner of Payment ......................................................................................... 28

I. Foreign Currency Exchange Rate ................................................................... 29

J. Setoffs and Recoupments ............................................................................... 29

K. Minimum Distributions ................................................................................... 29

L. Allocation of Distributions Between Principal and Interest ............................ 29

M. Distributions Free and Clear .......................................................................... 29

N. Claims Paid or Payable by Third Parties ........................................................ 29

 1. Claims Paid by Third Parties .................................................................. 29

 2. Claims Payable by Third Parties ............................................................. 30

 3. Applicability of Insurance Policies .......................................................... 30

ARTICLE VII. PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED
CLAIMS ................................................................................................................ 30

A. Allowance of Claims ....................................................................................... 30

B. Claims Administration Responsibilities .......................................................... 30

C. Estimation of Claims ....................................................................................... 31

D. Adjustment to Claims Without Objection ....................................................... 31

E. Time to File Objections to Claims ................................................................... 31

F. Disallowance of Late Claims .......................................................................... 31

G. Disputed Claims .............................................................................................. 31

H. Disputed Claims Reserve ................................................................................ 32

I. Amendment to Claims ..................................................................................... 32

J. No Distributions Pending Allowance .............................................................. 32

K. Distributions After Allowance ........................................................................ 32

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................... 32

A. Conditions Precedent ...................................................................................... 32

B. Waiver of Conditions ...................................................................................... 33

C. Effect of Vacatur of the Confirmation Order .................................................. 33

D. Votes Solicited in Good Faith ......................................................................... 33

ARTICLE IX. RELEASE, INJUNCTION, AND RELATED PROVISIONS ..................... 34

A. Releases by the Debtors .................................................................................. 34

B. Releases by Holders of Claims and Interests ................................................. 35

C. Exculpation ..................................................................................................... 36

D. Injunction ....................................................................................................... 36

E. No Discharge ................................................................................................... 37

F.      Release of Liens ............................................................................................ 37

ARTICLE X.    RETENTION OF JURISDICTION ............................................................ 37

ARTICLE XI.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .... 39

A.      Modification of the Plan .............................................................................. 39

B.      Other Amendments ...................................................................................... 40

C.      Effect of Confirmation on Modifications .................................................... 40

D.      Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .. 40

ARTICLE XII.    MISCELLANEOUS PROVISIONS .......................................................... 40

A.      Debtors' Operation from Confirmation Hearing Through Effective Date ................... 40

B.      Immediate Binding Effect ............................................................................ 41

C.      Additional Documents .................................................................................. 41

D.      Substantial Consummation ........................................................................... 41

E.      Reservation of Rights ................................................................................... 41

F.      Successors and Assigns ................................................................................ 41

G.      Determination of Tax Liabilities .................................................................. 41

H.      Dissolution of the Committee ....................................................................... 42

I.      Preservation of Books and Records .............................................................. 42

J.      Notices ......................................................................................................... 42

K.      Term of Injunctions or Stays ....................................................................... 43

L.      Entire Agreement ......................................................................................... 43

M.      Plan Supplement Exhibits ............................................................................ 43

N.      Governing Law ............................................................................................. 44

O.      Nonseverability of Plan Provision Upon Confirmation ............................... 44

P.      Closing of Chapter 11 Case .......................................................................... 44

# INTRODUCTION

ICON Aircraft, Inc., along with its debtor subsidiaries, (collectively, the "Debtors") propose this Plan under section 1121 of the Bankruptcy Code. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: http://cases.stretto.com/ICONaircraft.

Reference is made to the Disclosure Statement filed contemporaneously with the Plan for a discussion of the Debtors' history, business, capital structure, marketing and sale process, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.   Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      "Administrative Claim(s)" means all Claims for costs and expenses of administration of these Chapter 11 Cases pursuant to section 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred on or after the Petition Date and through the Effective Date; (2) Allowed Professional Fee Claims; and (3) all fees and charges assessed against the Estates under 28 U.S. Code Chapter 123.

2.      "Administrative Claims Bar Date" means the deadline for Filing all requests for allowance and payment of Administrative Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date. Professional Fee Claims shall be filed in accordance with the provisions of Article II.C. herein.

3.      "Affiliate" means any "affiliate," as defined in section 101(2) of the Bankruptcy Code, as if such entity was a debtor in a case under the Bankruptcy Code.

4.      "Allowed" means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; (b) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or (c) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a

Proof of Claim is not or shall not be required to be Filed) *provided* that with respect to a Claim described in clause (a) and (c) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Debtors, the Plan Administrator, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is Filed by the Bar Date, is not considered Allowed and shall be expunged without further action by the Debtors or the Plan Administrator (as applicable) and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors to the Debtors or the Plan Administrator (as applicable). "Allow" and "Allowing" shall have correlative meanings.

