## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ICON AIRCRAFT, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |

### NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that, on June 3, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 248] (the "Solicitation Procedures Order"): (a) conditionally approving the *Second Amended Disclosure Statement for Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and Its Debtor Affiliates* [Docket No. 243; Exhibit B] (including all exhibits thereto and as may be amended, supplemented, or modified from time to time, the "Disclosure Statement") for solicitation purposes only; (b) approving the solicitation and voting procedures with respect to the proposed *Second Amended Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and Its Debtor Affiliates* [Docket No. 243; Exhibit A] (as may be amended, modified, amended, or supplemented from time to time, the "Plan")[2]; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE** that as contemplated by the Plan and the Solicitation Procedures Order, the Debtors hereby file this Plan Supplement (the "Plan Supplement"). The Debtors shall have and expressly reserve the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date. The Plan Supplement contains the following documents (each as defined in the Plan):

| Exhibit | Plan Supplement Document |
|:---:|:---:|
| A | Identity and Compensation of the Plan Administrator |
| B | Plan Administrator Agreement |
| C | Identity and Compensation of Insiders Employed by the Plan Administrator |

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: ICON Aircraft, Inc. (7443), Rycon LLC (5297), IC Technologies Inc. (7918), and ICON Flying Club, LLC (6101). The Debtors' service address is 2141 ICON Way, Vacaville, CA 95688.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable, or as context otherwise requires.

| D | List of Retained Causes of Action |
|---|---|

**Objection Deadline**.  The deadline for filing objections to the Plan and any objection to the adequacy of the disclosures in the Disclosure Statement, if any, is **July 10, 2024 at 4:00 p.m. prevailing Eastern Time** (the "Confirmation Objection Deadline").  All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; **and** (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline:

| Debtors | Counsel to the Debtors |
|---|---|
| **Icon Aircraft, Inc.**<br>Attn: Jerry Meyer<br>2141 Icon Way, Suite 100,<br>Vacaville, CA 95688<br>Email: jerry.meyer@iconaircraft.com | **Sidley Austin LLP**<br>2021 McKinney Avenue, Suite 2000<br>Dallas, Texas 75201<br>Attn: Charles Persons and Jeri Leigh Miller<br>Email: cpersons@sidley.com,<br>jeri.miller@sidley.com<br><br>- and -<br><br>**Young Conaway Stargatt & Taylor LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Sean Beach, Ashley Jacobs, Jared Kochenash, and Soumya Venkateswaran<br>Email: sbeach@ycst.com, ajacobs@ycst.com,<br>jkochenash@ycst.com@ycst.com,<br>svenkateswaran@ycst.com |
| **United States Trustee** | |
| **Office of The United States Trustee**<br>844 King Street, Suite 2207<br>Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Joseph Cudia and Malcolm Bates | |

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing") will be held on **July 22, 2024 at 10:00 a.m. (ET)** before the Honorable Craig T. Goldblatt, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, free of charge, you should contact the voting

and solicitation agent retained by the Debtors in these chapter 11 cases, Stretto, Inc. ("Stretto" or the "Voting Agent") by: (a) writing to Icon Aircraft, Inc. Ballot Processing Center, c/o Stretto, Inc., 410 Exchange, Suite 100, Irvine, California 92602; (b) calling the Debtors' restructuring hotline at (866) 993-1870 (Toll-Free) or (949) 892-1896 (International) or emailing TeamIconAircraft@stretto.com; or (c) visiting the Debtors' restructuring website at https://www.cases.stretto.com/iconaircraft.  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: https://www.deb.uscourts.gov/.

---

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **SECTION IX.B.** CONTAINS A **THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE VOTING AGENT.**

---

*[Remainder of page intentionally left blank]*

Dated: July 3, 2024
Wilmington, Delaware

*/s/ S. Alexander Faris*
_____

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
S. Alexander Faris (No. 6278)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        sbeach@ycst.com
              ajacobs@ycst.com
              afaris@ycst.com
              jkochenash@ycst.com

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone:    (310) 595-9500
Facsimile:    (310) 595-9501
Email:        sam.newman@sidley.com

*and*

Charles Persons (admitted *pro hac vice*)
Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:        cpersons@sidley.com
              jeri.miller@sidley.com

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:        nelner@sidley.com

*Counsel for the Debtors and Debtors in Possession*

## <u>Exhibit A</u>

### Identity and Compensation of the Plan Administrator

The Plan Administrator will be Thomas G. FitzGerald of Drivetrain, LLC.

*[Terms of compensation to be filed]*

## **Exhibit B**

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

THIS PLAN ADMINISTRATOR AGREEMENT (the "Agreement") is entered into this [●] day of [●], 2024, by and among [ICON Aircraft, Inc., Rycon LLC, IC Technologies Inc., and ICON Flying Club, LLC] (collectively, the "Debtors") in the chapter 11 bankruptcy cases jointly administered under Case No. 24-10703 (CTG) (the "Chapter 11 Cases") and [●] ("[●]"), by and through [●] in his/her capacity as the Plan Administrator under the Plan (as defined below) (in such capacity, the "Plan Administrator") (each a "Party," and collectively, the "Parties").

