**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SEAPLANE DEBTOR 1, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10703 (CTG)<br><br>(Jointly Administered)<br><br>Hearing Date: November 4, 2024 at 2:00 p.m. (ET)<br>Obj. Deadline: October 28, 2024 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 9019, APPROVING THE SETTLEMENT REGARDING
CERTAIN DISPUTES WITH THE DERIVATIVE LITIGATION PLAINTIFFS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. § 101-1532 (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), approving the terms of the settlement (the "Settlement") in the *Claim Sale Term Sheet* (the "Settlement Term Sheet")[2] by and between the Debtors and the Derivative Litigation Plaintiffs[3] (collectively, the "Parties"), a copy of which is attached to the Proposed Order as **Exhibit 1**.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.) (7443); Seaplane Debtor 2, Inc. (f/k/a IC Technologies Inc.) (7918); Seaplane Debtor 3, LLC (f/k/a ICON Flying Club, LLC) (6101); and Seaplane Debtor 4, LLC (f/k/a Rycon LLC) (5297).  The Debtors' service address is c/o Armanino LLP, 231 Market Place, Suite 373, San Ramon, CA 94583-4743, Attn: Thomas McCabe, Chief Restructuring Officer.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Settlement Term Sheet.

[3] As used herein, the term "Derivative Litigation Plaintiffs" has the meaning set forth in the *Verified Statement of Paul, Weiss, Rifkind, Wharton & Garrison LLP and Landis Rath & Cobb LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [D.I. 111].

32244747.1

In support of this Motion, the Debtors rely upon the *Declaration of Thomas G. FitzGerald in Support of Debtors' Motion for Entry of an Order, Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement Regarding Certain Disputes with the Derivative Litigation Plaintiffs*, attached hereto as **Exhibit B** (the "FitzGerald Declaration").

In further support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Settlement, as will be discussed in more detail herein, resolves all disputes with the Derivative Litigation Plaintiffs and Mr. Hawkins, including with respect to the Chapter 11 Plan, by agreement among the parties to a path with three potential scenarios, depending on whether certain conditions are met. The first path entails a private sale and assignment by the Debtors of the Derivative Litigation Claims (as defined herein) to the Derivative Litigation Plaintiffs (as defined herein), for the price of $2.5 million and the assumption of significant unsecured claims, pursuant to section 363 of the Bankruptcy Code.

2. The Settlement contemplates that if such assignment fails to occur for any reason other than the Debtors' pursuit of an alternate transaction in accordance with their fiduciary duties, then the Derivative Litigation Plaintiffs shall support the confirmation of a mutually-agreed liquidating chapter 11 plan that includes the establishment of a litigation trust to pursue the Derivative Litigation Claims in either of remaining two potential scenarios.  The Derivative Litigation Plaintiffs can determine to either (i) sponsor such chapter 11 plan on terms satisfactory to the Parties, including a contemplated cash payment to the estate, and obtain the right to appoint the majority of the litigation trust oversight board, or (ii) not sponsor the chapter 11 plan and jointly choose an independent litigation trustee with the Debtors.  If the assignment fails to occur due to the Debtors' exercise of their fiduciary out, to pursue an alternate transaction in accordance with

32244747.1

their fiduciary duties, the Settlement outlines potential liquidated damages and the ability for the Derivative Litigation Plaintiffs to continue various litigation positions.

3. As part of the Settlement, the Derivative Litigation Plaintiffs (other than Kirk Hawkins) and their related parties are contemplated to receive releases under the chapter 11 plan. Finally, the Settlement generally stipulates to the requisite standards required of the parties in effectuating the assignment, the mutually-agreed liquidating chapter 11 plan, and the conditions precedent thereto.

## STATUS OF THE CASE AND JURISDICTION

4. On April 4, 2024 (the "Petition Date"), the Debtors commenced with the United States Bankruptcy Court for the District of Delaware (the "Court") voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

32244747.1

7. The statutory and other bases for the relief requested in this Motion are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A. General Background

8. The Debtors are an aircraft design and manufacturing company focused on the creation of consumer-friendly, safe, and technologically advanced aircraft that make the adventure of flying more accessible to mainstream consumers. The Debtors' flagship production aircraft—the ICON A5—is an amphibious sport plane.

9. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Thomas M. McCabe in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 2].

