## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SEAPLANE DEBTOR 1, INC., *et al.*,[1] | Case No. 24-10703 (CTG) |
| Debtors. | (Jointly Administered) |

## FOURTH AMENDED JOINT CHAPTER 11 PLAN
## OF LIQUIDATION FOR SEAPLANE DEBTOR 1, INC. (F/K/A/ ICON AIRCRAFT, INC.) AND ITS DEBTOR AFFILIATES

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. Beach (No. 4070)
Ashley E. Jacobs (No. 5635)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Dated: October 28, 2024

**SIDLEY AUSTIN LLP**
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars, Floor 19
Los Angeles, California 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501

*and*

Jeri Leigh Miller (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (213) 981-3400

*and*

Nathan Elner (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.) (7443); Seaplane Debtor 2, Inc. (f/k/a IC Technologies Inc.) (7918); Seaplane Debtor 3, LLC (f/k/a ICON Flying Club, LLC) (6101); and Seaplane Debtor 4, LLC (f/k/a Rycon LLC) (5297). The Debtors' service address is c/o Armanino LLP, 231 Market Place, Suite 373, San Ramon, CA 94583-4743, Attn: Thomas McCabe, Chief Restructuring Officer.

# TABLE OF CONTENTS

ARTICLE I.   DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

   A.      Definitions .................................................................................................... 1

   B.      Rules of Interpretation .............................................................................. 14

   C.      Computation of Time ................................................................................. 15

   D.      Controlling Document ................................................................................ 15

ARTICLE II.   ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ........................................................................................................ 15

   A.      Administrative Claims ............................................................................... 15

   B.      DIP Claims ................................................................................................. 16

   C.      Professional Fee Claims ............................................................................ 16

     1.   Final Fee Applications ............................................................................... 16

     2.   Administrative Claims of OCPs ................................................................ 17

     3.   Post-Confirmation Date Fees and Expenses ............................................. 17

     4.   Professional Fee Reserve ........................................................................... 17

   D.      Priority Tax Claims .................................................................................... 17

   E.      U.S. Trustee Statutory Fees ...................................................................... 18

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 18

   A.      Classification of Claims and Interests ...................................................... 18

   B.      Treatment of Claims and Interests ............................................................ 19

     1.   Class 1 – Other Secured Claims ............................................................... 19

     2.   Class 2 – Other Priority Claims ................................................................ 19

     3.   Class 3 – Noteholders Claims ................................................................... 20

     4.   Class 4 – Convenience Claims .................................................................. 20

     5.   Class 5 – General Unsecured Claims ........................................................ 20

     6.   Class 6 – Intercompany Claims ................................................................ 21

     7.   Class 7 – Section 510(b) Claims ............................................................... 21

     8.   Class 8 – Interests ..................................................................................... 21

     9.   Class 9 – Intercompany Interests .............................................................. 22

   C.      Special Provisions Governing Unimpaired Claims ................................... 22

   D.      Elimination of Vacant Classes .................................................................. 22

   E.      Voting Classes; Presumed Acceptance by Non-Voting Classes ............... 22

   F.      Controversy Concerning Impairment ....................................................... 23

   G.      Subordination of Claims ............................................................................ 23

H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ........................... 23

I.    Reservation of Rights Regarding Claims and Interests. ............................................... 23

J.    Postpetition Interest on Claims .................................................................................... 23

K.    Insurance .................................................................................................................... 24

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 24

A.    General Settlement of Claims and Interests ................................................................ 24

B.    Sources of Consideration for Plan Distributions ........................................................ 24

C.    Sale Transactions ....................................................................................................... 24

D.    Wind-Down ................................................................................................................ 25

E.    Litigation Trust .......................................................................................................... 25

    1.    Establishment of the Litigation Trust ................................................................ 25

    2.    Transfer of the Litigation Trust Assets .............................................................. 26

    3.    Litigation Trust Agreement ............................................................................... 26

    4.    Purpose of the Litigation Trust .......................................................................... 26

    5.    Litigation Trustee .............................................................................................. 27

    a.    *Appointment of the Litigation Trustee* ............................................................. 27

    b.    *Responsibilities and Authority of the Litigation Trustee* ............................... 27

    c.    *Powers of the Litigation Trustee* ................................................................... 27

    d.    *Compensation of the Litigation Trustee* ......................................................... 28

    e.    *Retention and Payment of Professionals* ........................................................ 28

    6.    Termination of the Litigation Trust ................................................................... 28

F.    Limited Substantive Consolidation ............................................................................ 28

G.    Vesting of Assets ....................................................................................................... 29

H.    Preservation of Causes of Action ............................................................................... 29

I.    Corporate Action ........................................................................................................ 29

J.    Cancellation of Existing Securities and Agreements .................................................. 30

K.    Effectuating Documents and Further Transactions ..................................................... 30

L.    Section 1146 Exemption from Certain Taxes and Fees ............................................... 31

M.    Sale Order .................................................................................................................. 31

N.    Authority to Act ......................................................................................................... 31

O.    Settlement of Claims and Controversies ..................................................................... 31

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
AND INSURANCE POLICIES ................................................................................................ 32

A.    General Treatment ...................................................................................................... 32

B.    Rejection Damages Claims ......................................................................................... 32

C.      Reservation of Rights ........................................................................... 32

D.      Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases. 33

E.      D&O Policies ........................................................................................ 33

F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ...... 33

G.      Nonoccurrence of Effective Date ........................................................ 33

H.      Employee Compensation and Benefits.............................................. 34

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ........................... 34

A.      Distribution Record Date.................................................................... 34

B.      Compliance with Tax Requirements .................................................. 34

C.      Date of Distributions ........................................................................... 35

D.      Disbursing Agent.................................................................................. 35

E.      Powers of Disbursing Agent................................................................ 35

F.      Surrender of Instruments .................................................................... 35

G.      Delivery of Distributions .................................................................... 36

H.      Manner of Payment .............................................................................. 36

I.      Foreign Currency Exchange Rate ...................................................... 36

J.      Setoffs and Recoupments .................................................................... 36

K.      Minimum Distributions ....................................................................... 37

L.      Allocation of Distributions Between Principal and Interest.......... 37

M.      Distributions Free and Clear................................................................ 37

N.      Claims Paid or Payable by Third Parties ......................................... 37

    1.    Claims Paid by Third Parties ..................................................... 37

    2.    Claims Payable by Third Parties................................................ 38

    3.    Applicability of Insurance Policies ........................................... 38

ARTICLE VII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS ....................................................................................................... 38

A.      Allowance of Claims ............................................................................ 38

B.      Claims Administration Responsibilities............................................ 38

C.      Estimation of Claims ............................................................................ 38

D.      Adjustment to Claims Without Objection .......................................... 39

E.      Time to File Objections to Claims ...................................................... 39

F.      Disallowance of Late Claims .............................................................. 39

G.      Disputed Claims .................................................................................... 39

H.      Disputed Claims Reserve .................................................................... 40

I.      Amendment to Claims........................................................................... 40

J.   No Distributions Pending Allowance ................................................................ 40

K.   Distributions After Allowance ........................................................................ 40

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................... 40

A.   Conditions Precedent ..................................................................................... 40

B.   Waiver of Conditions ..................................................................................... 41

C.   Effect of Vacatur of the Confirmation Order ................................................. 41

D.   Votes Solicited in Good Faith ........................................................................ 41

ARTICLE IX.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ......................... 42

A.   Releases by the Debtors ................................................................................. 42

B.   Releases by Holders of Claims and Interests ................................................. 43

C.   Exculpation ................................................................................................... 44

D.   Injunction ...................................................................................................... 44

E.   No Discharge ................................................................................................. 45

F.   Release of Liens ............................................................................................ 45

ARTICLE X.   RETENTION OF JURISDICTION ................................................................ 45

ARTICLE XI.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .... 47

A.   Modification of the Plan ................................................................................ 47

B.   Other Amendments ........................................................................................ 48

C.   Effect of Confirmation on Modifications ....................................................... 48

D.   Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .. 48

ARTICLE XII.   MISCELLANEOUS PROVISIONS ............................................................. 48

A.   Debtors' Operation from Confirmation Hearing Through Effective Date ........ 48

B.   Immediate Binding Effect ............................................................................. 48

C.   Additional Documents .................................................................................... 49

D.   Substantial Consummation ............................................................................ 49

E.   Reservation of Rights ..................................................................................... 49

F.   Successors and Assigns .................................................................................. 49

G.   Determination of Tax Liabilities .................................................................... 49

H.   Dissolution of the Committee ........................................................................ 50

I.   Preservation of Books and Records ................................................................ 50

J.   Notices .......................................................................................................... 50

K.   Term of Injunctions or Stays ......................................................................... 51

L.   Entire Agreement .......................................................................................... 51

M.   Plan Supplement Exhibits ............................................................................. 51

N.     Governing Law ........................................................................................... 52

O.     Nonseverability of Plan Provision Upon Confirmation ............................... 52

P.     Closing of Chapter 11 Case ....................................................................... 52

**INTRODUCTION**

Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.), along with its debtor subsidiaries, (collectively, the "Debtors") propose this Plan under section 1121 of the Bankruptcy Code. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: http://cases.stretto.com/ICONaircraft.

