IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SEAPLANE DEBTOR 1, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10703 (CTG)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 243 & 578 |

### DECLARATION OF THOMAS M. MCCABE
### IN SUPPORT OF CONFIRMATION OF THE FOURTH
### AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR SEAPLANE
### DEBTOR 1, INC. (F/K/A ICON AIRCRAFT, INC.) AND ITS DEBTOR AFFILIATES

I, Thomas M. McCabe, under penalty of perjury, declare as follows:

1. I am a Senior Director at Armanino LLP ("Armanino") and have served as the Midwest lead for Armanino's corporate finance and restructuring practice since 2023. Prior to joining Armanino, I served as a Managing Director of JS Held Financial (CFO) Advisory Services and before that, as a Managing Director of BDO (CFO) Advisory Services. In total, I have over thirty-five (35) years of diverse experience in finance, operations, and strategy, and specialize in assessing viable strategic and financial options, stabilizing and turning around underperforming businesses, and driving successful exits. I have a Masters of Business Administration from the Booth School of Business at the University of Chicago as well as an accounting degree from the University of Notre Dame. I am also a Certified Public Accountant in both Illinois and Pennsylvania.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Seaplane Debtor 1, Inc. (7443); Seaplane Debtor 2, Inc. (7918); and Seaplane Debtor 3, LLC (6101); and Seaplane Debtor 4, LLC (5297). The Debtors' service address is c/o Armanino LLP, 231 Market Place, Suite 373, San Ramon, CA 94583-4743, Attn: Thomas McCabe, Chief Restructuring Officer.

2. In March 2024, Armanino was hired to provide strategic restructuring advice to each of the above-captioned debtors (collectively, the "Debtors" or the "Company"). I was subsequently appointed as Chief Restructuring Officer ("CRO") of each of the Debtors.

3. In my capacity with the Debtors, I am familiar with the facts and circumstances set forth herein, which are based on my actual knowledge as well as information and advice provided to me by the Company's management, professionals, attorneys, and advisors. In addition, the statements made herein are based, in whole or part, upon my review of public and non-public documents and my discussions with other members of the Debtors' management team and advisors, on whom I have relied. I am generally familiar with the Debtors' business, financial condition, day-to-day operations, and the circumstances leading to the commencement of these chapter 11 cases (these "Chapter 11 Cases"). Except as otherwise noted, I have personal knowledge of the matters set forth in this declaration (this "Declaration") or have gained knowledge of such matters from the Debtors' employees or retained advisors in the ordinary course of my responsibilities. I believe, to the best of my knowledge, that the facts and circumstances set forth herein are true and correct. References to bankruptcy, the chapter 11 process, and related legal matters are based on my understanding of such in reliance on the explanation provided by, and the advice of, counsel to the Debtors.

4. I submit this Declaration in support of the Debtors' request for entry of an order confirming the *Fourth Amended Joint Chapter 11 Plan of Liquidation of Seaplane Debtor 1, Inc. (f/k/a/ ICON Aircraft, Inc.) and Its Debtor Affiliates* [D.I. 579] (as may be amended, supplemented, or modified from time to time, the "Plan").[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

5. Except as otherwise indicated, the matters set forth in this Declaration and in the liquidation analysis filed at D.I. 237, and as amended in D.I. 247 (as may be further amended and supplemented, the "Liquidation Analysis") are based on (i) my personal knowledge, information, and belief, grounded in my involvement in the Debtors' business, operations, and finances and my general experience as a restructuring professional; (ii) my review of relevant records of the Debtors kept in the ordinary course of business, and/or (iii) information supplied to me by the Debtor, including professionals and consultants engaged by the Debtors, or by other professionals at Armanino working directly with me or under my supervision, direction, or control.

6. I am generally familiar with the terms of the Plan, the documents attached as exhibits to the Plan, the Debtors' Disclosure Statement [D.I. 243], the proposed Confirmation Order [D.I. 578], the declaration of Thomas G. FitzGerald, independent director on the Debtors' board of directors (the "Board") and sole member of the special committee of the Board, in support of confirmation of the Plan filed contemporaneously herewith, and the requirements for confirmation of the Plan under section 1129 of title 11 of the United States Code (the "Bankruptcy Code").

7. Armanino has authorized me to make this Declaration. I am over the age of 18, and if called as a witness, I would testify competently to the facts and opinions set forth in this Declaration and in the Liquidation Analysis. I am not being compensated for this testimony other than through payments received by Armanino as a professional retained in these Chapter 11 Cases.

## I. Background

8. On March 2024, the Debtors engaged Armanino as their financial advisor to assist the Debtors in their evaluation of strategic alternatives and their potential transition into bankruptcy.

9. On April 4, 2024 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases in the United States Bankruptcy Court for the District of Delaware (the "Court") to pursue a value-maximizing sale process, implement an orderly wind down of the Debtors' affairs, and liquidate and distribute the Debtors' assets.

10. The Plan is the result of extension negotiations and mediation with the Derivative Litigation Plaintiffs and Kirk Hawkins (the "Interested Parties"). As a result of these efforts, the Debtors and the Interested Parties ultimately agreed to a settlement and compromise of certain claims, causes of action, and issues (the "Settlement"), which is reflected in the Plan.

11. Since its retention, Armanino has worked closely with the Debtors' management, consultants, and other professionals to aid the progression of these Chapter 11 Cases. Specifically, Armanino has assisted and advised the Debtors in connection with, among other things, (i) various financial and operational analyses, such as cash flow planning and vendor management; (ii) court-mandated reporting, such as schedules of assets and liabilities, statements of financial affairs, and monthly operating reports; (iii) communications, diligence requests, and negotiations with potential purchasers and with the Debtors' stakeholders, including the Interested Parties; and (iv) information-gathering and related analyses necessary to support the liquidation of the Debtors' assets, negotiation of the Settlement, and confirmation of the Plan.

**II.    The Plan Is in the Best Interests of All Creditors and Equity Security Holders Under Section 1129(a)(7) of the Bankruptcy Code.**

12. I understand that the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either (a) accept the Plan; or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

13. To analyze the Plan's compliance with section 1129(a)(7) of the Bankruptcy Code, I and other Armanino personnel working directly with me or under my supervision assisted the Debtors in preparing the Liquidation Analysis, which contains various estimates and assumptions, all of which are incorporated herein by reference.

14. As illustrated in the Liquidation Analysis, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code, because—due to higher anticipated costs to the estates in a hypothetical chapter 7 case as compared to under the Plan in these Chapter 11 Cases—all Holders of Impaired Claims and Interests either voted to accept the Plan or will receive property with a value as of the Effective Date not less than the value such Holders would receive in a liquidation under chapter 7.

15. Critically, the Debtors have already a consummated value-maximizing sale of substantially all of their assets, and the Debtors have reasonably projected the costs of administering the estates under the Plan, including for making disbursements to Holders of Allowed Claims or Interests. The Liquidation Analysis reflects the reasonable assumption that a chapter 7 trustee would earn a commission on the amount of his or her disbursements to parties in interest, in compliance with the statutory cap set forth in section 326(a) of the Bankruptcy Code. I believe that the costs incurred by a chapter 7 trustee would exceed the corresponding costs of administering the estates under the Plan.

16. In sum, because of this anticipated disparity in the total liquidation fees and costs, it is my opinion that holders of impaired claims and interests will receive property of equal or greater value, as of the Effective Date, under the Plan than they would receive in a chapter 7 case.

Executed this 28th day of October, 2024.            */s/ Thomas M. McCabe*
                                                                                         Thomas M. McCabe