5.      "Asset Purchase Agreement" means a negotiated asset purchase agreement (as such may be amended, supplemented, or modified from time to time) by and among the Debtors, as seller and a Purchaser, as buyer, for the sale of some or all of the Debtors' assets according to the terms set forth therein.

6.      "Ballots" means ballots provided to each of the Holders of Claims entitled to vote to accept or reject the Plan.

7.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

8.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

9.      "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code

10.      "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as requested in the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Notice of Bar Dates; and (III) Granting Related Relief* [Docket No. 95] and as ordered by the Bankruptcy Court in a Final Order granting the relief requested therein. Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.C herein and shall not otherwise be subject to the Bar Date.

11.      "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

12.      "Cash" means cash and cash equivalents in legal tender of the United States of America.

13.    "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) claims pursuant to federal securities law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

14.    "Chapter 11 Cases" means these chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

15.    "Claim(s)" means any "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

16.    "Claims Objection Bar Date" means the date that is three hundred and sixty-five (365) days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator.

17.    "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

18.    "Committee" means an official committee of unsecured creditors appointed in these Chapter 11 Cases by the U.S. Trustee under section 1102(b) of the Bankruptcy Code, if any.

19.    "Committee Professionals" means any Retained Professional retained by the Committee, if any, in these Chapter 11 Cases.

20.    "Confirmation Date" means the date upon which the Bankruptcy Code enters the Confirmation Order on the docket of these Chapter 11 Cases.

21.    "Confirmation Hearing" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

22.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the DIP Agent in its discretion.

23.     "Consummation" means the implementation of the Plan, which is expected to occur on the Effective Date.

24.     "Cure" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

25.     "D&O Policies" means, collectively, each director and officer liability insurance policies, along with any other applicable insurance policies, including primary insurance, excess insurance, or tail insurance policies.

26.     "Debtors" means, collectively, ICON Aircraft, Inc., Rycon LLC, IC Technologies Inc. and ICON Flying Club, LLC, each as a debtor and debtor in possession.

27.     "Debtors Releases" means the releases set forth in Article IX.A. herein.

28.     "DIP Claim" means a Claim under the DIP Facility.

29.     "DIP Credit Agreement" means that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated April 4, 2024, by and among ICON Aircraft, Inc., as borrower, each of the other Debtors, as guarantor, the DIP Agent, and the lenders party thereto.

30.     "DIP Facility" means that certain $9 million secured debtor-in-possession multiple draw term loan credit facility issued pursuant to the DIP Credit Agreement.

31.     "DIP Facility Collateral" means the collateral securing the DIP Facility, as set forth more specifically in the DIP Orders.

32.     "DIP Agent" means FeiRen International Co., Ltd.

33.     "DIP Lender" means FeiRen International Co., Ltd., along with its successors or assigns.

34.     "DIP Loan Documents" means, collectively, the DIP Orders, the DIP Credit Agreement, and related security agreements and other documents required or requested by the DIP Secured Parties to be executed or delivered by or in connection with the DIP Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

35.     "DIP Orders" means the interim and final orders entered by the Bankruptcy Court approving the DIP Facility in these Chapter 11 Cases.

36.     "DIP Secured Parties" means, collectively, the DIP Agent and the DIP Lender.

37.     "DIP Secured Party Expenses" means all reasonable and documented fees, costs, and expenses of the DIP Secured Party Professionals incurred in connection with these Chapter 11

Cases, along with any other "Lender Expenses" (as such term is defined in the DIP Credit Agreement) required to be paid under the terms of the DIP Credit Agreement.

38.    "DIP Secured Party Professional(s)" means Tian Yuan Law Firm, as counsel to the DIP Secured Parties, and The Rosner Law Group LLC, as local counsel to the DIP Secured Parties.

39.    "Disbursing Agent" means the Debtors, the Plan Administrator, or the Person or Entit(ies) selected by the Plan Administrator, as applicable, to make or facilitate the Plan Distributions.