## WITNESSETH:

WHEREAS, on April 4, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the Chapter 11 Cases;

WHEREAS, on May 13, 2024, the Debtors filed the *Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and Its Debtor Affiliates* [Docket No. 196] (as subsequently amended at Docket Nos. 238 and 243, and as may be further amended, modified, or supplemented from time to time, the "Plan") with the Bankruptcy Court;

WHEREAS, pursuant to the Plan, as of the Effective Date, the Plan Administrator, selected by the Debtors, shall be appointed and thereafter serve in accordance with the Plan;

WHEREAS, on [●], 2024, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (as may be amended, modified, or supplemented, the "Confirmation Order"). Copies of the Plan and Confirmation Order are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and are incorporated herein by reference;

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the Parties do hereby covenant and agree as follows:

## ARTICLE I.
### Definitions; Interpretive Rules

1.1    Terms Defined in Plan.  Any capitalized term used and not defined herein shall have the respective meaning ascribed to such terms in the Plan.

1.2    Interpretive Rules.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) references to "Articles," "Sections," "Exhibits," and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, Exhibits, and other subdivisions of this Agreement; (b) the use of the term "including" means "including but not limited to;" and (c) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision (unless otherwise specified).  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.  The singular shall include the plural and the plural

the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.

## ARTICLE II.

## Appointment of the Plan Administrator

2.1     Appointment and Acceptance.   [Name of Plan Administrator] is hereby appointed as the Plan Administrator, and the Plan Administrator hereby accepts such appointment. On the Effective Date and automatically and without further action, all actions and services performed by the Plan Administrator in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization and payment for such performance, including the Plan Administrator's professional fees and expenses, shall be ratified and authorized to the extent not already authorized by the Plan or Confirmation Order.

## Rights and Powers of the Plan Administrator

2.2     In addition to the powers and authority specified in the Plan, the Plan Administrator shall be empowered to:

(a)     open and maintain bank accounts on behalf of, or in the name of, the Debtors, including the establishment, re-evaluation, adjustment, and maintenance of accounts to establish appropriate reserves, and designate additional authorized signatories on bank accounts as may be necessary;

(b)     calculate and make distributions and other payments, in each case as provided for, or contemplated by the Plan, the Confirmation Order, or this Agreement;

(c)     liquidate, sell, receive, hold, invest, supervise, and protect the assets of the Debtors;

(d)     abandon any assets of the Debtors (other than Cash and cash equivalents) that the Plan Administrator reasonably determines to be without material monetary value or burdensome to the Plan Administrator's administration of the Debtors' assets, in each case after giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash;

(e)     in connection with closing the Chapter 11 Cases, donate any remaining Cash, including with respect to any distributions deemed as unclaimed property pursuant to the Plan, to a 501(c)(3) charity of its choice in accordance with the terms of the Plan;

(f)     (i) where reasonably necessary or appropriate, defend against and object to any Claims and litigate such objections to resolution, (ii) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim, and (iii) supervise and administer the resolution, any settlement, and payment of Allowed Claims pursuant to the Plan or the Bankruptcy Code, in each case without further Bankruptcy Court approval (collectively, the "Claims Resolution Process");

31795021.2

(g)     assert any of the Debtors' Claims, Causes of Action, rights of setoff, or other legal or equitable defenses, including the Retained Causes of Action;

(h)     as applicable, (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax and information returns required with respect to the Debtors, (iii) make tax elections for and on behalf of the Debtors, and (iv) pay taxes, if any, payable for and on behalf of the Debtors;

(i)     pay all lawful expenses, debts, charges, taxes, and liabilities of the Debtors in accordance with this Agreement, the Plan, and the Confirmation Order;

(j)     withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Plan Administrator has determined, in its reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision thereof;

(k)     effect all actions and enter into any agreement or execute any document or instrument required by, or consistent with, the Plan, the Confirmation Order, or this Agreement and perform all obligations thereunder;

(l)     purchase and carry all Insurance Policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

(m)     retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration of the Estates and the administration, prosecution, and distribution of the Debtors' assets in accordance with the Plan, the Confirmation Order, and this Agreement;

(n)     file post-confirmation and post-Effective Date reports and pay statutory fees as and when they become due;

(o)     implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement relating to the Debtors and the Debtors' assets;

(p)     take all actions reasonably necessary to wind down the Estates;

(q)     file one or more motions to close the Chapter 11 Cases; and

(r)     take all other actions consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable to administer the Plan Assets in accordance with the Plan, the Confirmation Order, this Agreement and applicable law.

2.3     <u>Pursuit and Resolution of Causes of Action of the Debtors</u>.  Except as otherwise provided in the Plan, the Plan Administrator has the exclusive right, power, and interest on behalf of the

Debtors and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Causes of Action of the Debtors, including the Retained Causes of Action, without any further order of the Bankruptcy Court. From and after the Effective Date, the Plan Administrator, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all Causes of Action of the Debtors and shall retain and possess the right to institute, commence, file, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Causes of Action of the Debtors in any court or other tribunal. The Plan Administrator may seek Bankruptcy Court approval of any individual or global settlement of any Causes of Action of the Debtors as the Plan Administrator deems reasonably necessary or desirable in its sole discretion.

2.4     Liquidating Trust.  The Debtors and the Plan Administrator have the right to establish a liquidating trust, either before or after the Confirmation Date, to the extent the Debtors, in their discretion, determine that a liquidating trust would more efficiently wind down the Estates.

2.5     Plan Administrator as Debtor/Estate Representative.  On the Effective Date and to the extent necessary to give full effect to its administrative rights and duties under the Plan, the Plan Administrator:

(a)     shall be deemed to be the sole party vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and section 1106 of the Bankruptcy Code; and

(b)     shall succeed to all powers as would have been applicable to each Debtor's directors, officers, and managers; *provided*, *however*, that the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion.