### B. Background Regarding the Plan and Disclosure Statement

10. On May 13, 2024, the Debtors filed with this Court the *Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates* [D.I. 196] and the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates* [D.I. 197]. On May 31, 2024, the Debtors filed the *Notice of Filing of (I) Amended Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates; (II) Amended Disclosure Statement for Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates; and (III) Blacklines Thereof* [D.I. 238].

11. On June 3, 2024, the Debtors filed the *Notice of Filing of (I) Further Amended Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates; (II) Further Amended Disclosure Statement for Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates; and (III) Blacklines Thereof* [D.I. 243], which included as Exhibit A

thereto the *Second Amended Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates* (the "Plan") and as Exhibit B thereto the *Second Amended Disclosure Statement for Joint Chapter 11 Plan of Liquidation for Icon Aircraft, Inc. and its Debtor Affiliates* (the "Disclosure Statement").

12. The Court entered the *Order (I) Conditionally Approving the Disclosure Statement, (II) Scheduling the Combined Hearing, (III) Establishing Notice and Objection Procedures for Confirmation of Plan and Final Approval of Adequacy of Disclosures, (IV) Establishing Solicitation, Voting, and Related Procedures, (V) Approving Related Dates, Deadlines, and Procedures, and (VI) Granting Related Relief* [D.I. 248] (the "Disclosure Statement Order") on June 3, 2024. The Disclosure Statement Order conditionally approved the Disclosure Statement, scheduled key dates, approved procedures with respect to confirmation of the Plan and final approval of the Disclosure Statement, and approved the solicitation, voting, and tabulation procedures.

**C.     Background Regarding the Settlement**

13. On June 4, 2021, the Derivative Litigation Plaintiffs filed a lawsuit in Delaware Chancery Court (the "Derivative Litigation")[4], against certain other shareholders, directors, and the president of the Debtors (collectively, the "Derivative Litigation Defendants"), asserting direct and derivative claims regarding breach of fiduciary duties, unjust enrichment, fraudulent inducement, misappropriation of technology, and self-dealings (the "Derivative Litigation Claims"). The Debtors were named as a nominal defendant solely in connection with the derivative claims.

---

[4]   *See Asset Mgmt. Co. Venture Fund, L.P., et al. v. Shanghai Pudong Science & Tech. Inv. Co., Ltd.*, Case No. 2021- 0475-JTL (Del. Ch. Ct. June 4, 2021).

32244747.1

5

14. On June 26, 2024, the Derivative Litigation Plaintiffs filed the *Motion of the Derivative Litigation Plaintiffs for Immediate Stay Relief and Authorization to Continue Prosecuting the Derivative Claims in Delaware Chancery Court* [D.I. 320] (the "Standing Motion"). On July 5, 2024, the Debtors filed a preliminary objection to the Standing Motion [D.I. 342] (the "Preliminary Standing Motion Objection").

15. Over the course of these chapter 11 cases, the Debtors and the Derivative Litigation Plaintiffs participated in active negotiations with respect to the Derivative Litigation, including prosecution of the Derivative Litigation Claims. Specifically, the parties exchanged information and materials, as well as participated in mediation. In connection with the Derivative Litigation Claims, the Special Committee of the board of directors undertook a review of the Derivative Litigation Claims and potential defenses and counter claims the Debtors' estates may have had against the Derivative Litigation Plaintiffs. As part of that review, the Debtors' advisors studied related documents, correspondence by and among the parties, and other materials, as well as researched and analyzed the applicable law governing Derivative Litigation Claims.

16. On August 16, 2024, the Court entered an *Order Approving Stipulation with Respect to the Resolution of Certain Disputes with the Derivative Litigation Plaintiffs and Kirk Hawkins, in his Individual Capacity* [D.I. 440] outlining a schedule for discovery, supplemental briefing, and the hearing relating to, among other things, the Standing Motion, the Preliminary Standing Motion Objection, the Plan, and the prosecution of the Derivative Litigation Claims (collectively, the "Disputed Issues").

17. On September 16, 2024, the Debtors and the Derivative Litigation Plaintiffs participated in a mediation before Chief Judge Ashely Chan of the United States Bankruptcy Court for the Eastern District of Pennsylvania regarding the Disputed Issues and continued settlement

32244747.1

6

discussions post-mediation. As a result of the significant efforts of Judge Chan and the Parties, the Parties reached an agreement regarding resolution of the Disputed Issues, which is reflected in the terms of the Settlement. The Debtors believe that entry into the Settlement reflects the sound exercise of their business judgment and is well within the lowest bounds of reasonableness, particularly considering the significant risks and costs to the estates of litigating the Disputed Issues to uncertain outcome.