Reference is made to the Disclosure Statement filed contemporaneously with the Plan for a discussion of the Debtors' history, business, capital structure, marketing and sale process, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

**ARTICLE I.**
**DEFINED TERMS AND RULES OF INTERPRETATION**

A.      **Definitions**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      "9019 Motion" means the *Debtors' Motion for Entry of an Order, Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement Regarding Certain Disputes with the Derivative Litigation Plaintiffs* [D.I. 542].

2.      "Administrative Claim(s)" means all Claims for costs and expenses of administration of these Chapter 11 Cases pursuant to section 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under 28 U.S. Code Chapter 123.

3.      "Administrative Claims Bar Date" means the deadline for Filing all requests for allowance and payment of Administrative Claims, which, except in the case of Professional Fee Claims, shall be thirty (30) days after the Effective Date. Professional Fee Claims shall be filed in accordance with the provisions of Article II.C. herein.

4.      "Affiliate" means any "affiliate," as defined in section 101(2) of the Bankruptcy Code, as if such entity was a debtor in a case under the Bankruptcy Code.

5.      "Allowed" means, (a) with respect to any Claim, except as otherwise provided in the Plan:  (i) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed; (ii) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; or (iii) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed) *provided* that with respect to a Claim described in clause (i) and (iii) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Debtors, the Plan Administrator, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court; and (b) with respect to any Interest, any Interest which is not a Disputed Interest, *provided* that, for the avoidance of doubt, the Interests held by the Derivative Litigation Plaintiffs are deemed to be Allowed.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is Filed by the Bar Date, is not considered Allowed and shall be expunged without further action by the Debtors or the Plan Administrator (as applicable) and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors to the Debtors, the Plan Administrator, or the Litigation Trustee (as applicable).   "Allow" and "Allowing" shall have correlative meanings.

6.      "Asset Purchase Agreement" means that certain *Asset Purchase Agreement by and among the Debtors and SG Investment America, Inc., dated as of May 1, 2024*, annexed as Exhibit 1 to the Sale Order, and as from time to time amended in accordance with the Sale Order or further order of the Bankruptcy Court.

7.      "Assignment Election" means an election, by the Derivative Litigation Plaintiffs, that the Derivative Litigation Claim Transaction shall be a Derivative Claims Assignment (as defined in the 9019 Motion).

8.      "Ballots" means ballots provided to each of the Holders of Claims entitled to vote to accept or reject the Plan.

9.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

10.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

11.      "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code

12.      "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as requested in

the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Notice of Bar Dates; and (III) Granting Related Relief* [Docket No. 95] and as ordered by the Bankruptcy Court in a Final Order granting the relief requested therein.  Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.C herein and shall not otherwise be subject to the Bar Date.

13.     "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.     "Cash" means cash and cash equivalents in legal tender of the United States of America.

15.     "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) claims pursuant to federal securities law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

16.     "Chapter 11 Cases" means these chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

17.     "Claim(s)" means any "claim," as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

18.     "Claims Objection Bar Date" means the date that is three hundred and sixty-five (365) days after the Effective Date, which date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator.

19.     "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

20.     "Committee" means an official committee of unsecured creditors appointed in these Chapter 11 Cases by the U.S. Trustee under section 1102(b) of the Bankruptcy Code, if any.

21.     "Committee Professionals" means any Retained Professional retained by the Committee, if any, in these Chapter 11 Cases.

22.    "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Code enters the Confirmation Order on the docket of these Chapter 11 Cases.

23.    "<u>Confirmation Hearing</u>" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

24.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the Derivative Litigation Plaintiffs in their discretion.

25.    "<u>Consummation</u>" means the implementation of the Plan, which is expected to occur on the Effective Date.

26.    "<u>Convenience Claim</u>" means a scheduled or filed General Unsecured Claim in amount of $100,000.00 or less; *provided*, that a holder of a General Unsecured Claim that is in an amount greater than $100,000 may voluntarily and irrevocably elect, as evidenced by a Convenience Claim Election Form submitted by the Convenience Claim Election Deadline, to have such Claim irrevocably reduced to an amount of $100,000 or less and treated as a Convenience Claim.  In the event that the Derivative Litigation Plaintiffs do not consummate the Derivative Claim Assignment or elect to make the Plan Sponsorship Contribution, and no other party provides the funding for the Convenience Claim class, Class 4 Convenience Claims shall receive the treatment of Class 5 General Unsecured Claims.

27.    "<u>Convenience Claim Election Deadline</u>" means the last date for Holders of General Unsecured Claims in an amount greater than $100,000 to elect to have such Claims treated as Convenience Claims, which shall be thirty calendar days after the Effective Date.

28.    "<u>Convenience Claim Election Form</u>" means the form, a form of which is attached to the Confirmation Order, pursuant to which Holders of General Unsecured Claims in an amount greater than $100,000 may voluntarily and irrevocably elect to have such Claims treated as Convenience Claims.

29.    "<u>Cure</u>" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

30.    "<u>D&O Policies</u>" means, collectively, each director and officer liability insurance policies, along with any other applicable insurance policies, including primary insurance, excess insurance, or tail insurance policies.

31.    "<u>Debtors</u>" means, collectively, Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.), Seaplane Debtor 2, Inc. (f/k/a IC Technologies Inc.), Seaplane Debtor 3, LLC (f/k/a ICON Flying Club, LLC), and Seaplane Debtor 4, LLC (f/k/a Rycon LLC), each as a debtor and debtor in possession.

32. "<u>Debtors Releases</u>" means the releases set forth in Article IX.A. herein.

33. "<u>Derivative Litigation</u>" means the pending litigation in the case styled *Asset Mgmt. Co. Venture Fund, L.P., et al. v. Shanghai Pudong Science & Tech. Inv. Co., Ltd.*, Case No. 2021-0475-JTL (Del. Ch. Ct. June 4, 2021).

34. "<u>Derivative Litigation Claims</u>" means the claims asserted in the Derivative Litigation and all Causes of Action arising from or related to the facts, circumstances, transactions, and occurrences that are the subject of the Derivative Litigation, including causes of action for equitable subordination or recharacterization.

35. "<u>Derivative Litigation Plaintiffs</u>" means the plaintiffs in the Derivative Litigation.

36. "<u>Derivative Litigation Claim Transaction</u>" means the consummation of the transactions contemplated in the Settlement (as defined in the 9019 Motion).

37. "<u>DIP Claim</u>" means a Claim under the DIP Facility.

38. "<u>DIP Credit Agreement</u>" means that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated April 4, 2024, by and among Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.), as borrower, each of the other Debtors, as guarantor, the DIP Agent, and the lenders party thereto.

39. "<u>DIP Facility</u>" means that certain $9 million secured debtor-in-possession multiple draw term loan credit facility issued pursuant to the DIP Credit Agreement.

40. "<u>DIP Facility Collateral</u>" means the collateral securing the DIP Facility, as set forth more specifically in the DIP Orders.

41. "<u>DIP Agent</u>" means FeiRen International Co., Ltd.

42. "<u>DIP Lender</u>" means FeiRen International Co., Ltd., along with its successors or assigns.

43. "<u>DIP Loan Documents</u>" means, collectively, the DIP Orders, the DIP Credit Agreement, and related security agreements and other documents required or requested by the DIP Secured Parties to be executed or delivered by or in connection with the DIP Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof).

44. "<u>DIP Orders</u>" means the interim and final orders entered by the Bankruptcy Court approving the DIP Facility in these Chapter 11 Cases.

45. "<u>DIP Secured Parties</u>" means, collectively, the DIP Agent and the DIP Lender.

46. "<u>DIP Secured Party Expenses</u>" means the "Lender Expenses" (as such term is defined in the DIP Credit Agreement) required to be paid under the terms of the DIP Credit Agreement.

47.    "<u>DIP Secured Party Professional(s)</u>" means Tian Yuan Law Firm, as counsel to the DIP Secured Parties, and The Rosner Law Group LLC, as local counsel to the DIP Secured Parties.