40.    "Disclosure Statement" means the *Disclosure Statement for the Joint Chapter 11 Plan for ICON Aircraft, Inc. and its Debtor Affiliates*, dated May 13, 2024 (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

41.    "Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim has been Filed in a liquidated and non-contingent amount and no objection to such Proof of Claim has been timely filed; (b) included in a Proof of Claim as to which an objection or request for estimation has been filed, or as to which the Debtors, the Plan Administrator, or other parties in interest in accordance with applicable law, retain the ability to interpose a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Confirmation Order; or (c) which is otherwise disputed by the Debtors or the Plan Administrator (as applicable) in accordance with applicable law and for which the objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order. To the extent that a Claim is held by a Holder that is or may be liable to the Debtors, the Estates, or the Plan Administrator on account of a Retained Cause of Action, such Claim shall be a Disputed Claim unless and until such Retained Cause of Action has been settled or withdrawn or has been determined by a Final Order. Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

42.    "Disputed Claims Reserve" means a reserve established and maintained by the Plan Administrator for Holders of Disputed Claims to the extent such Claims are subsequently Allowed and entitled to distributions.

43.    "Disputed Claims Reserve Amount" means the amount of the Disputed Claims Reserve, which shall be determined by the Bankruptcy Court.

44.    "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

45.    "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Article VIII.A herein, have been satisfied or waived in accordance with the Plan. Any action to be taken on the Effective date may be taken on or as soon as reasonably practicable thereafter.

31647715.1

46.     "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

47.     "Estates" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

48.     "Exculpated Party" or "Exculpated Parties" means, in each case in its capacity as such, (a) the Debtors; (b) the Debtors' directors and officers during these Chapter 11 Cases; (c) the Committee, if any; and (d) the Retained Professionals.

49.     "Executory Contract(s)" means a contract to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

50.     "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

51.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

52.     "General Unsecured Claim(s)" means any Claim other than a(n): (a) Administrative Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) DIP Claim; (e) Other Secured Claim; (f) Other Priority Claim; (g) Noteholder Claim; (h) Section 510(b) Claim; or (i) Intercompany Claim.

53.     "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

54.     "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtor, as the context requires.

55.     "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

56.     "Insurance Policies" means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating

thereto, *provided* that it does not include any such policies that are, or have been, assumed and assigned to the Purchaser(s) on or before the Effective Date pursuant to the Asset Purchase Agreement(s), the Sale Order, and section 365 of the Bankruptcy Code.

57.     "<u>Intercompany Claim</u>" means any Claim held by a Debtor against another Debtor.

58.     "<u>Intercompany Interest</u>" means an Interest in a Debtor that is held by another Debtor or an Affiliate of a Debtor.

59.     "<u>Interest(s)</u>" means equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be grated to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

60.     "<u>IRS Form</u>" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under the Plan.

61.     "<u>Law</u>" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

62.     "<u>Lien</u>" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

63.     "<u>Net Sale Proceeds</u>" means (a) the remaining net proceeds from the Sale (after giving effect to payment of any closing costs, Cure amounts, and other expenses, including taxes, as may have previously been agreed to between the Purchaser(s) and the Debtors in the Asset Purchase Agreement(s); minus (b) the amounts necessary to satisfy or reserve for (i) Allowed Administrative Claims, including DIP Claims, Professional Fee Claims, Priority Tax Claims, and Statutory Fees, (ii) Other Secured Claims, (iii) Other Priority Claims, and (iv) the Wind-Down Budget; *provided*, that any amounts reserved but not used for subclauses (i) through (iv) above shall revert back to the Net Sale Proceeds.

64.     "<u>Non-Released Parties</u>" means any party who is (a) not a Released Party pursuant to Article IX.A. and IX.B. of this Plan, or (b) is included as a Party to a Retained Cause of Action identified in the Plan Supplement.

65.     "<u>Noteholder Claim(s)</u>" means a Claim held by a Holder of a prepetition funded debt obligation or a convertible note obligation, as applicable, of the Debtors.

66.     "<u>Notice and Claims Agent</u>" means Stretto, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtors.

67.      "Notice of Non-Voting Status Package" means the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, including the Release Opt-Out.

68.      "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court by entry of an OCP Order.

69.      "OCP Order" means the order granting the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 93].

70.      "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

71.      "Other Secured Claim(s)" means any Claim against a Debtor where, pursuant to section 506 of the Bankruptcy Code, the Claim is (a) secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date.

72.      "Person" means a "person" as defined in section 101(41) of the Bankruptcy Code.

73.      "Petition Date" means April 4, 2024, which is the date on which the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

74.      "Plan" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

75.      "Plan Administrator" means the Person or Entity selected by the Debtors and appointed on the Effective Date to administer to the wind-up of the Debtors, including the making of any Plan Distributions that may arise after the Effective Date or any other duties or responsibilities set forth herein.

76.      "Plan Assets" means (a) the Net Sale Proceeds; and (b) the net proceeds from the recovery from the Retained Causes of Action, if any.