2.6     Permitted Investments.  The Plan Administrator is authorized, in its sole discretion, to invest the Debtors' assets with a bank that is on the U.S. Trustee approved list for section 345 deposits.  Subject to the foregoing, any investments of the Plan Assets (i) shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs and (ii) shall be limited to demand and time deposits, such as certificates of deposit, having maturities of not more than one year, and U.S. Treasury bills or other temporary liquid investments that are readily convertible to known amounts of Cash.  The Plan Administrator shall have no liability for interest or producing income on any moneys received hereunder, and held for distribution or payment pursuant to the terms of the Plan and this Agreement.

2.7     Limitations on the Plan Administrator.  Notwithstanding anything to the contrary under applicable law permitting any such action, the Plan Administrator shall not do or undertake any of the following:

(a)     receive transfers of any listed stocks or securities, or any readily marketable securities, except as is absolutely necessary or required under the Plan and the Confirmation Order;

(b)     retain Cash or cash equivalents in excess of a reasonable amount necessary to (i) fulfill obligations related to the Plan or this Agreement, including reserves with respect thereto, (ii) make specified distributions, and (iii) satisfy any liabilities of the Debtors and their Estates;

(c)     receive or retain any operating assets of an ongoing business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation or other Entity with operating assets;

(d)     accept, guarantee, endorse or otherwise assume or take on, directly or indirectly, any obligation or other liability, monetary or otherwise, on behalf of the Debtors other than as required or permitted by the Plan or the Confirmation Order;

(e)     take any actions inconsistent with the orderly liquidation of the Plan Assets or as are required by applicable law, the Plan or the Confirmation Order; or

(f)     engage in any business or trade except as consistent with the orderly and expeditious liquidation of the Plan Assets; *provided*, *however*, that the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not conflict or interfere in any manner with the Plan Administrator's administration of the Plan Assets.

2.8     Plan Administrator Operating Reserve.

(a)     On the Effective Date, the Plan Administrator shall establish and maintain a reserve (the "Plan Administrator Operating Reserve") in an amount equal to the amount of Priority Tax Claims, Other Priority Claims, and Administrative Claims asserted as of the Effective Date, and the Disputed Claims Reserve, or such other amount as determined by the Plan Administrator in its reasonable business judgment, which amount shall be deemed necessary by the Plan Administrator to satisfy anticipated fees, costs, and expenses incurred or to be incurred by the Debtors and the Plan Administrator for operating, liquidating, and winding down the Debtors in accordance with the Plan.

(b)     Any funds remaining in the Plan Administrator Operating Reserve at the time of the final decree closing these Chapter 11 Cases shall be distributed pursuant to the terms of the Plan.

2.9     Professional Fee Reserve.  Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date shall be paid from the Professional Fee Reserve.  If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee claims shall be paid by the Plan Administrator as Allowed Administrative Claims.  To the extent there are any excess amounts remaining in the Professional Fee Reserve following the satisfaction

of all Professional Fee Claims, the Plan Administrator shall distribute such funds pursuant to the terms of the Plan.

2.10 <u>Retention of Counsel and Agents</u>.

(a)    The Plan Administrator shall retain legal counsel and shall retain other advisors and professionals (collectively, the "<u>Plan Administrator Professionals</u>"), to the extent necessary without the need for further order or approval by the Bankruptcy Court.

(b)    Any professionals retained by the Plan Administrator shall be entitled to compensation for all reasonable and documented services rendered and monthly reimbursement of reasonable and documented fees, costs, and expenses incurred. The payment of the fees, costs, and expenses of the Plan Administrator and Plan Administrator Professionals incurred before or after the Effective Date shall be made in the ordinary course of business and shall not be subject to prior approval of the Bankruptcy Court.

2.11 <u>Compensation of Plan Administrator</u>.

(a)    The Plan Administrator shall be entitled to compensation as set forth in the Plan or any supplement thereto (the "<u>Fees</u>"), and reimbursement of reasonable and documented out of pocket fees, costs, and expenses (the "<u>Expenses</u>").

(b)    The Fees and Expenses shall be payable out of the Plan Administrator Operating Reserve without further Bankruptcy Court order or any notice or action.

(c)    Subject to subsection (b), the Plan Administrator shall also be entitled to Fees rendered and Expenses incurred (including reasonable and documented legal fees and costs), prior to the Effective Date in connection with this Agreement and upon the Effective Date, all of such Fees and Expenses shall be paid.

2.12 <u>Resignation or Death of Plan Administrator</u>.

(a)    The Plan Administrator may resign at any time by giving at least thirty (30) days' written notice of the Plan Administrator's intent to do so.  In the event of a resignation, the resigning Plan Administrator shall render to the successor Plan Administrator a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Plan Administrator.  The resignation shall be effective on the later of (i) the date specified in the notice; (ii) the date that is thirty (30) days after the date the notice is delivered; and (iii) the date the accounting described in the preceding sentence is delivered.

(b)    In the event that the Plan Administrator resigns pursuant to subsection (a) or is otherwise no longer available for any reason, the Plan Administrator shall designate another Person or Entity to serve as successor Plan Administrator within thirty (30) days, or such time as may be extended for cause, and thereupon such successor Plan Administrator, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties, and obligations of

31795021.2

6

the predecessor. Notice of any such selection shall be filed with the Bankruptcy Court. Without limiting the generality of the foregoing, in the event of any dispute over removal or selection of the Plan Administrator, including whether or not "Cause" for removal exists as described herein or any other dispute over the terms of this Agreement or the Plan Administrator's performance hereunder, the Plan Administrator or any party-in-interest may request appropriate relief from the Bankruptcy Court. Upon the appointment of the successor Plan Administrator, all responsibilities of the predecessor Plan Administrator relating to the Debtors or arising under the Plan or this Agreement shall be terminated; *provided*, *however*, that the original Plan Administrator's right to indemnification and other protections set forth herein shall survive termination and is subject to <u>Sections 2.15</u> and <u>2.16</u>.