### D. The Settlement Terms

18. The Parties, following mediation and good faith and arm's-length negotiations, have negotiated the Settlement in resolution of the Disputed Issues. The Settlement contains the following key terms:[5]

- The Debtors shall sell the Derivative Litigation Claims to the Derivative Litigation Plaintiffs pursuant to a private assignment under section 363 of the Bankruptcy Code (the "Derivative Claims Assignment") on the terms and conditions set forth in the Settlement Term Sheet.

- If the Derivative Claims Assignment fails to close for reasons other than a Debtor Fiduciary Pivot (as defined herein), then the Parties shall support confirmation of a liquidating chapter 11 plan, in substantially the form and substance as that attached as Exhibit A to the Settlement Term Sheet, under which the Derivative Litigation Claims are assigned to a litigation trust under the plan (the "Agreed Plan"). The Derivative Litigation Plaintiffs shall have until October 26, 2024 to decide whether to sponsor the Agreed Plan in an amount and on the terms and conditions satisfactory to the Parties; provided that any sponsorship may be financed by funding secured by litigation proceeds or otherwise entitled to a first right of recovery from the litigation proceeds.[6]

---

[5] The summary of the Settlement provided for herein is provided solely for the convenience of the Court, and is not intended to be a comprehensive recitation of all of the terms of the Settlement. The summary is qualified in its entirety by the actual terms of the Settlement, and to the extent that there is any inconsistency between the summary provided for herein and the actual terms of the Settlement, the actual terms of the Settlement shall control. Capitalized terms used but not defined in this summary shall have the meanings ascribed to them in the Settlement Term Sheet.

[6] The Derivative Litigation Plaintiffs will inform the Debtors by 12 noon (E.T.) on October 26, 2024 whether they intend to pursue the Derivative Claims Assignment or the Agreed Plan sponsorship.

32244747.1

- If the Derivative Litigation Plaintiffs sponsor the Agreed Plan, the Agreed Plan shall provide that the litigation trust and the litigation trustee may not settle, compromise, release, dismiss or otherwise transfer the Derivative Litigation Claims without the express, written consent of a majority of the litigation trust oversight board. The Derivative Litigation Plaintiffs shall appoint the majority of the litigation trust oversight board, which may include any of the Derivative Litigation Plaintiffs. For the avoidance of doubt, the litigation trust oversight board shall not have consent rights or any other form of authority over the disposition of any claims or causes of action other than the Derivative Claims, including any claims against Kirk Hawkins.

- If the Derivative Litigation Plaintiffs do not sponsor the Agreed Plan, then the Agreed Plan shall provide that (a) the Debtors and Derivative Litigation Plaintiffs shall appoint a mutually acceptable Litigation Trustee; (b) the Litigation Trust and the Litigation Trustee shall not be subject to an oversight board; (c) the Derivative Litigation Plaintiffs shall have consultation rights over any settlement, release, transfer or other disposition of the Derivative Litigation Claims; and (d) all Convenience Class Claims shall be treated as Class 5 General Unsecured Claims and the Convenience Class shall be eliminated.

- If the Debtors (a) file any chapter 11 plan other than the Agreed Plan without the prior written consent of the Derivative Litigation Plaintiffs (which may be provided by counsel thereto, and via e-mail) or (b) pursue any transaction, any motion, pleading, or public disclosure seeking to release, settle, transfer or otherwise encumber or impact in any respect the Derivative Litigation Claims, in whole or in part, without the prior written consent of the Derivative Litigation Plaintiffs (either (a) or (b), a "Debtor Fiduciary Pivot"), then:

    o The Debtor Fiduciary Pivot shall be deemed a material breach of the Settlement and the Debtors shall pay to the Derivative Litigation Plaintiffs liquidated damages in the amount of $500,000;

    o The Debtor Pivot shall be deemed a material breach of the Settlement and the Derivative Litigation Plaintiffs may immediately terminate the Settlement without any further notice or action, and the obligations of the Derivative Litigation Plaintiffs to pursue an Agreed Plan or Derivative Litigation Claims Assignment shall be null and void; and

    o The Derivative Litigation Plaintiffs' rights to object to or otherwise challenge the Debtor Fiduciary Pivot are fully reserved.

- On or before October 26, 2024, ClaimCo, LLC ("ClaimCo") or its designee may elect to receive an assignment, and the Debtors shall, subject to Court authority, assign and convey all of their rights and interests in the Derivative Litigation Claims to ClaimCo in exchange for the purchase of the Derivative Litigation Claims (the "Purchase Consideration").