48.    "<u>Disbursing Agent</u>" means the Debtors, the Plan Administrator, Litigation Trustee (if any), or the Person or Entit(ies) selected by the Plan Administrator or Litigation Trustee (if any) as applicable, to make or facilitate the Plan Distributions.

49.    "<u>Disclosure Statement</u>" means the *Disclosure Statement for the Joint Chapter 11 Plan for ICON Aircraft, Inc. and its Debtor Affiliates*, dated June 3, 2024 (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

50.    "<u>Disputed</u>" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a Proof of Claim has been Filed in a liquidated and non-contingent amount and no objection to such Proof of Claim has been timely filed; (b) included in a Proof of Claim as to which an objection or request for estimation has been filed, or as to which the Debtors, the Plan Administrator, or other parties in interest in accordance with applicable law, retain the ability to interpose a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan or the Confirmation Order; or (c) which is otherwise disputed by the Debtors or the Plan Administrator (as applicable) in accordance with applicable law and for which the objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.  To the extent that a Claim or Interest is held by a Holder that is or may be liable to the Debtors, the Estates, the Plan Administrator, or the Litigation Trust, if any, as applicable, on account of a Retained Cause of Action (including, for the avoidance of doubt, any Claim or Interest held by any defendant in the Derivative Litigation but excluding, for the avoidance of doubt, any Interest held by Kirk Hawkins), such Claim shall be a Disputed Claim unless and until such Retained Cause of Action has been settled or withdrawn or has been determined by a Final Order.  Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

51.    "<u>Disputed Claims Reserve</u>" means a reserve established and maintained by the Plan Administrator for Holders of Disputed Claims to the extent such Claims are subsequently Allowed and entitled to distributions.

52.    "<u>Disputed Claims Reserve Amount</u>" means the amount of the Disputed Claims Reserve, which shall be subject to approval by the Bankruptcy Court.

53.    "<u>Distribution Record Date</u>" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall, except as specifically set forth herein, be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

54.    "<u>Effective Date</u>" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Article VIII.A herein,

have been satisfied or waived in accordance with the Plan.  Any action to be taken on the Effective date may be taken on or as soon as reasonably practicable thereafter.

55.     "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

56.     "Estates" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

57.     "Exculpated Party" or "Exculpated Parties" means, in each case in its capacity as such, (a) the Debtors; (b) the Debtors' directors and officers during these Chapter 11 Cases; (c) the Committee, if any; and (d) the Retained Professionals.

58.     "Executory Contract(s)" means a contract to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

59.     "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

60.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

61.     "General Unsecured Claim(s)" means any Claim other than a(n): (a) Administrative Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) DIP Claim; (e) Other Secured Claim; (f) Other Priority Claim; (g) Noteholder Claim; (h) Section 510(b) Claim; or (i) Intercompany Claim.

62.     "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

63.     "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtor, as the context requires.

64.     "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

32277091.2

65.     "<u>Insurance Policies</u>" means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating thereto, *provided* that it does not include any such policies that are, or have been, assumed and assigned to the Purchaser on or before the Effective Date pursuant to the Asset Purchase Agreement, the Sale Order, and section 365 of the Bankruptcy Code.

66.     "<u>Intercompany Claim</u>" means any Claim held by a Debtor against another Debtor.

67.     "<u>Intercompany Interest</u>" means an Interest in a Debtor that is held by another Debtor or an Affiliate of a Debtor.

68.     "<u>Interest(s)</u>" means equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be grated to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

69.     "<u>IRS Form</u>" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under the Plan.

70.     "<u>Law</u>" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

71.     "<u>Lien</u>" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

72.     "<u>Litigation Trust</u>" means the litigation trust to be established if a Litigation Trust Election is made, for the benefit of the Plan Beneficiaries, pursuant to Article IV.E herein and the Litigation Trust Agreement, which shall hold and administer the Litigation Trust Assets.

73.     "<u>Litigation Trust Agreement</u>" means the agreement which is to be filed with the Plan Supplement, that will establish and govern the Litigation Trust, which agreement shall be in form and substance acceptable to the Derivative Litigation Plaintiffs.  The Litigation Trust Agreement (if any) shall provide that (a) the Litigation Trustee may engage the Plan Administrator for administrative purposes, including for reconciling any Disputed General Unsecured Claims and making distributions to the Plan Beneficiaries and otherwise winding down the Chapter 11 estates; and (b) that the Litigation Trustee shall distribute proceeds from the Litigation Trust Assets in compliance with the classification and distribution priorities for Allowed Claims and Allowed Interests set forth in the Plan, unless otherwise ordered by the Bankruptcy Court.

74.     "<u>Litigation Trust Assets</u>" means, if a Litigation Trust Election is made, the following Retained Causes of Action: (i) the Derivative Litigation Claims; (ii) all Causes of Action arising from or related to the facts, circumstances, transactions, and occurrences that are the subject

of the Derivative Litigation, including causes of action for equitable subordination or recharacterization; (iii) any other Causes of Action implicating the Debtors' D&O Policies, except for any Causes of Action against Kirk Hawkins; and (iv) all proceeds and recoveries from and on account of (i), (ii), and (iii), including any payments or reimbursements on account thereof from the Debtors' D&O Policies.

75.    "Litigation Trust Election" means an election, by the Derivative Litigation Plaintiffs, that the Derivative Litigation Claim Transaction shall be consummated through the assignment of the Derivative Litigation Claims to the Litigation Trust. A Litigation Trust Election shall be deemed to have been made upon the earlier to occur of (a) November 25, 2024 (or such other date as agreed between the Plan Administrator and the Derivative Litigation Plaintiffs) and (b) the date on which the Derivative Litigation Plaintiffs and Debtors or the Plan Administrator, as applicable, agree that the Derivative Claim Assignment will not be consummated for reasons other than a Debtor Fiduciary Pivot (as defined in the 9019 Motion).

76.    "Litigation Trust Oversight Board" means the board that shall, solely in the event that both (a) a Litigation Trust Election is made and (b) the Derivative Litigation Plaintiffs make the Plan Sponsorship Contribution, oversee the Litigation Trust (if any), and that shall have such powers and authority as are provided in the Litigation Trust Agreement (if any) and as elsewhere set forth in this Plan, the Litigation Trust Agreement or the Trust Act. The Litigation Trust Oversight Board, if any, shall consist of five (5) Oversight Board Members, of which three (3) such members shall be appointed by the Derivative Litigation Plaintiffs (and may be any of the Derivative Litigation Plaintiffs); one (1) such member shall be the Plan Administrator, or its designee; and one (1) such member shall be a minority shareholder who is not a Derivative Litigation Plaintiff but is appointed by the Derivative Litigation Plaintiffs; *provided*, the Litigation Trust Oversight Board shall not hold consent rights or any other authority over claims against Kirk Hawkins.

77.    "Litigation Trustee" means the independent trustee which shall be appointed by the Debtors in the event that a Litigation Trust Election is made, which individual shall be acceptable to the Derivative Litigation Plaintiffs to act as trustee of and administer the Litigation Trust and take such other actions as may be authorized under the Litigation Trust Agreement, along with any successor thereto.

78.    "Net Sale Proceeds" means (a) the remaining net proceeds from the Sale (after giving effect to payment of any closing costs, Cure amounts, and other expenses, including taxes, as may have previously been agreed to between the Purchaser and the Debtors in the Asset Purchase Agreement; minus (b) the amounts necessary to satisfy or reserve for (i) Allowed Administrative Claims, including DIP Claims, Professional Fee Claims, Priority Tax Claims, and Statutory Fees, (ii) Other Secured Claims, (iii) Other Priority Claims, and (iv) the Wind-Down Budget; *provided*, that any amounts reserved but not used for subclauses (i) through (iv) above shall revert back to the Net Sale Proceeds.

79.    "Non-Released Parties" means any party who is (a) not a Released Party pursuant to Article IX.A. and IX.B. of this Plan, or (b) is included as a party to a Retained Cause of Action identified in the Plan Supplement. Notwithstanding anything to the contrary in this Plan or the Retained Causes of Action, (a) the Non-Released Parties shall include Shanghai Pudong Science

and Technology Investment Co., Ltd. ("PDSTI"), its current and former directors, officers, and employees, and Kirk Hawkins and (b) the Derivative Litigation Plaintiffs (other than Kirk Hawkins) shall be Released Parties.

80.    "Noteholder Claim(s)" means a Claim held by a Holder of a prepetition funded debt obligation or a convertible note obligation, as applicable, of the Debtors.

81.    "Notice and Claims Agent" means Stretto, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtors.

82.    "Notice of Non-Voting Status Package" means the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, including the Release Opt-Out.

83.    "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court by entry of an OCP Order.