77.      "Plan Beneficiaries" means the Holders of Noteholder Claims and the Holders of General Unsecured Claims, who shall share *pro rata* in the Plan Assets.

78.      "Plan Distribution" means a payment or distribution to Holders of Allowed Claims or other eligible Entities under this Plan.

79.      "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall

be Filed by the Debtors no later than seven (7) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest. The Plan Supplement shall include, among other things, (a) the identity and compensation of the Plan Administrator; (b) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator, and the nature of any compensation for such insider; (c) the list of Retained Causes of Action, if any; (d) any amended organization documents as may be required to implement the Plan; and (e) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.

80.    "Priority Tax Claim(s)" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

81.    "Professional Fee Claim(s)" means a Claim (a) by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable; or (b) by an OCP for compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date pursuant to the OCP Order.

82.    "Professional Fee Reserve" means the reserve established and funded by the Debtor prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Retained Professionals.

83.    "Proof of Claim" means a proof of Claim Filed against any of the Debtors in these Chapter 11 Cases.

84.    "Purchasers" means the Person(s) or Entit(ies) who purchase some or all of the Debtors' assets pursuant to the Asset Purchase Agreement(s) and the Sale Order.

85.    "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, the Special Committee, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

86.    "Release Opt-Out" means the item set forth in each of the Ballots and Notice of Non-Voting Status Packages, which permit both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan the right to opt out of the Third Party Release set forth in Article IX.B herein.

87.    "Released Party" means each of, and in each case solely in its capacity as such: (a) the Debtors; (b) the DIP Secured Parties; (c) the Committee, if any; and (d) each Related Party

of the Debtors or the Committee, including any professional retained by the Debtors, DIP Secured Parties, or the Committee, if any, in connection with these Chapter 11 Cases. Notwithstanding the foregoing, the definition of "Released Party" shall not include any Non-Released Parties.

88.    "Releasing Parties" means, collectively, and in each case solely in their respective capacities as such: (a) the DIP Secured Parties; (b) the Committee, if any; (c) all Holders of Claims deemed hereunder to have accepted the Plan that have not filed an objection to the release contained in Article IX herein prior to the Voting Deadline; (d) all Holders of a Claim that (i) vote to accept or reject the Plan and do not timely submit a Release Opt-Out, or (ii) do not vote to accept or reject the Plan and either do not timely submit a Release Opt-Out or do not file an objection to the releases contained in Article IX herein prior to the Voting Deadline; (e) all Holders of Claims or Interest deemed hereunder to have rejected the Plan that have not filed an objection to the release contained in Article IX herein prior to the Voting Deadline or otherwise timely submitted a Release Opt-Out; (f) each current and former Affiliate of each Person or Entity in clauses (a) through (e) solely to the extent such Affiliate may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (e); and (g) each Related Party of each Entity in clauses (a) through (e) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (e).

89.    "Retained Causes of Action" means the schedule of Causes of Action to be retained by the Debtors and not released pursuant to Article IX.A herein, if any, which shall be filed with the Plan Supplement.

90.    "Retained Professional(s)" means a Person or Entity employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

91.    "Sale" means the transaction between and among the Debtors and the Purchaser(s), pursuant to which the Debtors will sell substantially all of their assets to the Purchasers pursuant to sections 363 and 365 of the Bankruptcy Code, as set forth in the Sale Order and the Asset Purchase Agreement(s).

92.    "Sale Documents" means, collectively, the Asset Purchase Agreement(s) and all agreements, documents, and instruments related thereto, including the Sale Order.

93.    "Sale Motion" means the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of all or Substantially All of the Debtors' Assets (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Assets Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of all Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 83].

94.     "Sale Order" means an order entered by the Bankruptcy Court authorizing the sale of all or substantially all of the Debtors' assets to the Purchaser(s) pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the Sale Motion and the Asset Purchase Agreement(s).

95.     "Schedules" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

96.     "Section 510(b) Claim(s)" means any Claim subordinated by order of the Bankruptcy Court pursuant to section 510(b) of the Bankruptcy Code or otherwise.

97.     "Special Committee" means the special committee formed by the Board of Directors of Icon Aircraft, Inc. in January 2024, which special committee consists of one independent director—Thomas G. FitzGerald—who is authorized to evaluate, negotiate, deem advisable, approve, execute, consummate and implement, or reject strategic options with respect to the Debtors to the maximum extent permitted by the Debtors' charters, bylaws, stockholder agreements, and/or other organizational documents.

98.     "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

99.     "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

100.    "Unexpired Lease(s)" means a lease to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

101.    "Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

102.    "Voting Deadline" means the date and time by which all Ballots to accept or reject the Plan must be received to be counted.