(c)     Upon the appointment of a successor Plan Administrator and the delivery of the then-remaining Plan Assets to the successor Plan Administrator's control, the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Administrator). A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator. Notwithstanding anything in this Agreement, in the event a successor Plan Administrator is not appointed after thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's resignation, death, incapacity, or removal, any party in interest may request the Bankruptcy Court appoint a successor Plan Administrator.

2.13    <u>Removal of Plan Administrator</u>. The Plan Administrator may be removed for "Cause" as determined by order of the Bankruptcy Court. For purposes of both this provision and removal, Cause shall mean:

(i)     theft, dishonesty, fraud, or willful misconduct including intentional falsification of any employment or other records;

(ii)    gross negligence or material failure in the performance of any material duties under the Plan or this Agreement that is: (a) repeated and/or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure; and (b) material to the Debtors and the Estates; or

(iii)   the indictment or conviction (including any plea of guilty or no contest) for any felony or other crime involving dishonesty or moral turpitude.

During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall (i) continue to discharge

the rights, obligations, and duties of the Plan Administrator, and (ii) continue to receive payment of Fees and Expenses incurred pursuant to this Agreement.

2.14    Plan Provisions.  In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order.  Notwithstanding anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court, provided that in no event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances.

2.15    Exculpation and Indemnification.  The Plan Administrator and all professionals retained by the Plan Administrator (collectively, the "Post-Effective Date Indemnified Parties"), each in their capacities as such, shall be deemed exculpated and indemnified, to the fullest extent of the law, in all respects by the Debtors, solely from the Plan Assets, for any losses, claims, damages, liabilities, and expenses, including reasonable attorneys' fees, disbursements, and related expenses which may incur or to which the Post-Effective Date Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Post-Effective Date Indemnified Parties on accounts of the acts or omissions of the Plan Administrator solely in its capacity as such; *provided*, *however*, that the Post-Effective Date Indemnified Parties shall not be entitled to any indemnification for actions or omissions that result in willful misconduct, gross negligence, or fraud.

2.16    Limitation of Liability.  The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action.  No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or the Post-Effective Date Indemnified Parties for taking any action in accordance with, or to implement the provisions of, the Plan, this Agreement, the Confirmation Order, or any order of the Bankruptcy Court other than for actions or omissions as a result of willful misconduct, gross negligence, or fraud.  All Persons and Entities shall look solely to the Plan Assets for satisfaction of claims of any nature arising in connection with the affairs of the Plan Administrator or claims against the Plan Administrator or the Post-Effective Date Indemnified Parties, and there shall be no personal obligation to satisfy such liabilities.  The Plan Administrator may, in connection with the performance of its functions, in its sole and absolute discretion, consult with and rely upon its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing.  Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud, provided that in no event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances.

2.17    Burden of Proof.  In any proceeding brought by any of the Debtors or the Estates, or any other Person or Entity who is bound by this Agreement challenging any action, determination or

failure to act of the Post-Effective Date Indemnified Parties in discharge of their duties under this Agreement or the Plan, the Person or Entity bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary in this Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Post-Effective Date Indemnified Parties in the discharge of their duties under this Agreement or the Plan is, to the extent consistent with this Agreement or the Plan, hereby deemed to not constitute a breach of this Agreement, the Plan, or any duty hereunder, thereunder, or existing at law, in equity, or otherwise.

2.18    <u>Reliance by the Plan Administrator</u>.    Post-Effective Date Indemnified Parties may absolutely rely upon, and shall be fully protected in acting or refraining from acting, if they rely upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Post-Effective Date Indemnified Party has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of gross negligence, willful misconduct, or fraud in respect of the Post-Effective Date Indemnified Parties' duties as found by a Final Order of the Bankruptcy Court, the Post-Effective Date Indemnified Parties may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon.

2.19    <u>Reliance by Entities Dealing with the Plan Administrator</u>.    In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Debtors or the Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtors or the Estates, and shall have no obligation to inquire into the existence of such authority. Each Person or Entity who is bound by this Agreement hereby waives, to the fullest extent permitted by law, any and all defenses or other remedies that may be available against such Person or Entity to contest, negate, or disaffirm any action of the Plan Administrator in connection with any such dealing. Each and every certificate, document, or other instrument executed on behalf of the Debtors or the Estates by the Plan Administrator or its representative or agents shall be conclusive evidence in favor of any and every Person or Entity relying thereon or claiming thereunder that (a) at the time of the execution and delivery of such certificate, document, or instrument, this Agreement was in full force and effect, (b) the Person or Entity executing and delivering such certificate, document, or instrument was duly authorized and empowered to do so for and on behalf of the Debtors or the Estates, and (c) such certificate, document, or instrument was duly executed and delivered in accordance with the terms and provisions of this Agreement and is binding upon the Debtors and the Estates.

2.20    <u>Limited Recourse</u>.    Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, Persons (including any professionals retained by the Plan Administrator in accordance with this Agreement) engaged in transactions with the Debtors or the Plan Administrator, shall look only to the Plan Assets to satisfy any liability incurred in connection with carrying out the terms of this Agreement, the Plan, or the Confirmation Order.