- The Purchase Consideration shall consist of:

    - $2.5 million in Cash which shall fund the Convenience Class[7] and the wind down of the chapter 11 estates; and

    - Assumption of the Claims set forth in Exhibit B attached to the Settlement Term Sheet (the "Assumed Claims")[3] on terms mutually acceptable to each such claimant and ClaimCo or such other treatment with respect to the Assumed Claims as agreed between the Debtors and the Derivative Litigation Plaintiffs; *provided,* (a) Assumed Claims shall include all claims held by the Derivative Litigation Plaintiffs, their counsel, and entities affiliated therewith, other than any Claims filed by Kirk Hawkins; and (b) Assumed Claims shall not include any claims filed by Shanghai Shunxin Enterprise Management Consulting Co., Ltd.

- The Parties shall use commercially reasonable efforts to cause the Derivative Claims Assignment to close (the "Assignment Closing") on or before the effective date (the "Effective Date") of the Agreed Plan, which date may be extended from time to time with the mutual consent of the Parties, not to be unreasonably withheld.

- It shall be a condition precedent to the Assignment Closing that the following be provided for in Definitive Documentation and/or the Agreed Plan, as applicable:

    - Parties shall make reasonable best efforts to preserve insurance coverage for the benefit of Litigation Claims;

    - The Agreed Plan provides that the Litigation Claims shall be sold or be assigned to the Litigation Trust as of the effective date of the Agreed Plan; and

---

[7] "Convenience Class" shall mean Holders of General Unsecured Claims filed or scheduled in an amount of $100,000 or less or who otherwise elect to receive recovery in the Convenience Class.

32244747.1

9

- o   The Parties shall agree to provisions necessary to ensure the non-release of Litigation Claims.

- The Derivative Litigation Plaintiffs and their Related Parties (excluding Kirk Hawkins) shall be Released Parties under the Plan.

- Regardless of whether the Assignment Closing occurs, or this Motion is approved, unless the Assignment Closing does not occur or this Motion is not approved because of a Debtor Fiduciary Pivot, the definitive Settlement documentation shall:

    - o   Resolve all Plan and disclosure statement objections among the Parties;

    - o   Resolve standing to prosecute Derivative Litigation Claims; and

    - o   Provide that all Derivative Litigation Plaintiffs shall vote in favor and fully support the Agreed Plan.

## RELIEF REQUESTED

19.   By this Motion, the Debtors seek entry of the Proposed Order approving the Settlement reflected in the Settlement Term Sheet, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

20.   Bankruptcy Code Section 105(a) provides, in relevant part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.[8]

21.   Bankruptcy Code Section 363(b) provides, in relevant part:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.[9]

---

[8]   Fed. R. Bankr. P. 105(a).

[9]   Fed. R. Bankr. P. 363(b).

32244747.1

10

22. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.[10]

23. Settlements and compromises are "a normal part of the process of reorganization."[11] It is well settled that in order to "minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"[12] Accordingly, when required, "courts are able to craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, affect the result the [Bankruptcy] Code was designed to obtain."[13]

24. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.[14] "Ultimately, the decision whether or not to approve a settlement agreement lies within the sound discretion of the Court".[15] Pursuant to Section 105(a) of the Bankruptcy Code, the Court has authority to issue an order approving any such compromise or settlement.[16]

---

[10] Fed. R. Bankr. P. 9019(a).

[11] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968).

[12] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that "[s]ettlements are favored [in bankruptcy]"); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).

[13] *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

[14] *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (citation omitted)); *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

[15] *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).

[16] Fed. R. Bankr. P. 105(a).

25. In *Martin*, the United States Court of Appeals for the Third Circuit set forth a four-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[17]

26. Importantly, it is well-established that a settlement proponent need not convince the Court that a settlement is the best possible compromise, but only that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."[18]

27. In the Debtors' business judgment, the Settlement represents a fair compromise under the circumstances and is reasonable and in the best interests of the Debtors, their estates, creditors and other parties in these chapter 11 cases. The compromise embodied in the Settlement is the product of good-faith and arm's-length negotiations between the Parties, culminating in an agreement that falls within the range of reasonable litigation outcomes. The Settlement provides for a fair and practical resolution of the issues presented, which, if litigated, would consume the Debtors' limited resources and delay these chapter 11 cases. The Settlement satisfies the applicable *Martin* factors and, consequently, should be approved.