84.    "OCP Order" means the order granting the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 93].

85.    "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

86.    "Other Secured Claim(s)" means any Claim against a Debtor where, pursuant to section 506 of the Bankruptcy Code, the Claim is (a) secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date.

87.    "Person" means a "person" as defined in section 101(41) of the Bankruptcy Code.

88.    "Petition Date" means April 4, 2024, which is the date on which the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

89.    "Plan" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto, which Plan shall be in form and substance reasonably acceptable to the Derivative Litigation Plaintiffs.

90.    "Plan Administrator" means the Person or Entity selected by the Debtors and appointed on the Effective Date to administer to the wind-up of the Debtors, including the making of any Plan Distributions that may arise after the Effective Date or any other duties or responsibilities set forth herein.

91. "Plan Assets" means (a) the Net Sale Proceeds; and (b) the net proceeds from the recovery from the Retained Causes of Action, if any.

92. "Plan Beneficiaries" means (a) the Holders of Allowed Noteholder Claims and General Unsecured Claims, who shall share *pro rata* in the Plan Assets; (b) to the extent the Plan Assets exceed the total Allowed Noteholder Claims and total Allowed General Unsecured Claims, the Holders of Allowed Section 510(b) Claims to the extent such Allowed Section 510(b) Claims are not subordinated to the same priority as, or a lower priority than, Allowed Interests (the claims in this subsection (b) and the foregoing subsection (a), the "Allowed Senior Claims"); and (c) to the extent the Plan Assets exceed the total Allowed Senior Claims, the Holders of Interests and Allowed Section 510(b) Claims that are subordinated to be the same priority as Interests. For the avoidance of doubt, no Holder of any Claim or Interest shall be a Plan Beneficiary to the extent that, and for so long as, the Claim or Interest of such Holder is a Disputed Claim or Interest.

93. "Plan Distribution" means a payment or distribution to Holders of Allowed Claims or other eligible Entities under this Plan.

94. "Plan Sponsorship Contribution" means a payment by the Derivative Litigation Plaintiffs in and amount and subject to terms reasonably acceptable to both the Derivative Litigation Plaintiffs and the Debtors, *provided* that any Plan Sponsorship Contribution may be financed by funding secured by litigation proceeds or otherwise entitled to a first right of recovery from the Litigation Trust Assets.

95. "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the Debtors no later than seven (7) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest. The Plan Supplement shall include, among other things, (a) the identity and compensation of the Plan Administrator; (b) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator, and the nature of any compensation for such insider; (c) the Litigation Trust Agreement; (d) the list of Retained Causes of Action, if any; (e) any amended organization documents as may be required to implement the Plan; and (f) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.

96. "Priority Tax Claim(s)" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

97. "Professional Fee Claim(s)" means a Claim (a) by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Confirmation Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable; or (b) by an OCP for compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date pursuant to the OCP Order.

98. "Professional Fee Reserve" means the reserve established and funded by the Debtor prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Retained Professionals.

99. "Proof of Claim" means a proof of Claim Filed against any of the Debtors in these Chapter 11 Cases.

100. "Purchaser" means SG Investment America, Inc.

101. "Related Party" means each of, and in each case in its capacity as such, current and former directors, managers, officers, the Special Committee, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

102. "Release Opt-Out" means the item set forth in each of the Ballots and Notice of Non-Voting Status Packages, which permit both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan the right to opt out of the Third Party Release set forth in Article IX.B herein.

103. "Released Party" means each of, and in each case solely in its capacity as such: (a) the Debtors; (b) the DIP Secured Parties but solely in their capacity as DIP Secured Parties and in no other capacity, including in their capacity as counterparties to the IP Agreement; (c) the Derivative Litigation Plaintiffs; and (d) each Related Party of the Debtors or the Derivative Litigation Plaintiffs, including any professional retained by the Debtors, DIP Secured Parties, or the Derivative Litigation Plaintiffs, in connection with these Chapter 11 Cases. Notwithstanding the foregoing, the definition of "Released Party" shall not include any Non-Released Parties. However, Kirk Hawkins and PDSTI, including its current and former directors, officers, and employees, shall not be a Released Party.

104. "Releasing Parties" means, collectively, and in each case solely in their respective capacities as such: (a) the DIP Secured Parties; (b) all Holders of Claims deemed hereunder to have accepted the Plan that have not filed an objection to the release contained in Article IX herein prior to the Voting Deadline; (c) all Holders of a Claim that vote to accept or reject the Plan and do not timely submit a Release Opt-Out; (d) each current and former Affiliate of each Person or Entity in clauses (a) through (c) solely to the extent such Affiliate may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (d); and (e) each Related Party of each Entity in clauses (a) through (d) solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clauses (a) through (d). However, Kirk Hawkins shall not be deemed a Releasing Party under this Plan.

105. "Retained Causes of Action" means the schedule of Causes of Action to be retained by the Debtors and not released pursuant to Article IX.A herein, which shall be filed with the Plan Supplement.

106.   "Retained Professional(s)" means a Person or Entity employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

107.   "Sale" means the transaction approved by the *Order (A) Authorizing and Approving the Debtors' Entry into the Purchase Agreement and Backup Purchase Agreement, (B) Authorizing the Sale of the Purchased Assets of the Debtors Free and Clear of All Claims, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 296] approving the Sale.

108.   "Sale Documents" means, collectively, the Asset Purchase Agreement(s) and all agreements, documents, and instruments related thereto, including the Sale Order.

109.   "Sale Motion" means the *Debtors' Motion for Entry of (I) an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Scheduling an Auction and a Hearing on the Approval of the Sale of all or Substantially All of the Debtors' Assets (C) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof, and (D) Granting Related Relief; and (II) an Order (A) Authorizing and Approving the Debtors' Entry into an Assets Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of all Encumbrances, (C) Approving the Assumption and Assignment of the Assumed Contracts, and (D) Granting Related Relief* [Docket No. 83].

110.   "Sale Order" means an order entered by the Bankruptcy Court authorizing the sale of all or substantially all of the Debtors' assets to the Purchaser(s) pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the Sale Motion and the Asset Purchase Agreement(s).

111.   "Schedules" means, collectively, the schedule of assets and liabilities, schedule of Executory Contracts and Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

112.   "Section 510(b) Claim(s)" means any Claim subordinated by order of the Bankruptcy Court pursuant to section 510(b) of the Bankruptcy Code.

113.   "Special Committee" means the special committee formed by the Board of Directors of Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.) in January 2024, which special committee consists of one independent director—Thomas G. FitzGerald—who is authorized to evaluate, negotiate, deem advisable, approve, execute, consummate and implement, or reject strategic options with respect to the Debtors to the maximum extent permitted by the Debtors' charters, bylaws, stockholder agreements, and/or other organizational documents.

114.   "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

115.    "<u>Transition Services Agreement</u>" means that certain *Transition Services Agreement by and between the ICON Aircraft, Inc. and SG Investment America, Inc., dated as of June 26, 2024* approved by the Bankruptcy Court [Docket No. 327].

116.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

117.    "<u>Unexpired Lease(s)</u>" means a lease to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

118.    "<u>Unimpaired</u>" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

119.    "<u>Voting Deadline</u>" means the date and time by which all Ballots to accept or reject the Plan must be received to be counted.

120.    "<u>Wind-Down</u>" means the post-Effective Date wind-down process by which the Plan Administrator or Litigation Trustee (if any), as applicable, shall seek to (a) liquidate any remaining assets of the Debtors and make distributions relating to the same; (b) complete any tasks required to wind-down the affairs of the Debtors; and (c) otherwise close these Chapter 11 Cases, as described in more detail in Article IV herein.

121.    "<u>Wind-Down Budget</u>" means the budget for all reasonable activities and expenses associated with the Wind-Down, including, but not limited to, post-Effective Date professional fees and expenses and insurance costs.

### B.    Rules of Interpretation

For the purposes of the Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to the Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified, references in the Plan to "D.I." refer to entries on these Chapter 11 Cases' docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and

the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.   Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.   Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement or the Plan and the Plan Supplement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

### A.   Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, and notwithstanding any prior Filing or Proof of Claim, Proofs of Claim seeking the allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Plan Administrator (as applicable) and their counsel, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such Proofs of Claim must be Filed and served on the requesting party within one hundred twenty (120) days after the Effective Date. After notice and a hearing, the Allowed

amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.D herein, Holders of Administrative Claims that do not File and serve a Proof of Claim or application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Plan Administrator, the Litigation Trust (if any), or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Court.**

## B.   DIP Claims

Except to the extent that a Holder of a DIP Claim agrees to a different treatment, each Holder of a DIP Claim shall receive, in full and final satisfaction of such Claim (1) the proceeds of the Sale or any other sale of the DIP Facility Collateral; and (2) in the event that the DIP Lender determines to exercise its right to credit bid resulting in a sale of the DIP Facility Collateral to the DIP Lender or its designee, ownership of such assets; *provided* with respect to clause (2) above, such satisfaction, compromise, settlement, release, and discharge of the DIP Claims shall be equal to and not exceed the amount of the applicable credit bid by the DIP Lender with respect to such assets.