103.    "Wind-Down" means the post-Effective Date wind-down process by which the Plan Administrator shall seek to (a) liquidate any remaining assets of the Debtors and make distributions relating to the same; (b) complete any tasks required to wind-down the affairs of the Debtors; and (c) otherwise close these Chapter 11 Cases, as described in more detail in Article IV herein.

104.    "Wind-Down Budget" means the budget for all reasonable activities and expenses associated with the Wind-Down, including, but not limited to, post-Effective Date professional fees and expenses and insurance costs.

### B.    Rules of Interpretation

For the purposes of the Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to the Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified, references in the Plan to "D.I." refer to entries on these Chapter 11 Cases' docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement or the Plan and the Plan Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

## A.    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, and notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Plan Administrator (as applicable) and their counsel, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such Proofs of Claim must be Filed and served on the requesting party within one hundred twenty (120) days after the Effective Date.  After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.D herein, Holders of Administrative Claims that do not File and serve a Proof of Claim or application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Plan Administrator, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Court.**

## B.    DIP Claims

Except to the extent that a Holder of a DIP Claim agrees to a different treatment, each Holder of a DIP Claim shall receive, in full and final satisfaction of such Claim (1) the proceeds of the Sale or any other sale of the DIP Facility Collateral; and (2) in the event that the DIP Lender determines to exercise its right to credit bid resulting in a sale of the DIP Facility Collateral to the DIP Lender or its designee, ownership of such assets; *provided* with respect to clause (2) above, such satisfaction, compromise, settlement, release, and discharge of the DIP Claims shall be equal to and not exceed the amount of the applicable credit bid by the DIP Lender with respect to such assets.

The DIP Secured Party Expenses shall constitute Allowed Administrative Claims with priority over all administrative expenses of the kind specified in sections 503(b) and 507 of the

Bankruptcy Code, except for the Professional Fee Claims, and shall be paid in full in Cash no later than the Effective Date and without any requirement to file a fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval. The DIP Secured Party Expenses shall not be discharged, modified, or otherwise affected by the Plan and shall not be subject to disgorgement, setoff, disallowance, impairment, challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, subordination, recharacterization, avoidance, or other claim or cause of action of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

### C.    Professional Fee Claims

#### 1.    Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals (other than OCPs) for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals (other than OCPs) after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, except to the extent such procedures are inconsistent with the express terms herein.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Plan Administrator shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve.

#### 2.    Administrative Claims of OCPs

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Plan Administrator (as applicable) from the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

#### 3.    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Plan Administrator (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Plan Administrator (as applicable).  Upon the Confirmation Date, any requirement that the Retained Professionals comply with sections 327 through 331, 363, and 1003 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Plan Administrator (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

4.      Professional Fee Reserve

The Retained Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than two (2) Business Days before the Confirmation Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Retained Professionals' final request for payment of Filed Professional Fee Claims. If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional. The Debtors shall fund and reserve the Professional Fee Reserve until payment in full of all Allowed Professional Fee Claims. If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator as Allowed Administrative Claims. The Professional Fee Reserve cannot be used to pay any Secured, Priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

**D.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Plan Administrator (as applicable) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**E.      U.S. Trustee Statutory Fees**

All Statutory Fees due and payable to the U.S. Trustee prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court UST Form 11-PCR reports when they become due, until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors or the Plan Administrator (as applicable) shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of the Debtors' case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. Neither the U.S. Trustee nor any other Governmental Unit is required to File a request for an Administrative Claim for Statutory Fees. The U.S. Trustee shall not be treated as providing any release under the Plan.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.      Classification of Claims and Interests**

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Class to the extent

that any portion of the Claim or Interest qualifies within the description of such other Class.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Noteholder Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B.    Treatment of Claims and Interests

1.    Class 1 – Other Secured Claims

(a)    *Classification*:  Class 1 consists of all Other Secured Claims against the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.  Class 2 – Other Priority Claims

(a)  *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)  *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.  Class 3 – Noteholders Claims

(a)  *Classification*:  Class 3 consists of all Noteholder Claims against the Debtors.

(b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Noteholder Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Noteholder Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the other Plan Beneficiaries.

(c)  *Voting*:  Class 3 is Impaired, and Holders of Noteholder Claims are entitled to vote to accept or reject the Plan.

4.  Class 4 – General Unsecured Claim

(a)  *Classification*:  Class 4 consists of all General Unsecured Claims against the Debtors.

(b)  *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the other Plan Beneficiaries.

(c)  *Voting*:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.  Class 5 – Intercompany Claims

(a)  *Classification*:  Class 5 consists of all Intercompany Claims.