2.21    Insurance.  The Plan Administrator may obtain, at the expense of the Debtors and with funds from the Plan Assets, commercially reasonable liability or other appropriate insurance with respect to the obligations of the Debtors, including appropriate directors' and officers' insurance with respect to the Wind-Down.

2.22    No Successor Liability.  Except as otherwise expressly provided in the Plan and the Confirmation Order, the Plan Administrator (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) is not, and shall not be, successor to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

2.23    Survival.  The provisions of this Article II shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Plan Administrator.  The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Debtors' charter, bylaws or other organizational documents or policies shall affect the Plan Administrator's or the other Post-Effective Date Indemnified Parties' rights hereunder.

2.24    Standard of Care.  The Plan Administrator shall exercise its rights and powers vested in it by this Agreement and use reasonable business judgment in the exercise of its duties.  Subject to applicable law, the Plan Administrator shall not be liable to the Debtors or any beneficiary for any act it may do or omit to do as a Plan Administrator while acting in good faith and in the exercise of its reasonable business judgment.  The foregoing limitation on liability will apply equally to the agents, and/or employees of the Plan Administrator and Plan Administrator Professionals (as defined herein) acting on behalf of the Plan Administrator in the fulfillment of the Plan Administrator's duties hereunder.  Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking, or failing to take, any action that based upon the advice of counsel or other professionals, the Plan Administrator determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty of the Plan Administrator.

## ARTICLE IV.
### Distributions

4.1    Distributions Under the Plan.  Distributions of proceeds of the Plan Assets to Holders of Allowed Claims or Interests shall be made as follows:

(a)    Distributions to be made by the Plan Administrator may be made by any Person(s) designated or retained by the Plan Administrator to serve as the Disbursing Agent(s), without the need for any further order of the Bankruptcy Court.

(b)    The Plan Administrator shall be authorized, in his or her discretion to delay distributions to Holders of Claims or Interests or otherwise determine reasonable distribution dates for such Holders, including, without limitation, based upon the status and progress of the liquidation of Plan Assets, the total number of and/or asserted claim amounts of Disputed Claims, and any other relevant factors.

31795021.2

4.2     Distributions on Account of Disputed Claims.  Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims that become Allowed Claims after the Effective Date will be made by the Plan Administrator at such periodic intervals as the Plan Administrator determines to be reasonably prudent.

4.3     No Distributions Pending Allowance.  Notwithstanding anything in the Plan or the Confirmation Order to the contrary, no distribution will be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim.

4.4     Settling Disputed Claims.  The Plan Administrator is authorized to settle, or withdraw any objections to Disputed Claims following the Effective Date without the need for approval of the Bankruptcy Court.

4.5     Allocation of Distributions Between Principal and Interest.  Except as otherwise provided in the Plan and subject to the Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

4.6     Setoffs and Recoupments.  The Plan Administrator may, but shall not be required to, set off against any Claims of any nature whatsoever that the Debtors may have against the Holder of a Claim; *provided* that neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claim the Debtors may have against the Holder of such Claim.

4.7     U.S. Trustee Fees and Reports.  After the Effective Date, the Plan Administrator shall pay as an expense of the Debtors and their Estates all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Debtors' disbursements as required under the Plan and Confirmation Order until the Chapter 11 Cases are closed.  After the Effective Date, the Plan Administrator shall prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Debtors as required by the U.S. Trustee for as long as the Chapter 11 Cases remain open.

4.8     Timing of Distributions.  In the event that any payment, distribution or act under the Plan or this Agreement is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Any requirement under the Plan or Confirmation Order that the Plan Administrator or Disbursing Agent make a payment or distribution on a date shall mean that such party is required to commence the process of making a payment or distribution on such date.

4.9     Tax Identification Numbers.  The Plan Administrator may require any Holder of a Claim or Interest to furnish to the Plan Administrator (i) its social security number or employer or taxpayer identification number as assigned by the IRS and (ii) the original Form W-8 or copy of Form W-9, as applicable, as completed by each Holder of a Claim or Interest, and the Plan Administrator may condition any distribution to any holder of a Claim or Interest upon the receipt of such information.

31795021.2

## ARTICLE V.
### Effect of the Agreement on Third Parties

5.1    There is no obligation on the part of any person dealing with the Debtors' Estates, the Debtors, the Plan Administrator, or the Plan Administrator Professionals, to see to the application of the money or other consideration paid or delivered to the Plan Administrator, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Plan Administrator, or any agent of the Plan Administrator, to enter into or consummate the same, except upon such terms as the Plan Administrator may deem advisable.

## ARTICLE VI.
### Termination of the Agreement and Amendment and Dissolution of Debtors

6.1    <u>Termination of the Agreement</u>.  This Agreement shall terminate and the Plan Administrator shall be discharged at such time as: (i) the Estates have been fully administered and all of the Plan Assets have been liquidated or abandoned, (ii) all duties and obligations of the Plan Administrator hereunder have been fulfilled, (iii) all distributions required to be made under the Plan and this Agreement have been made, and (iv) a Final Order has been entered by the Bankruptcy Court closing the last of the Chapter 11 Cases.