---

[17] *Martin*, 91 F.3d at 393. *See also In re Nutraquest*, 434 F.3d at 644–45 (applying *Martin*'s four-factor test to affirm district court's order approving settlement); *Key3Media*, 336 B.R. at 93 (holding that, when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

[18] *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008). *See also In re W.R. Grace & Co.*, 475 B.R. 34, 77–78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."); *Nortel*, 522 B.R. at 510 (same).

32244747.1

28. *First*, had the Parties failed to reach a consensual resolution, the Debtors might have been forced to litigate with the Derivative Litigation Plaintiffs with respect to the Standing Motion, Disclosure Statement, and Plan. In addition, the Derivative Claims Assignment path of the Settlement monetizes the Derivative Litigation Claims for the benefit of the estates without the need to engage in litigation with the Derivative Litigation Defendants, in accordance with Section 363(b) of the Bankruptcy Code. While the Debtors believe that they would ultimately prevail in such matters, the Debtors realize that success is not certain. It is possible that the Debtors would not prevail, which could jeopardize, among other things, the Plan and distributions to creditors. By contrast, the Settlement allows the Debtors to proceed without the uncertainty of litigation regarding the Disputed Issues and, if the Derivative Claim Assignment path is pursued, the Derivative Litigation Claims.

29. *Second*, absent the Settlement, resolving the Disputed Issues between the Parties would involve costly and time consuming litigation, and would likely necessitate one or more lengthy evidentiary proceedings before this Court. Such litigation would not only increase the administrative expense incurred by the Debtors' estates, but would also imperil confirmation of the Debtors' proposed Plan and distributions to creditors. The Settlement provides finality and certainty not only to the Parties, but also to all creditors in the Debtors' bankruptcy case, as well as conserves estate resources and facilitates an efficient timeline to confirmation. Likewise, the Derivative Claim Assignment path relieves the estates of engaging in complex litigation with the Derivative Litigation Defendants while at the same time maximizing recoveries to stakeholders.

30. *Finally*, the paramount interest of creditors (and other parties in interest in these chapter 11 cases) will undoubtedly be best served by approving the Settlement. Continued litigation with the Derivative Litigation Plaintiffs regarding the Disputed Issues would be value

destructive and drain the Debtors' estates, ultimately diminishing recoveries to creditors. The Settlement resolves all issues between the Debtors and the Derivative Litigation Plaintiffs regarding the Derivative Litigation Claims, Plan, and Disclosure Statement, and facilitates a path for confirmation of the Plan. Moreover, the Derivative Claim Assignment, if pursued, will result in the payment of $2.5 million in cash consideration to the estates to fund the Convenience Class and wind down of the estates as well as the assumption of the Assumed Claims without the need to litigate with the Derivative Litigation Defendants regarding the Derivative Litigation Claims.

31. Accordingly, the Debtors respectfully submit that the *Martin* factors are met, the Settlement falls well within the lowest "range of reasonableness," and, therefore, the Settlement, as memorialized in the Settlement Term Sheet, should be approved pursuant to Bankruptcy Code Sections 105(a) and 363(b), and Bankruptcy Rule 9019.

## **NOTICE**

32. Notice of this Motion has been provided by email or first class mail, as applicable, to: (a) the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the state attorneys general for states in which the Debtors conduct business; (f) counsel to the Derivative Litigation Plaintiffs; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated: October 11, 2024
Wilmington, Delaware

*/s/ Ashley E. Jacobs*

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Sean M. Beach (No. 4070)<br>Ashley E. Jacobs (No. 5635)<br>S. Alexander Faris (No. 6278)<br>Jared W. Kochenash (No. 6557)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: sbeach@ycst.com<br>ajacobs@ycst.com<br>afaris@ysct.com<br>jkochenash@ycst.com | **SIDLEY AUSTIN LLP**<br>Samuel A. Newman (admitted *pro hac vice*)<br>1999 Avenue of the Stars, Floor 19<br>Los Angeles, California 90067<br>Telephone: (310) 595-9500<br>Facsimile: (310) 595-9501<br>Email: sam.newman@sidley.com<br><br>*and*<br><br>Jeri Leigh Miller (admitted *pro hac vice*)<br>2021 McKinney Avenue, Suite 2000<br>Dallas, Texas 75201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400<br>Email: jeri.miller@sidley.com<br><br>*and*<br><br>Nathan Elner (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br>Email: nelner@sidley.com |

*Counsel for the Debtors and Debtors in Possession*

32244747.1