The DIP Secured Party Expenses shall constitute Allowed Administrative Claims with priority over all administrative expenses of the kind specified in sections 503(b) and 507 of the Bankruptcy Code, except for the Professional Fee Claims, and shall be paid in full in Cash no later than the Effective Date and without any requirement to file a fee application with the Bankruptcy Court or for the Bankruptcy Court's review or approval. The DIP Secured Party Expenses shall not be discharged, modified, or otherwise affected by the Plan and shall not be subject to disgorgement, setoff, disallowance, impairment, challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, subordination, recharacterization, avoidance, or other claim or cause of action of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

## C.   Professional Fee Claims

### 1.   Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals (other than OCPs) for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals (other than OCPs) after notice and a hearing in accordance with the procedures established by the Bankruptcy Court, except to the extent such procedures are inconsistent with the express terms herein. Unless otherwise agreed to by the Debtors and the Retained Professional, the Plan Administrator shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve.

2.      Administrative Claims of OCPs

All requests for payment of Professional Fee Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Professional Fee Claims of the OCPs have not been Allowed pursuant to the OCP Order on or before the Effective Date, the amount of Professional Fee Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Plan Administrator (as applicable) from the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed pursuant to the OCP Order.

3.      Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or Plan Administrator (as applicable) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Plan Administrator (as applicable).  Upon the Confirmation Date, any requirement that the Retained Professionals comply with sections 327 through 331, 363, and 1003 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, Plan Administrator or the Litigation Trustee, if any (as applicable) may employ and pay any Retained Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

4.      Professional Fee Reserve

The Retained Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than two (2) Business Days before the Confirmation Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Retained Professionals' final request for payment of Filed Professional Fee Claims.  If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional.  The Debtors shall fund and reserve the Professional Fee Reserve until payment in full of all Allowed Professional Fee Claims.  If the Professional Fee Reserve is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims shall be paid by the Plan Administrator as Allowed Administrative Claims.  The Professional Fee Reserve cannot be used to pay any Secured, Priority, or Administrative Claims until all Professional Fee Claims are satisfied or otherwise reserved for.

**D.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Plan Administrator (as applicable) agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

### E.     U.S. Trustee Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, the Plan Administrator and the Litigation Trust (if any) shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Plan Administrator, the Litigation Trustee (if any), and each of the post-Effective Date Debtors, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Plan Administrator, and the Litigation Trustee (if any) shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.     Classification of Claims and Interests

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Class to the extent that any portion of the Claim or Interest qualifies within the description of such other Class.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Noteholder Claims | Impaired | Entitled to Vote |
| 4 | Convenience Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |

| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**    **Treatment of Claims and Interests**

1.    Class 1 – Other Secured Claims

(a)    *Classification*:  Class 1 consists of all Other Secured Claims against the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and Holders of Other Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.      <u>Class 3 – Noteholders Claims</u>

(a)      *Classification*:  Class 3 consists of all Noteholder Claims against the Debtors.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Noteholder Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Noteholder Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the Allowed General Unsecured Claims.  Notwithstanding anything in the Schedules, Disclosure Statement, Plan or Confirmation Order to the contrary, the Noteholder Claims are Disputed until such time as entry of a Final Order by the Bankruptcy Court (or other court of competent jurisdiction) ruling that the Noteholder Claims are Allowed.

(c)      *Voting*:  Class 3 is Impaired, and Holders of Noteholder Claims are entitled to vote to accept or reject the Plan.

4.      <u>Class 4 – Convenience Claims</u>

(a)      *Classification*:  Class 4 consists of all Convenience Claims against the Debtors.

(b)      *Treatment*:  Except to the extent that a Holder of a Convenience Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Convenience Claim, the Holders of Allowed Convenience Claims shall, on the latest of (i) the Effective Date, or as soon as practicably thereafter, (ii) the date on (A) the Derivative Claim Assignment, if any, is consummated or (B) the Plan Sponsorship Contribution is made, in each case as soon as reasonably practicable thereafter, and (iii) the date that is ten (10) business days after such Convenience Claim becomes an Allowed Claim, in full and final satisfaction of such Claim, receive payment in Cash equal to the lesser of their pro rata share of $2.5 million on account of the Allowed Convenience Claim and 100% of the Allowed amount of such Convenience Claim.

(c)      *Voting*:  Class 4 is Unimpaired, and Holders of Convenience Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 4 Convenience Claims are not entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – General Unsecured Claims</u>

(a)      *Classification*:  Class 5 consists of all General Unsecured Claims against the Debtors.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Plan Assets with the Allowed Noteholder Claims.

(c)    *Voting*:  Class 5 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims

(a)    *Classification*:  Class 6 consists of all Intercompany Claims.

(b)    *Treatment*:  On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any distribution, property, or other value under the Plan on account of such Claims.

(c)    *Voting*:  Class 6 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.    Class 7 – Section 510(b) Claims

(a)    *Classification*:  Class 7 consists of all Section 510(b) Claims against the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Section 510(b) Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, the Holders of Allowed Section 510(b) Claims that are not subordinated to the same or lesser priority as Interests shall be satisfied from the available Plan Assets remaining after satisfaction of the Allowed Noteholder Claims and the Allowed General Unsecured Claims in accordance with the treatment provided for Classes 3, 4, and 5 above; to the extent any Allowed Section 510(b) Claims are subordinated to be equal in priority to the Interests in Class 8, the Holders of such Allowed 510(b) Claims and the holders of Interests shall share *pro rata* in the available Plan Assets remaining after satisfaction of the Allowed Senior Claims in accordance with the provisions of this Article III.  The Allowed Section 510(b) Claims shall thereafter be canceled, released, and extinguished, and will be of no further force or effect.

(c)    *Voting*:  Class 7 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

8.    Class 8 – Interests

(a)    *Classification*:  Class 8 consists of all Interests in the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Interest and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, the Holders of Interests shall be satisfied from the available Plan Assets remaining after satisfaction

of the Allowed Senior Claims in accordance with the treatment provided for Classes 3, 4, 5, and 6 above. To the extent Allowed Section 510(b) Claims are subordinated to the same priority as Interests, the Holders of such Allowed Section 510(b) Claims and Allowed Interests shall share *pro rata* in the remaining Plan Assets available for Interests hereunder. The Interests and such Allowed Section 510(b) Claims shall thereafter be canceled, released, and extinguished, and will be of no further force or effect.

(c) *Voting*: Class 8 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 8 Interests Claims are not entitled to vote to accept or reject the Plan.

9.    Class 9 – Intercompany Interests

(a) *Classification*: Class 9 consists of all Intercompany Interests.

(b) *Treatment*: On the Effective Date, all Intercompany Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Intercompany Interests shall not receive any distribution, property, or other value under the Plan on account of such Interest.

(c) *Voting*: Class 9 is Impaired, and Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 9 Intercompany Interests Claims are not entitled to accept or reject the Plan.

## C.    Special Provisions Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Plan Administrator's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## D.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.    Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan.

F.     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

G.     **Subordination of Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, sections 509 or 510 of the Bankruptcy Code, or otherwise; *provided*, that any distributions pursuant to this Plan shall be made in accordance with any Bankruptcy Court order subordinating any Claim or Interest to any other Claim or Interest, respectively, pursuant to section 510(c) of the Bankruptcy Code.  Pursuant to section 510 of the Bankruptcy Code and applicable law, the Debtors or the Plan Administrator (as applicable) reserve the right, including, for the avoidance of doubt, after the Effective Date, to re-classify any Claim or Interest in accordance with any recharacterization or any contractual, legal, or equitable subordination thereof.  If any Holders of Allowed Section 510(b) Claims are subordinated to the same priority as Interests, such Claims will share *pro rata* in the Plan Assets available for distribution to Holders of Interests.  Any Holders of an Allowed Section 510(b) Claim or any other Claim that is subordinated or recharacterized to a lower priority than Interests shall not receive any Plan Assets unless and until Holders of Allowed Senior Claims, Interests and Allowed Section 510(b) Claims that are subordinated to the same priority as Interests are satisfied in full in accordance with the Plan.

H.     **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors hereby request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The Debtors reserve the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any voting Class that votes to reject the Plan.