(b)     *Treatment*: On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims.

(c)     *Voting*: Class 5 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.      Class 6 – Section 510(b) Claims

(a)     *Classification*: Class 6 consists of all Section 510(b) Claims against the Debtors.

(b)     *Treatment*:  On the Effective Date, all Section 510(b) Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claims.

(c)     *Voting*:  Class 6 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

7.      Class 7 – Interests

(a)     *Classification*:  Class 7 consists of all Interests in the Debtors.

(b)     *Treatment*:  On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

(c)     *Voting*:   Class 7 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 7 Interests Claims are not entitled to vote to accept or reject the Plan.

8.      Class 8 – Intercompany Interests

(a)     *Classification*: Class 8 consists of all Intercompany Interests.

(b)     *Treatment*: On the Effective Date, all Intercompany Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Intercompany Interests shall not receive any distribution, property, or other value under the Plan on account of such Interest.

(c)     *Voting*: Class 8 is Impaired, and Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy

Code. Therefore, Holders of Class 8 Intercompany Interests Claims are not entitled to vote to accept or reject the Plan.

### C. Special Provisions Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Plan Administrator's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

### D. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### E. Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan.

### F. Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

### G. Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Plan Administrator (as applicable) reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

The Debtors hereby request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plan.

I.       **Reservation of Rights Regarding Claims**.

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors' or the Plan Administrator's respective rights and defenses, whether legal or equitable, with respect to any Claim, including without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

J.       **Postpetition Interest on Claims**

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, post-petition interest will not accrue or be payable on account of any Claim.

K.       **Insurance**

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.       **General Settlement of Claims and Interests**

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

B.       **Sources of Consideration for Plan Distributions**

Subject to the provisions of the Plan concerning the Professional Fee Reserve and the Wind-Down Budget, the Debtors or the Plan Administrator (as applicable) shall fund distributions under the Plan with (1) Cash on hand on the Effective Date; and (2) all other Plan Assets. Distributions to Plan Beneficiaries shall occur *pro rata* from the Plan Assets.

C.       **Sale Transaction**

The Debtors shall engage in a process for the sale of all or substantially all of their assets and shall seek approval of the Sale Motion and the entry of the Sale Order, which shall approve

the sale of all or substantially all of the Debtors' assets to the Purchaser(s) pursuant to the Asset Purchase Agreement(s).

### D.    Wind-Down

Following the Effective Date, the Plan Administrator shall wind-down the affairs and operations of the Debtors and their Estates, including, but not limited to: (1) liquidating any remaining assets; (2) prosecuting the Retained Causes of Action, if any, and any other claims or Causes of Action of the Debtors preserved herein; and (3) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan.

The responsibilities and authority of the Plan Administrator shall include the following rights and responsibilities: (1) preserving and liquidating any remaining assets; (2) prosecuting the Retained Causes of Action, if any; (3) administering and paying taxes, including, among other things, (a) filing tax returns (to the extent not the obligation of any Purchaser), and (b) representing the interest and account of the Debtors before any taxing authority in all matters; (4) retaining and paying, without the need for retention or fee applications, professionals in connection with the Plan Administrator's performance of its duties under this Plan; (5) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (6) Filing an application for entry by the Bankruptcy Court of a final decree closing these Chapter 11 Cases; (7) making distributions to Professionals for Allowed Professional Fee Claims from the Professional Fee Reserve; (8) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan; (9) procuring the necessary insurance to facilitate the Wind-Down, including appropriate D&O Policies; and (10) such other responsibilities as may be vested in the Plan Administrator pursuant to this Plan or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

### E.    Limited Substantive Consolidation

The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for purposes of this Plan, including voting on the Plan by Holders of Claims and making any Plan Distributions to Holders of Claims.  Specifically, on the Effective Date, (1) all assets and liabilities of the Debtors will, solely for voting and Plan Distribution purposes, be treated as if they were merged; (2) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors; (3) any Claims Filed or to be Filed in these Chapter 11 Cases will be deemed single Claims against all of the Debtors; (4) all transfer, disbursements, and Plan Distributions on account of Claims made by or on behalf of any of the Debtors' Estates will be deemed to be made by or on behalf of all of the Debtors' Estates; and (5) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.  Holders of Allowed Claims entitled to Plan Distributions under this Plan shall be entitled to their share of assets available for distribution to such Claim without regard to which Debtor was originally liable for such Claim.  Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Plan) affect the legal and corporate structures of the Debtors.