6.2    <u>Dissolution of the Debtors</u>.  The Debtors will be dissolved by the Plan Administrator as soon as practicable after the liquidation, administration, and distribution of the Plan Assets in accordance with the terms of this Agreement and the Plan, and its full performance of all other duties and functions set forth herein or in the Plan.  The Plan Administrator shall not unduly prolong the duration of the Debtors and shall at all times endeavor to resolve, settle, or otherwise dispose of all the Plan Assets and to effect the distribution of the Plan Assets to creditors in accordance with the terms hereof and dissolve the Debtors as soon as practicable.

## ARTICLE VII.
### Miscellaneous

7.1    <u>Right to Seek Court Approval</u>.  The Plan Administrator shall have the right to seek Bankruptcy Court approval or direction with respect to any matter relating to the administration of the Estates and Plan Assets or the performance of its duties and responsibilities under the Plan, the Confirmation Order, or this Agreement, even if such approval is not required by the Plan, the Confirmation Order, or this Agreement.

7.2    <u>Confidentiality</u>.    The Plan Administrator shall, and shall cause its agents and representatives, to hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity or matter to which the Plan Assets relate to, of which the Plan Administrator has become aware in its capacity as Plan Administrator.

7.3    <u>Amendments</u>.  The Plan Administrator may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order, including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes, provided that any such material modification, supplement or amendment should be filed with the Bankruptcy Court.

31795021.2

7.4    Waiver.  No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

7.5    Cumulative Rights and Remedies.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

7.6    No Bond Required.  Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or surety or other security for the performance of its duties in any jurisdiction unless otherwise ordered by the Bankruptcy Court.

7.7    Irrevocability.  This Agreement shall be irrevocable, except as otherwise expressly provided in this Agreement and in accordance with the Plan.

7.8    Retention of Jurisdiction; Jurisdiction and Venue.  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Agreement, or any Entity's obligations incurred in connection herewith, including, without limitation, any action against the Plan Administrator, any Person retained by the Plan Administrator and the Post-Effective Date Indemnified Parties.  Each Party hereto irrevocably agrees that any suit, action, or proceeding with respect to this Agreement shall be brought exclusively in the United States Bankruptcy Court for the District of Delaware, and by execution and delivery of this Agreement, each Party (a) irrevocably submits to each such jurisdiction and venue; (b) waives, to the fullest extent permitted by law, any objection that it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum; and (c) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such Party is subject by a suit upon such judgment; *provided* that service of process is effected as otherwise permitted by law.

7.9    Severability.  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

7.10   Limitation of Benefits.  Except as otherwise specifically provided in this Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

7.11   Notices.  Unless otherwise expressly specified or permitted by the terms hereof, any notice, request, submission, instruction, or other document to be given hereunder by a Party shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) upon delivery, if delivered by a nationally known commercial courier service providing next day

31795021.2

13

delivery service (such as Federal Express), or (c) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid:

**If to the Plan Administrator, addressed as follows:**

[Name]
[Street]
[City, State, Zip]
Attn: [Name]
Email: [●]
Telephone: [●]
With a copy to: [●]

7.12    <u>Further Assurances</u>.  From and after the date hereof, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

7.13    <u>Counterparts</u>.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.  Delivery of an executed counterpart of this Agreement by facsimile or email in .pdf format shall be equally effective as delivery of a manually executed counterpart.

7.14    <u>Plan Controls in Event of Conflict</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  In the event of any inconsistency among this Agreement and the Plan, the provisions of the Plan and the Confirmation Order shall govern.

7.15    <u>Preservation of Privilege</u>.  In connection with any rights, claims, and Causes of Action that constitute assets of the estates, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those assets shall vest in the Plan Administrator.  The Plan Administrator shall seek to preserve and protect all applicable privileges and work-product relating to any Causes of Action of the Debtors and the Estates, including but not limited to any attorney-client privilege or work product privilege attaching to any documents or communications (whether written or oral).  The Plan Administrator's receipt of such information shall not waive any such privileges, and all such privileges are expressly preserved; provided, for the avoidance of doubt, upon the Effective Date, such privileges shall belong to the Plan Administrator and shall be waivable by the Plan Administrator.

7.16    <u>Filing Documents</u>.  A copy of this Agreement and all amendments thereto shall be maintained in an office or residence of the Plan Administrator and shall be available for inspection upon reasonable written request seeking such inspection.

7.17    Books and Records.

    (a)    On the Effective Date, all books and records of the Debtors shall be transferred to the control of the Plan Administrator.

    (b)    The Debtors shall instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records and data, legal and accounting files maintained by any professional of the Debtors and other of the Debtors' books and records maintained by or in the possession of third parties), to permit access to such books and records as may be reasonably requested by the Plan Administrator.

    (c)    The Plan Administrator will maintain reasonably good and sufficient books and records in respect to matters related to the wind down of the Debtors.  The Plan Administrator may, without Bankruptcy Court approval, destroy any documents that he or she believes are no longer required to effectuate the terms and conditions of the Plan.  Upon the entry of a final decree closing the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court, the Plan Administrator may destroy or otherwise dispose of all records maintained by them.

7.18    Governing Law.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

7.19    Entire Agreement.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein.  This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the Parties hereto, relating to any transaction contemplated hereunder.  In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order shall govern; *provided*, *however*, that the Plan Administrator may amend, modify, and/or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the Parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

7.20    WAIVER OF JURY TRIAL.  EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

7.21    Exculpatory Provisions and Survival Thereof.  Whether or not expressly therein so provided, any and all exculpatory provisions, immunities and indemnities, payment provisions, and any limitations and negations of liability contained in this Agreement, in each case inuring to

31795021.2

the benefit of the Plan Administrator, shall survive (a) the termination or revocation of this Agreement, and (b) as to any person who has served as Plan Administrator, the resignation or removal of such person as Plan Administrator.