I.     **Reservation of Rights Regarding Claims and Interests**.

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors' or the Plan Administrator's respective rights and defenses, whether legal or equitable, with respect to any Claim or Interest, including without limitation, all rights with respect to legal and equitable subordination or defenses to alleged rights of setoff or recoupment.

J.     **Postpetition Interest on Claims**

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, post-petition interest will not accrue or be payable on account of any Claim.

K.    **Insurance**

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    **General Settlement of Claims and Interests**

Pursuant to section 1123(b)(2) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions, releases, and other benefits provided pursuant to this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a creditor or an Interest holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable, and reasonable.

B.    **Sources of Consideration for Plan Distributions**

Subject to the provisions of the Plan concerning the Professional Fee Reserve and the Wind-Down Budget, the Debtors, Plan Administrator, or the Litigation Trustee, if any (as applicable) shall fund distributions under the Plan with (1) Cash on hand on the Effective Date; and (2) all other Plan Assets.  Distributions to Plan Beneficiaries shall occur *pro rata* from the Plan Assets.

C.    **Sale Transactions**

The Debtors engaged in a process for the sale of all or substantially all of their assets and sold substantially all of the Debtors' assets to the Purchaser pursuant to the Asset Purchase Agreement, as approved by the Bankruptcy Court through the Sale Order.

As set forth in the 9019 Motion, the Debtors engaged in a process for the sale of the Derivative Litigation Claims, yielding the settlement with the Derivative Litigation Plaintiffs described therein.  Pursuant to that settlement, the Derivative Litigation Plaintiffs may make either (a) an Assignment Election or (b) a Litigation Trust Election.  In the event that the Derivative Litigation Plaintiffs make a Litigation Trust Election, they may elect to make the Plan Sponsorship Contribution.  In the event that the Derivative Litigation Plaintiffs make either an Assignment Election or Plan Sponsorship Contribution, the proceeds thereof shall be used to fund the treatment of Class 4 Convenience Claims hereunder.

D.    **Wind-Down**

Following the Effective Date, the Plan Administrator shall wind-down the affairs and operations of the Debtors and their Estates, including, but not limited to: (1) liquidating any remaining assets (except, if a Litigation Trust Election is made, the Litigation Trust Assets); (2) prosecuting the Retained Causes of Action, if any, and any other claims or Causes of Action of the Debtors preserved herein (except, if a Litigation Trust Election is made, the Litigation Trust Assets); (3) Claims reconciliation and Allowance; and (4) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan.

The responsibilities and authority of the Plan Administrator shall include the following rights and responsibilities: (1) preserving and liquidating any remaining assets (except, if a Litigation Trust Election is made, the Litigation Trust Assets); (2) prosecuting the Retained Causes of Action, if any (except, if a Litigation Trust Election is made, the Litigation Trust Assets); (3) administering and paying taxes, including, among other things, (a) filing tax returns (to the extent not the obligation of the Purchaser), and (b) representing the interest and account of the Debtors before any taxing authority in all matters; (4) retaining and paying, without the need for retention or fee applications, professionals in connection with the Plan Administrator's performance of its duties under this Plan; (5) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (6) Filing an application for entry by the Bankruptcy Court of a final decree closing these Chapter 11 Cases; (7) making distributions to Professionals for Allowed Professional Fee Claims from the Professional Fee Reserve; (8) making distributions to Holders of Allowed Claims in accordance with the terms of this Plan; (9) procuring the necessary insurance to facilitate the Wind-Down, including appropriate D&O Policies; and (10) such other responsibilities as may be vested in the Plan Administrator pursuant to this Plan or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.    Notwithstanding anything to the contrary herein, prior to November 25, 2024 (or such other date as agreed between the Plan Administrator and Derivative Litigation Plaintiffs), the Plan Administrator shall not be obligated nor permitted to take any action with respect to any Retained Causes of Action which would, upon the making of a Litigation Trust Election, become a Litigation Trust Asset in accordance with Article IV.E hereof.

E.    **Litigation Trust**

1.    Effectiveness of this Article IV.E

This Article IV.E shall become effective only in the event that a Litigation Trust Election is made.  Any provision, obligation, or restriction herein requiring the appointment, consultation, or consent of the Litigation Oversight Board shall be effective only upon the making of a Plan Sponsorship Contribution.

2.    Establishment of the Litigation Trust

The Litigation Trust will be established pursuant to the Litigation Trust Agreement.  Upon establishment of the Litigation Trust, all Litigation Trust Assets shall be deemed transferred to the

Litigation Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

Promptly following (a) the making of a Litigation Trust Election, the Debtors or Plan Administrator, as applicable, shall file a notice of such election, which notice shall include (i) any changes made to the Litigation Trust Agreement filed with the Plan Supplement, and (ii) the identity and compensation of the Litigation Trustee; and (b) the making of a Plan Sponsorship Contribution, the Debtors or Plan Administrator, as applicable, shall file a notice of such Plan Sponsorship Contribution, which notice shall include the identities of the members of the Litigation Trust Oversight Board (each notice contemplated in (a) and (b) of the foregoing, a "Litigation Trust Notice").

Parties in interest may, until the date which is fourteen (14) days following the filing of a Litigation Trust Notice, object to the effectiveness of the contents of any such notice (the "Litigation Trust Notice Objection Period"). Upon the completion of the Litigation Trust Notice Objection Period, (a) if no such objections have been filed and properly served on the Debtors or the Plan Administrator, as applicable, the United States Trustee, and the Derivative Litigation Plaintiffs, the documents and appointments contemplated in such Litigation Trust Notice shall be deemed to be approved without any further approval or order of the Bankruptcy Court or (b) if any such objections have been filed, a hearing before the Bankruptcy Court shall be scheduled as soon as reasonably practicable thereafter, subject to the Bankruptcy Court's availability, to resolve any such objections.

### 3. Transfer of the Litigation Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Litigation Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided in this Plan. Upon completion of the transfer of the Litigation Trust Assets to the Litigation Trust, the Debtors will have no further interest in, or with respect to, the Litigation Trust Assets or the Litigation Trust.

### 4. Litigation Trust Agreement

Upon the approval of the Litigation Trust Agreement pursuant to the procedures set forth in Article IV.E.2 hereof, the Debtors shall execute the Litigation Trust Agreement. Any nonmaterial modifications to the Litigation Trust Agreement made by the Debtors will be ratified. The Litigation Trust Agreement will contain provisions permitting the amendment or modification of the Litigation Trust Agreement necessary to implement the provisions of the Plan.

### 5. Purpose of the Litigation Trust

The Litigation Trust shall be established for the purpose of (a) receiving and holding the Litigation Trust Assets; (b) commencing and pursuing the Retained Causes of Action included as Litigation Trust Assets; (c) maximizing recoveries for the benefit of the Plan Beneficiaries; and (d) transferring proceeds or recoveries on the Litigation Trust Assets to the Plan Administrator for distribution to Plan Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).

6. <u>Litigation Trustee</u>

a. *Appointment of the Litigation Trustee*

Upon the approval of the proposed Litigation Trustee pursuant to the procedures set forth in Article IV.E.2 hereof, the Litigation Trustee shall be deemed appointed to serve as the trustee and administrator of the Litigation Trust established pursuant to the Plan and the Litigation Trust Agreement.  The Litigation Trustee shall have general executive responsibility for the conduct of the affairs of the Litigation Trust in consultation with the Litigation Trust Oversight Board (or, where required by the Litigation Trust Agreement, act with the consent of the Litigation Trust Oversight Board) and shall be responsible for exercising the authority and performing the obligations of the Litigation Trust expressly provided for in the Litigation Trust Agreement, otherwise giving effect to the intents and purposes of the Litigation Trust Agreement, the other Litigation Trust Documents, the Plan and the Confirmation Order, and exercising the rights of trustees under the Trust Act, in each case, consistent with the terms of the Plan, the Confirmation Order, and the Litigation Trust Documents.

b. *Responsibilities and Authority of the Litigation Trustee*

Without limiting the generality of the preceding subsection, and in furtherance thereof, the responsibilities of the Litigation Trustee, in consultation with the Litigation Trust Oversight Board (or, where required by the Litigation Trust Agreement, with the consent of the Litigation Trust Oversight Board), shall be as set forth in the Litigation Trust Agreement, and shall include the following rights and responsibilities: (1) preserving, pursuing, and liquidating the Litigation Trust Assets; (2) retaining and paying, without the need for retention or fee applications, professionals in connection with the Litigation Trustee's performance of its duties under this Plan and the Litigation Trust Agreement; (3) making distributions to the Plan Administrator in accordance with the Plan and Litigation Trust Agreement; and (4) such other responsibilities as may be vested in the Litigation Trustee pursuant to this Plan, the Litigation Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.  The Litigation Trustee may not settle, compromise, release, dismiss or otherwise transfer the Derivative Litigation Claims without the express, written consent of a majority of the Litigation Trust Oversight Board.  In the event that the foregoing sentence is not effective pursuant to Article IV.E.1 hereof, the Litigation Trustee shall consult with the Derivative Litigation Plaintiffs prior to any compromise, release, dismissal, or transfer of the Derivative Litigation Claims.