### F.    Vesting of Assets

Except as otherwise provided in this Plan or the Sale Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, any remaining assets, including all Plan Assets, claims, rights, Retained Causes of Action, Causes of Action, and any remaining property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Subject to the terms of this Plan, on and after the Effective Date, the Plan Administrator may use, acquire, and dispose of any of the remaining assets, and may prosecute, compromise, or settle any Claims and Causes of Action, including the Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### G.    Preservation of Causes of Action

Except as otherwise provided in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and vest in the Debtors on the Effective Date. Except as may otherwise be expressly set forth in the Retained Causes of Action, no Causes of Action shall be retained or preserved against the Debtors' directors and officers.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Causes of Action of the Debtors against it.

### H.    Corporate Action

On the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes unless the Plan Administrator determines that dissolution can have any adverse impact on the remaining assets, including the Retained Causes of Action; *provided*, that neither the Debtors nor any party released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, that nothing in the Plan shall be construed as relieving the Debtors or the Plan Administrator (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Debtors' cases or the cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated.  From and after the Effective Date, the Plan Administrator shall be authorized to act

on behalf of the Estates, provided that the Plan Administrator shall have no duties other than as expressly set forth in this Plan or the Confirmation Order.

### I.      Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator.  The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### J.      Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors or the Plan Administrator (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.  The Debtors or the Plan Administrator (as applicable), all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### K.      Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

### L.      Sale Order

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Orders or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### M.      Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders,

officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### N.      Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies held by the Debtors, the Committee, if any, and the DIP Secured Parties that are settled by this Plan.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and their Estates, and is fair, equitable and reasonable.  Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.      General Treatment

On the Effective Date, except as otherwise provided herein (which exclusion includes the D&O Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

### B.      Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with

the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.4 herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties.**

### C.    Reservation of Rights

Neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

### D.    Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### E.    D&O Policies

Each D&O Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O

Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Policies.

### F. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

### G. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### H. Employee Compensation and Benefits

All employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims or as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Plan Administrator (as applicable); *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

### B.     Compliance with Tax Requirements

In connection with this Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under this Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences.  Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipients for all purposes of this Plan.

Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator and any Claim in respect of such distribution under this Plan shall be discharged and forever barred from assertion against such Debtor, the Plan Administrator, or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### C.     Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.     Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent

is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Plan Administrator.

### E.        Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F.        Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.        Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within ninety (90) calendar days after the mailing of such distribution, the Plan Administrator shall be authorized to cancel such distribution check and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable distribution or uncashed distribution, as applicable.  If, after the passage of thirty (30) calendar days after such Filing, the payment or distribution on the Allowed Claim still cannot be made, then (1) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Plan Administrator; and (2) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### H.        Manner of Payment

Except as specifically provided herein, at the option of the Debtors or the Plan Administrator, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

**I.**     **Foreign Currency Exchange Rate**

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, on the Petition Date.

**J.**     **Setoffs and Recoupments**

The Debtors and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or nonbankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claim the Debtors or their Estates may have against the Holder of such Claim.

**K.**     **Minimum Distributions**

No payment of Cash in an amount of less than one hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Wind-Down Budget.  If the Cash available for the final distribution is less than the cost to distribute such funds, the Plan Administrator may donate such funds to the unaffiliated charity of its choice.

**L.**     **Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

**M.**     **Distributions Free and Clear**

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

**N.**     **Claims Paid or Payable by Third Parties**

1.     Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors and/or the Plan Administrator (as applicable) on account of such Claim, such

Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors and/or the Plan Administrator (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors and/or the Plan Administrator (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtors or Plan Administrator (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.   Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy. Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Plan Administrator, may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A.   **Allowance of Claims**

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.   **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or

action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims

Before or after the Effective Date, the Debtors or the Plan Administrator (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by Purchaser(s) in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Bar Date (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

### F.    Disallowance of Late Claims

Except as provided herein or otherwise agreed to by the Debtors or the Plan Administrator (as applicable), any Holder of a Claim Filed, via Proof of Claim, after the Bar Date shall not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548,

549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan.  A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors or the Plan Administrator from such Holder have been paid.

### H.    Disputed Claims Reserve

The Debtors or the Plan Administrator (as applicable) shall establish and maintain a Disputed Claims Reserve, which shall hold amounts as necessary to reserve for each of the Disputed Claims to the extent such Disputed Claims are subsequently Allowed and entitled to distributions, or such lower amounts as may be determined by the Bankruptcy Court.

### I.    Amendment to Claims

Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Plan Administrator, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### J.    No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

### K.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1.      The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Confirmation Order shall have been entered and shall be in full force and effect.