*[Signature Pages to Follow on Next Page]*

31795021.2

IN WITNESS WHEREOF, the undersigned have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

<div style="margin-left:40%">

PLAN ADMINISTRATOR:

By: _____
Name: [●]
Title: Plan Administrator

DEBTORS AND DEBTORS IN POSSESSION:

By: _____
Name: [●]
Title: [●]

</div>

31795021.2

## Exhibit A

**Plan**

*(See attached)*

## **Exhibit B**

**Confirmation Order**

*(See attached)*

**<u>Exhibit C</u>**

**Identity and Compensation of Insiders Employed by the Plan Administrator**

*[To be determined]*

**Exhibit D**

**List of Retained Causes of Action**

## Schedule of Retained Causes of Action[1]

This schedule represents a non-exhaustive list of the Retained Causes of Action in connection with the Plan (subject to the terms thereof). The Debtors expressly reserve the right to alter, modify, amend, remove, augment, or supplement this Schedule of Retained Causes of Action at any time in accordance with the Plan.

For purposes of Article I, Section A of the Plan, notice is hereby given that "Retained Causes of Action" means all Causes of Action owned and/or belonging to the Debtors that are not waived, relinquished, exculpated, released, compromised, transferred, or settled under to the Plan or pursuant to a Final Order of the Bankruptcy Court, including but not limited to the following:[2]

1. All avoidance actions against any Person or Entity that is not a Released Party including, but not limited to, any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

2. All Causes of Action against any Person or Entity, current and/or former officers, directors, stockholders, members, managers, employees, Affiliates, or insiders of the Debtors *except for* Causes of Action against Thomas FitzGerald as sole member of the Special Committee.

3. All Causes of Action against (a) Xudong Zhu; (b) Min Zhang; (c) Xiaoying Fan; and (d) Jason Huang (collectively, the "Individual Defendants") arising from or related to, among other things, (i) the facts, circumstances, transactions, and occurrences that are the subject of that certain action currently pending before the Court of Chancery for the State of Delaware under caption *Asset Management Company Venture Fund, L.P. et al. v. Shanghai Pudong Science and Technology Investment Co., Ltd. et al.*, C.A. No. 2021-0475-JTL (the "Derivative Litigation"); and (ii) breaches of fiduciary duty (including, without limitation, duty of care, duty of loyalty, duty of oversight, and aiding and abetting any breaches of fiduciary duty), or any breaches of contract, each based on, relating to, or in any manner arising from, in whole or in part, any and all prepetition and postpetition dealings by and between any or all of the Individual Defendants and the Debtors, including: (1) the management, ownership, or operation of the Debtors; (2) business or contractual arrangements; (3) intercompany transactions; (4) distributions, advances or any similar transactions; and (5) expense reimbursements.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Liquidation for ICON Aircraft, Inc. and its Debtor Affiliates* [D.I. 243] (as may be amended, modified, or supplemented, the "Plan").

[2]   The Debtors are in active efforts to resolve certain Claims and Causes of Action and reserve the right to eliminate Retained Causes of Action contained herein to the extent settled for fair value under court supervision.

4.     All Causes of Action against (a) Shanghai Pudong Science and Technology Investment Co., Ltd.; (b) Pudong Science and Technology Investment (Cayman) Co., Ltd.; (c) PK Capital L.P.; (d) FEIREN International Co., Limited, (e) Shanghai Feike Technology Development Co., Ltd.; and (f) any Affiliates, subsidiaries or parties related to the parties set forth in (a) through (e) (each a "PDSTI Party" and collectively, the "PDSTI Parties") arising from or related to (i) the facts, circumstances, transactions, and occurrences that are the subject of the Derivative Litigation; (ii) breaches of fiduciary duty (including, without limitation, duty of care, duty of loyalty, duty of oversight, and aiding and abetting any breaches of fiduciary duty), or any breaches of contract, each based on, relating to, or in any manner arising from, in whole or in part, any and all prepetition and postpetition dealings by and between any or all of the PDSTI Parties and the Debtors, including: (1) the management, ownership, or operation of the Debtors; (2) business or contractual arrangements; (3) intercompany transactions; (4) distributions, advances or any similar transactions; and (5) expense reimbursements.

5.     All Causes of Action against (a) Asset Management Company Venture Fund, L.P.; (b) Philip Condit; (c) Kirk Hawkins; (d) Snowcrest Partners; (e) Steen Strand and (f) any Affiliates, subsidiaries, or parties related to the parties set forth in (a) through (e), arising from or related to, among other things: (i) the facts, circumstances, transactions, and occurrences that are the subject of the Derivative Litigation; and (ii) breaches of fiduciary duty (including, without limitation, duty of care, duty of loyalty, duty of oversight, and aiding and abetting any breaches of fiduciary duty), or any breaches of contract, each based on or relating to, or in any manner arising from, in whole or in part, any and all prepetition and postpetition dealings with the Debtors, including: (1) the management, ownership, or operation of the Debtors; (2) business or contractual arrangements; (3) intercompany transactions; (4) distributions, advances or any similar transactions; and (5) expense reimbursements.

6.     All Causes of Action against Co-Production International, Inc. arising from or related to, among other things: breaches of contract, each based on or relating to, or in any manner arising from, in whole or in part, any and all prepetition and postpetition dealings with the Debtors, including: (1) the management, ownership, or operation of the Debtors; (2) business or contractual arrangements; (3) intercompany transactions; (4) distributions, advances or any similar transactions; (5) the condition of the Debtors' assets; (6) labor and employment matters; and (7) expense reimbursements.