c. *Powers of the Litigation Trustee*

The powers of the Litigation Trustee shall be as set forth in the Litigation Trust Agreement, and shall include the following in consultation with the Litigation Trust Oversight Board (or, where required by the Litigation Trust Agreement, with the consent of the Litigation Trust Oversight Board): (i) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Litigation Trustee with respect to its responsibilities; (ii) the power to pursue, prosecute, resolve, compromise, and settle any Retained Causes of Action included as Litigation Trust Assets, without notice to or approval from the

Bankruptcy Court, subject to the approval by a majority of the majority of the Litigation Trust Oversight Board.; and (iii) such other powers as may be vested in or assumed by the Litigation Trustee pursuant to this Plan, the Litigation Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

### d.   *Compensation of the Litigation Trustee*

The Litigation Trustee shall be compensated as set forth in the Litigation Trust Agreement. The Litigation Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Confirmation Order, and the Litigation Trust Agreement. The Litigation Trustee (and any Litigation Trustee retained professionals) shall not be required to File a fee application to receive compensation.

### e.   *Retention and Payment of Professionals*

The Litigation Trustee shall have the right, without Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Litigation Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Litigation Trust Agreement.

### 7.   Termination of the Litigation Trust

The Litigation Trust shall be dissolved upon the earlier of (1) the distribution of all recoveries on account of the Litigation Trust Assets to the Plan Administrator; and (2) the fifth anniversary of the creation of the Litigation Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Litigation Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Litigation Trust Assets and distributing the proceeds to the Plan Administrator, the term of the Litigation Trust may be extended by the Litigation Trustee for a specified term. Notwithstanding the foregoing, unless otherwise ordered by the Bankruptcy Court, the Litigation Trust shall be automatically terminated in the event that a final decree is entered closing these Chapter 11 Cases or these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code or dismissed.

### F.   **Limited Substantive Consolidation**

The Plan provides for the limited substantive consolidation of the Debtors' Estates, but solely for purposes of this Plan, including voting on the Plan by Holders of Claims and making any Plan Distributions to Holders of Claims. Specifically, on the Effective Date, (1) all assets and liabilities of the Debtors will, solely for voting and Plan Distribution purposes, be treated as if they were merged; (2) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors; (3) any Claims Filed or to be Filed in these Chapter 11 Cases will be deemed single Claims against all of the Debtors; (4) all transfer, disbursements, and Plan Distributions on account of Claims made by or on behalf of any of the Debtors' Estates will be deemed to be made by or on behalf of all of the Debtors' Estates; and (5) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors. Holders of Allowed

Claims entitled to Plan Distributions under this Plan shall be entitled to their share of assets available for distribution to such Claim without regard to which Debtor was originally liable for such Claim. Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Plan) affect the legal and corporate structures of the Debtors.

### G.    <u>Vesting of Assets</u>

Except as otherwise provided in this Plan or the Sale Order, on and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, any remaining assets, including all Plan Assets, claims, rights, Retained Causes of Action, Causes of Action, and any remaining property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Debtor or Litigation Trust, as applicable, free and clear of all Claims, Liens, encumbrances, charges, and other interests. Subject to the terms of this Plan, on and after the Effective Date, the Plan Administrator or the Litigation Trust, as applicable, may use, acquire, and dispose of any of the remaining assets, and may prosecute, compromise, or settle any Claims and Causes of Action, including the Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

### H.    <u>Preservation of Causes of Action</u>

Except as otherwise provided in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and vest in the Debtors or the Litigation Trust, as applicable, on the Effective Date. Except as may otherwise be expressly set forth in the Retained Causes of Action, no Causes of Action shall be retained or preserved against the Debtors' directors and officers. No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Plan Administrator or Litigation Trustee, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.

### I.    <u>Corporate Action</u>

On the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes unless the Plan Administrator and Litigation Trustee (if any) determine that dissolution can have any adverse impact on the remaining assets, including the Retained Causes of Action; *provided*, that neither the Debtors nor any party released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, that nothing in the Plan shall be construed as relieving the Debtors or the Plan Administrator (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Debtors' cases or the cases are dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Plan Administrator and Litigation Trustee (if any), as applicable, shall be authorized to act on behalf of the Estates, provided that the Plan Administrator and Litigation Trustee (if any) shall have no duties other than as expressly set forth in the Plan Administrator Agreement, Litigation Trust Agreement (if any), this Plan, or the Confirmation Order, as applicable.

On and after the Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sale director, or governing body of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors. The foregoing shall not limit the authority of the Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date. Following the Effective Date, the Plan Administrator is given full power of attorney and had the authority to execute and/or endorse documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation, including but not limited to, the filing of final tax returns and the dissolution of the Debtors.

### J.    Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### K.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors, the Plan Administrator, and the Litigation Trustee, if any (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan

and any transactions described in or contemplated by this Plan. The Debtors, the Plan Administrator, the Litigation Trustee (if any), all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### L. Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Litigation Trust Assets to the Litigation Trust, if any.

### M. Sale Order

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Orders or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### N. Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### O. Settlement of Claims and Controversies

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies held by the Debtors, the Derivative Litigation Plaintiffs and the DIP Secured Parties (but only in their capacity as DIP Secured Parties and not in any other capacity) that are settled by this Plan. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors and their Estates, and is fair, equitable and reasonable. Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.    General Treatment

On the Effective Date, except as otherwise provided herein (which exclusion includes the D&O Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Sale Documents or this Plan, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

### B.    Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.4 herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be forever barred from assertion and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, the Litigation Trust (if any), or any of their respective assets and properties.**

### C.    Reservation of Rights

Neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that

such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

### D.      Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Litigation Trustee (if any), or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Litigation Trustee (if any), and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### E.      D&O Policies

Each D&O Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the D&O Policies. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Policies.

### F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Modifications, amendments, supplements, and restatements to a prepetition Executory Contract and/or Unexpired Lease that have been executed by the Debtors during these Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease.

### G.      Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.      **Employee Compensation and Benefits**

Subject to the Asset Purchase Agreement and Transition Services Agreement, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims or as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Debtors, the Plan Administrator, or Litigation Trustee, if any (as applicable); *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

B.      **Compliance with Tax Requirements**

In connection with this Plan, any Person issuing any instrument or making any distribution or payment in connection therewith, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may require the intended recipient of such distribution to provide the withholding agent with an amount of Cash sufficient to satisfy such withholding tax as a condition to receiving such distribution or withhold an appropriate portion of such distributed property and either (1) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (2) pay the withholding tax using its own funds and retain such withheld property.  The distributing party shall have the right not to make a distribution under this Plan until its withholding or reporting obligation is satisfied pursuant to the preceding sentences. Any amounts withheld pursuant to this Plan shall be deemed to have been distributed to and received by the applicable recipients for all purposes of this Plan.

Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the withholding agent or such other Person designated by the Plan Administrator or Litigation Trustee (if any) the appropriate IRS Form or other tax forms or documentation requested by the Plan Administrator or Litigation Trustee (if any) to reduce or eliminate any required federal, state, or local withholding.  If the party entitled to receive such property as an issuance or distribution fails to comply with any such request for a one hundred eighty (180) day period beginning on the date after the date such request is made, the amount of such issuance or distribution shall irrevocably revert to the Plan Administrator or Litigation Trustee (if any), as applicable, and any Claim in respect of such distribution under this Plan shall be discharged and forever barred from assertion against such Debtor, the Plan Administrator, the Litigation Trust (if any), or their respective property.

Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Plan Distribution.

### C.  Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.  Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Plan Administrator.

### E.  Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F.  Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably

satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within ninety (90) calendar days after the mailing of such distribution, the Plan Administrator or Litigation Trustee (if any), as applicable, shall be authorized to cancel such distribution check and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable distribution or uncashed distribution, as applicable. If, after the passage of thirty (30) calendar days after such Filing, the payment or distribution on the Allowed Claim still cannot be made, then (1) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Plan Administrator or Litigation Trustee (if any), as applicable; and (2) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### H.    Manner of Payment

Except as specifically provided herein, at the option of the Debtors, the Plan Administrator, or Litigation Trustee (if any), as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### I.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, on the Petition Date.