3.      There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by this Plan from being consummated.

4.      The Professional Fee Reserve shall have been fully funded pursuant to the terms of this Plan.

5.      The Debtors shall have sufficient Cash to satisfy all DIP Secured Party Expenses upon the Effective Date.

6.      All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.      The Plan Administrator shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

8.      The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

## B.      <u>Waiver of Conditions</u>

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A herein may be waived in whole or in part by the Debtors without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## C.      <u>Effect of Vacatur of the Confirmation Order</u>

If the Confirmation Order is vacated (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

## D.      <u>Votes Solicited in Good Faith</u>

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

31647715.1

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    **Releases by the Debtors**

**As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party is deemed released by the Debtors and their estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, if any.**

**Each Person and Entity deemed to grant the Debtors releases shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY**

**AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

B.    <u>Releases by Holders of Claims and Interests</u>

As of the Effective Date, each Releasing Party is deemed to have released each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person; *provided further*, that notwithstanding anything to the contrary in the Disclosure Statement and Plan, this provision shall not apply with respect to any unimpaired Claim until such unimpaired Claim has been paid in full in the Allowed amount of such Claim determined in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Debtors or the Plan Administrator, as applicable, at which time this provision shall apply in all respects as to the applicable unimpaired Claim. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, recovery on account of which, other than with respect to the Severance Payment Claim, if any.

Each Person and Entity deemed to grant the releases described in this Section shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims

**or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

C.    <u>Exculpation</u>

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action for any Claim related to any act or omission occurring between the Petition Date and the Effective Date of the Plan in connection with, relating to, or arising out of, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other act, occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

D.    <u>Injunction</u>

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a Purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Released Parties, or Exculpated Parties (as applicable): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (2) enforcing,

attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding any other indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Plan Administrator, and their respective affiliates, employees, advisors, officers and directors, or agents.

### E.    No Discharge

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests.

### F.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, these Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan

31647715.1

pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to each of the following:

1.       Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.       Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.       Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.       Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.       Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.       Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.       Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action, if any.

8.       Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.       Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

10.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the Sale Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20.     To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

21.     To hear and determine any Causes of Action that may be brought by the Plan Administrator.

22.     To hear and determine any other rights, claims, or Causes of Action held by or accruing to the Debtors or the Plan Administrator pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

23.     Enter an order or final decree concluding or closing these Chapter 11 Cases.

24.     Enforce all orders previously entered by the Bankruptcy Court.

25.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129

of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

In the event that the Sale is not consummated prior to the Effective Date, the Debtors shall use commercially reasonable efforts to modify the Plan to effectuate and structure the Plan in a tax efficient manner as determined by the Debtors and the Purchaser(s).

### B.      Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.      Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.      Debtors' Operation from Confirmation Hearing Through Effective Date

During the period from the Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### C.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Plan Administrator (as applicable), all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### D.    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.    Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### G.    Determination of Tax Liabilities

As of the Effective Date, the Plan Administrator will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates (to the extent not the responsibility of the Purchaser(s)); *provided*, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled

pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms. The Debtors and the Plan Administrator (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' Estate for any tax incurred during the administration of these Chapter 11 Cases.

### H.    Dissolution of the Committee

On the Effective Date, any duly appointed official committee of unsecured creditors will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases; *provided,* that, after the Effective Date, the Committee (if any) will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (2) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order. Following the Effective Date, the Committee's Retained Professionals, if any, shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) – (2). Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.    Preservation of Books and Records

On the Effective Date, the Debtors shall provide the Plan Administrator with timely access to all of the books and records of the Debtors in the Debtors' possession. The Debtors shall also instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator.

### J.    Notices

In order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| ICON Aircraft, Inc.<br>2141 ICON Way, Suite 100<br>Vacaville, California 95688<br>Attention: Jerry Meyers<br>E-mail: jerry.meyer@iconaircraft.com | Sidley Austin LLP<br>1999 Avenue of the Stars, 19th Floor<br>Los Angeles, California 90067<br>Attention: Sam Newman<br>Email: sam.newman@sidley.com<br>-and- |

|  | Young, Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Sean M. Beach<br>Email: sbeach@ycst.com |
| --- | --- |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

## K.     Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that these Chapter 11 Case are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## L.     Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## M.     Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of the Plan, the Plan shall control. The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**N.     <u>Governing Law</u>**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**O.     <u>Nonseverability of Plan Provision Upon Confirmation</u>**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

**P.     <u>Closing of Chapter 11 Case</u>**

After the full administration of these Chapter 11 Cases, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 13, 2024

Respectfully submitted,


/s/ *Thomas M. McCabe*
By: Thomas M. McCabe
Chief Restructuring Officer
ICON Aircraft, Inc.

**Exhibit B**

**Liquidation Analysis**

**To come**

31646352.3