7.     All Causes of Action against Persons or Entities (other than Released Parties) that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or nonjudicial, regardless of whether such entity is specifically identified in the Plan, except to the extent such entity is a Released Party.

8.     All Causes of Action under section 510 of the Bankruptcy Code arising from or relating to any Claim, including but not limited to a Noteholder Claim for a prepetition funded debt obligation or a prepetition convertible note obligation, as applicable, of the Debtors.

9.      Causes of Action related to any act or omission that is determined in a final order to have constituted fraud, willful misconduct, or gross negligence.

10.     The right to seek a determination by the Bankruptcy Court of any tax, fine, or penalty relating to a tax or any addition to a tax, under section 505 of the Bankruptcy Code.

11.     All other Causes of Action arising in contract or tort or under a statute, including but not limited to Claims or Causes of Action arising from or related to: (a) guarantees, indemnities, recoupment, or setoff; (b) failure to fully perform or to condition performance on additional requirements under contracts with the Debtors before the assumption or rejection, if applicable, of such contracts; (c) payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; and (d) counter-claims and defenses related to any contractual obligations.

12.     All Causes of Action against any Person or Entity for recovery of, related to, or in connection with, the Debtors' accounts receivable.

13.     All Causes of Action against any Person or Entity related to or in connection with equipment, machinery and other tangible personal property located at any location leased or formerly leased by the Debtors that is not a Real Property Lease (as defined in that certain Asset Purchase Agreement, dated May 1, 2024, between and among the Debtors and SG Investment America, Inc., which was approved by the Sale Order entered at D.I. 296 on June 18, 2024 (such Asset Purchase Agreement, the "APA")).

14.     All Causes of Action against any Person or Entity arising under, related to, or in connection with Contracts not constituting Purchased Contracts (as such terms are defined in the APA).

15.     All Causes of Action against any Person or Entity arising under, related to, or in connection with insurance policies or the proceeds thereof to which the Debtors have any rights whatsoever (including all current and prior director and officer or similar fiduciary or errors and omissions insurance policies and all rights thereunder), regardless of whether such contract or policy is specifically identified in the Plan, including, Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters.

16.     Any and all tax obligations to which the Debtors are a party or pursuant to which the Debtors have any rights to whatsoever, including, without limitation, the Debtors' tax credits (including all employee retention credits), tax refunds, value-add tax reimbursements, tax deposits, tax attributes (including all net operating loss carryforwards and carrybacks), and prepaid tax amounts.

17.     All Causes of Action of the Debtors against any Person or Entity, including without limitation the Purchaser, arising under or in connection with the APA, the sale of the Purchased Assets or any Ancillary Agreements (as such terms are defined in the APA) or the APA.

18.     All Causes of Action against any Person or Entity unrelated to the Purchased Assets (as defined in the APA).

19.     All Causes of Action against any Person or Entity arising under or in connection with all employee benefit plans, all assets of such employee benefit plans and all trust agreements, administrative service contracts, insurance policies and other Contracts related thereto and all rights of the Debtors with respect to any of the foregoing (as such terms are defined in the APA).

20.     All Causes of Action against or related to any Person or Entity that owes or that may in the future owe money to the Debtors, regardless of whether such entity is expressly identified in the Plan.  The Debtors expressly reserve all Causes of Action against or related to any Person or Entity that asserts or may assert that the Debtors owe money to them. The claims and Causes of Action reserved include Causes of Action against vendors, suppliers of goods and services, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor or other party; (e) for any liens, including mechanics', artisans', materialmens', possessory or statutory liens held by the Debtor; (f) for counter-claims and defenses related to any contractual obligations; (g) for any turnover actions arising under Bankruptcy Code sections 542 or 543; and (h) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property or any business tort claims.

21.     All Causes of Action based in whole or in part upon any and all postings of a security deposits, adequate assurance payment, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit, prepayment or collateral is specifically identified herein.

22.     All Causes of Action based in whole or in part upon any and all liens regardless of whether such lien is specifically identified herein.

Pursuant to the Plan Administrator Agreement and Plan, the Plan Administrator, the Debtors, or the post-Effective Date Debtors, as applicable, may assert, pursue, litigate, investigate, prosecute, and/or compromise and settle the Retained Causes of Action, without further approval of the Bankruptcy Court or any other body.

**No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement (including this Schedule of Retained Causes of Action), or the Plan Administrator Agreement to any Retained Causes of Action against it as any indication that the Plan Administrator will not, or may not, pursue any and all available Retained Causes**

31775253.6

**of Action against it. The Plan Administrator, on behalf of the post-Effective Date Debtors, expressly reserves all rights to prosecute any and all and all Retained Causes of Action against any Person or Entity.**

Unless any Retained Causes of Action against an Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Plan Administrator, on behalf of the post-Effective Date Debtors, expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Causes of Action upon, after, or as consequence of, confirmation or consummation of the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Cause of Action that the post-Effective Date Debtors may hold against any Person or Entity shall vest in the Plan Administrator.

Notwithstanding any of the foregoing, the post-Effective Date Debtors expressly reserve all rights to raise any defenses, including, but not limited to, those related to setoff or other offsets in connection with filed proofs of claim under applicable law, including, but not limited to, section 502(d) of the Bankruptcy Code.

31775253.6