### J.    Setoffs and Recoupments

The Debtors, the Plan Administrator, and the Litigation Trustee (if any), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or nonbankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors, the Estates, or the Litigation Trust (if any) may have against the Holder of such Allowed Claim; *provided*, that neither the failure to effect such a setoff or

recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Plan Administrator, or the Litigation Trust (if any) of any such claim the Debtors, their Estates, or the Litigation Trust (if any) may have against the Holder of such Claim.

### K.    Minimum Distributions

No payment of Cash in an amount of less than one hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Wind-Down Budget. If the Cash available for the final distribution is less than the cost to distribute such funds, the Plan Administrator may donate such funds to the unaffiliated charity of its choice.

### L.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### M.    Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan, including distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

### N.    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors, the Plan Administrator, and/or the Litigation Trust, if any (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors, the Plan Administrator, and/or the Litigation Trust, if any (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Plan Administrator without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that a notice of satisfaction shall be filed and served reflecting that a particular proof of claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors, the Plan Administrator, and/or the Litigation Trust, if any (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtors or Plan Administrator (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.     Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that a notice of satisfaction shall be filed and served reflecting that a particular proof of claim has been satisfied.

3.     Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Plan Administrator or Litigation Trust (if any), may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

A.     **Allowance of Claims**

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

B.     **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.     **Estimation of Claims**

Before or after the Effective Date, the Debtors or the Plan Administrator (as applicable) may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain

jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Bar Date (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

### F.    Disallowance of Late Claims

Except as provided herein or otherwise agreed to by the Debtors or the Plan Administrator (as applicable), any Holder of a Claim Filed, via Proof of Claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected claimant.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors or Litigation Trustee (if any) have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors, the Plan Administrator, or the Litigation Trust (if any) from such Holder have been paid.

Any Claim or Interest held by any defendant in the Derivative Litigation (but excluding, for the avoidance of doubt, any Interest held by Kirk Hawkins) shall be a Disputed Claim unless

and until such the Derivative Litigation Claims have been settled or withdrawn or has been determined by a Final Order. Claims that are Allowed by the Plan or that have been Allowed by a Final Order shall not be Disputed Claims.

### H.   Disputed Claims Reserve

The Debtors or the Plan Administrator (as applicable) shall establish and maintain a Disputed Claims Reserve, which shall hold amounts as necessary to reserve for each of the Disputed Claims to the extent such Disputed Claims are subsequently Allowed and entitled to distributions, or such lower amounts as may be determined by the Bankruptcy Court.

### I.   Amendment to Claims

Except as provided herein, on or after the Effective Date, without the prior authorization of the Bankruptcy Court or the Plan Administrator, a Claim may not be Filed or amended and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

### J.   No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

### K.   Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.   Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1.     The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.     The Confirmation Order shall have been entered and shall be in full force and effect.

3.     There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by this Plan from being consummated.

4.     The Professional Fee Reserve shall have been fully funded pursuant to the terms of this Plan.

5.     The Debtors shall have sufficient Cash to satisfy all DIP Secured Party Expenses upon the Effective Date.

6.     All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.     The Plan Administrator shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

8.     The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

9.     The Debtors shall have sufficient Cash such that the Debtors are not administratively insolvent and the Wind-Down Budget shall provide sufficient funding for the Plan Administrator and Litigation Trustee (if any) to discharge their duties as set forth in the Plan.

### B.    <u>Waiver of Conditions</u>

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A herein may be waived in whole or in part by the Debtors without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### C.    <u>Effect of Vacatur of the Confirmation Order</u>

If the Confirmation Order is vacated (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of the Parties or any other party in interest.

### D.    <u>Votes Solicited in Good Faith</u>

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    **Releases by the Debtors**

As of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party is deemed released by the Debtors and their estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, if any.  For the avoidance of doubt, nothing in these releases by the Debtors is a release of direct claims of third parties against any non-Debtor parties.

Each Person and Entity deemed to grant the Debtors releases shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE

**RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

B.    <u>Releases by Holders of Claims</u>

As of the Effective Date, each Releasing Party is deemed to have released each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person; *provided further*, that notwithstanding anything to the contrary in the Disclosure Statement and Plan, this provision shall not apply with respect to any unimpaired Claim until such unimpaired Claim has been paid in full in the Allowed amount of such Claim determined in accordance with applicable law, or on terms agreed to between the Holder of such Claim and the Debtors or the Plan Administrator, as applicable, at which time this provision shall apply in all respects as to the applicable unimpaired Claim. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order; or (3) the Retained Causes of Action, if any.

Each Person and Entity deemed to grant the releases described in this Section shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those claims

**or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

###### C.      Exculpation

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is exculpated from any Cause of Action for any Claim related to any act or omission occurring between the Petition Date and the Effective Date of the Plan in connection with, relating to, or arising out of, these Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, the Sale Motion, the Plan, the Plan Supplement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, these Chapter 11 Cases, the filing of these Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other act, occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

###### D.      Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by the Purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Litigation Trust (if any), the Released Parties, or Exculpated Parties (as applicable): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims

or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding any other indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Plan Administrator, the Litigation Trust (if any), and their respective affiliates, employees, advisors, officers and directors, or agents.

### E.    <u>No Discharge</u>

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims or Interests.

### F.    <u>Release of Liens</u>

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of an Other Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Other Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to,

these Chapter 11 Cases, the Sale, the Sale Documents, the Confirmation Order, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to each of the following:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.     Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.     Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.     Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.     Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.     Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.     Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action, if any.

8.     Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

10.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

32277091.2

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the Sale Documents, the Disclosure Statement, the Plan, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Adjudicate any and all disputes arising from or relating to distributions under the Plan.

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order.

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

20.     To recover all assets of the Debtors and property of the Debtors' Estates, wherever located.

21.     To hear and determine any Causes of Action that may be brought by the Plan Administrator or the Litigation Trust (if any), as applicable.

22.     To hear and determine any other rights, claims, or Causes of Action held by or accruing to the Debtors, the Plan Administrator, or the Litigation Trust (if any) pursuant to the Bankruptcy Code or any applicable state or federal statute or legal theory.

23.     Enter an order or final decree concluding or closing these Chapter 11 Cases.

24.     Enforce all orders previously entered by the Bankruptcy Court.

25.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     <u>Modification of the Plan</u>

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129

of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.     Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.     Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.     Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtors, reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.     Debtors' Operation from Confirmation Hearing Through Effective Date

During the period from the Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B.     Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, the Litigation Trust (if any), all Holders of Claims against and Interests in

the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### C.   Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator (as applicable), the Litigation Trustee (if any), all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### D.   Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.   Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.   Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### G.   Determination of Tax Liabilities

As of the Effective Date, the Plan Administrator will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates (to the extent not the responsibility of the Purchaser); *provided*, that the Plan Administrator shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms. The Debtors and the Plan Administrator (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Debtors' Estate for any tax incurred during the administration of these Chapter 11 Cases.

### H.     Dissolution of the Committee

On the Effective Date, any duly appointed official committee of unsecured creditors will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to these Chapter 11 Cases; *provided,* that, after the Effective Date, the Committee (if any) will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (2) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals, if any, shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) – (2).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.     Preservation of Books and Records

On the Effective Date, the Debtors and the Purchaser shall provide the Plan Administrator and the Litigation Trustee (if any) with timely access to all of the books and records of the Debtors in the Debtors' possession as of the Petition Date and the Effective Date.  The Debtors shall also instruct any third parties, including the Purchaser, or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator or Litigation Trustee (if any), and each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Plan Administrator and Litigation Trustee (if any) or further order of the Bankruptcy Court.

### J.     Notices

In order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.) 2141 ICON Way, Suite 100 Vacaville, California 95688 Attention: Jerry Meyers E-mail: jerry.meyer@iconaircraft.com | Sidley Austin LLP 1999 Avenue of the Stars, 19th Floor Los Angeles, California 90067 Attention: Sam Newman Email: sam.newman@sidley.com -and- Young, Conaway Stargatt & Taylor, LLP Rodney Square |

| | 1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Sean M. Beach<br>Email: sbeach@ycst.com |
|---|---|
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

## K.     Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that these Chapter 11 Case are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## L.     Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## M.     Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Plan Administrator's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of the Plan, the Plan shall control.  The

documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**N.** **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**O.** **Nonseverability of Plan Provision Upon Confirmation**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

**P.** **Closing of Chapter 11 Case**

After the full administration of these Chapter 11 Cases, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 28, 2024

Respectfully submitted,

 /s/ *Thomas McCabe*
By: Thomas McCabe
Chief Restructuring Officer
Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.)