# **EXHIBIT 1**

# **Joinder**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SEAPLANE DEBTOR 1, INC., *et al.*, | Case No. 24-10703 (CTG) |
| Debtors. [1] | (Jointly Administered) |
| | **Ref. No. 598** |

**JOINDER OF THE DERIVATIVE LITIGATION PLAINTIFFS TO THE DEBTORS'
MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF THE DISCLOSURE
STATEMENT ON A FINAL BASIS AND CONFIRMATION OF THE FOURTH
AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR SEAPLANE
DEBTOR 1, INC. (F/K/A ICON AIRCRAFT, INC.) AND ITS DEBTOR AFFILIATES
AND OMNIBUS REPLY TO OBJECTIONS TO CONFIRMATION AND 9019 MOTION**

The Derivative Litigation Plaintiffs hereby submit this joinder (the "Joinder") in the
*Debtors' Memorandum of Law in Support of Approval of the Disclosure Statement on a Final
Basis and Confirmation of the Fourth Amended Joint Chapter 11 Plan of Liquidation for Seaplane
Debtor 1, Inc. (F/K/A ICON Aircraft, Inc.) and Its Debtor Affiliates and Omnibus Reply to
Objections to Confirmation and 9019 Motion* [Docket No. 598] (the "Debtor Reply") in response
to *PDSTI's Omnibus Objection to (I) Debtors' Motion for Entry of an Order, Pursuant to Sections
105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement
Regarding Certain Disputes with the Derivative Litigation Plaintiffs and (II) Confirmation of the
Debtors' Third Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 584] (the "PDSTI

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Seaplane Debtor 1, Inc. (f/k/a ICON Aircraft, Inc.) (7443); Seaplane Debtor 2, Inc. (f/k/a IC Technologies Inc.) (7918); Seaplane Debtor 3, LLC (f/k/a ICON Flying Club, LLC) (6101); and Seaplane Debtor 4, LLC (f/k/a Rycon LLC) (5297).  The Debtors' service address is c/o Armanino LLP, 231 Market Place, Suite 373, San Ramon, CA 94583-4743, Attn: Thomas McCabe, Chief Restructuring Officer.

Objection").[2]  In support of the Debtor Reply[3] and in opposition to the PDSTI Objection, the Derivative Litigation Plaintiffs hereby state as follows:

## Joinder

1.       The Debtors have reached a significant breakthrough in these cases: following mediation, their Plan now reflects a consensual agreement on prosecution of the Derivative Litigation Claims and pays almost all non-insider third party creditors in full.  As has been made clear from the outset of these cases, the prosecution of the Derivative Litigation Claims—the Debtors' most valuable remaining asset—was a critical component of any potential restructuring or liquidation.[4]  The court-approved mediation between the Debtors and Derivative Litigation Plaintiffs has been successful, and the revised Plan is almost fully consensual.  The significance of reaching this milestone cannot be overstated.  The Derivative Litigation Plaintiffs accordingly join in the Debtors' Reply and, for the reasons set forth therein, request entry of orders approving the 9019 Motion and confirming the Plan.

2.       PDSTI—the insider defendant in the Derivative Litigation Claims accused of stealing the Debtors' business—stands out as the lone objecting party.  It complains that it offered the Debtors a better deal under which non-insider unsecured creditors receive more.  This argument

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtors' Motion for Entry of an Order, Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement Regarding Certain Disputes with the Derivative Litigation Plaintiffs* [Docket No. 542] (the "9019 Motion").

[3]   For the avoidance of doubt, the Derivative Litigation Plaintiffs' Joinder is limited to the arguments in the Debtor Reply that relate to the arguments set forth herein.

[4]   Crystallizing recoveries for estate stakeholders is a fundamental part of the chapter 11 process, especially when debtors have significant assets of unliquidated value. *See, e.g.*, Jan. 14, 2021 Hr'g Tr. 24:7—13 (Mr. Eisenberg: "One of the things that the debtors need to be able to do as part of the plan of reorganization is to be clear about what the allocation will be or what the recovery will actually be for the various opioid plaintiffs both public and private, current and future. It is an important and necessary aspect of being able to put the plan forward and go through solicitation.").

fails, not only because PDSTI's offer is inferior, but because the PDSTI Objection misstates the standard for evaluating a proposed settlement of estate claims.

3.   PDSTI offered the Debtors (a) $3 million in cash, and (b) the voluntary subordination of its own unsecured claims. PDSTI Obj. ¶ 27. In PDSTI's view, its offer is better than the Settlement because it provides an aggregate of $500,000 more to non-insider creditors, and shares such value *pro rata* with all holders of unsecured claims. PDSTI's oversimplification, however, proves misleading. It no doubt results from the awkward situation in which PDSTI now finds itself wherein it seeks to purchase claims which it only months ago, called "meritless and belied by the facts."[5] PDSTI's comparison assumes that the Derivative Litigation Claims are worthless, and that merely topping the $2.5 million cash that the Settlement provides to the estates renders its offer better as a matter of law. But this misses the point. In fact, the Settlement pays the overwhelming majority of non-insider creditors *in full*, giving them much more than a *pro rata* sliver of cash.[6] In addition, holders of certain larger claims against the Debtors (the "Assumed Claims") also have the opportunity to get paid in full (*i.e.*, potentially much more than the pro rata share of cash offered by PDSTI) by choosing to participate as a beneficiary in recoveries from the Derivative Litigation Claims in the event that a claim assignment is consummated.[7] PDSTI's comparison ignores this potential upside, and glosses over the fact that PDSTI's purchase

---

[5]   *PDSTI's Objection to the Motion of the Derivative Litigation Plaintiffs for Immediate Stay Relief and Authorization to Continue Prosecuting the Derivative Claims in Delaware Chancery Court* [Docket No. 341].

[6]   Section 1122(b) of the Bankruptcy Code provides that "a plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." 11 U.S.C. § 1122(b).

[7]   Despite PDSTI's assertion, PDSTI has no evidence whatsoever that the Derivative Litigation Plaintiffs have made "lowball" offers to the holders of Assumed Claims. PDSTI Obj. ¶ 28. To the contrary, the record demonstrates that PDSTI, the defendant in the Derivative Litigation, is the only creditor dissatisfied with the Settlement; no other creditor or party in interest has objected to its terms.

effectively caps stakeholder recovery on account of the Derivative Litigation Claims to a *pro rata* share of $3 million.[8]

4.      PDSTI's views on what maximizes estate value, of course, are inherently suspect. PDSTI is the defendant in the Derivative Litigation, which progressed meaningfully prepetition and in which the Delaware Chancery Court unequivocally denied PDSTI's motions to dismiss. That PDSTI tries to absolve itself from this litigation for a pittance of the potential judgment against it comes as no surprise. But regardless, it is the Debtors' decision and actual evidence supporting it that count. Here, the non-insider, independent director of ICON's Board and sole member its Special Committee concluded that "the Settlement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates" and it "was negotiated, proposed, and entered into by the Parties at arm's length, after significant negotiations." Debtor Reply, Exh. B, ¶¶ 11, 13.

5.      The PDSTI Objection also raises convoluted and specious arguments regarding the applicable standard under which the Settlement should be evaluated. PDSTI cites *In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. 415, 421-22 (B.A.P. 9th Cir. 2003) as "discussing the interplay between Bankruptcy Rule 9019 and Section 363 of the Bankruptcy Code." PDSTI Obj. ¶ 12. But in *In re Open Med. Inst., Inc.*, 639 B.R. 169 (9th Cir. B.A.P. 2022), the same court noted that settlements involving mutual compromise, as opposed to one-way claim transfers, were properly analyzed under Bankruptcy Rule 9019. Specifically, the *Open Medical* court explained that "*Mickey Thompson's* requirement that the bankruptcy court examine a compromise as a sale or

---

[8]   Even in the event that the Derivative Litigation Plaintiffs and Debtors agree to pursue the Settlement transaction which does not involve additional funding, and transfer the Derivative Litigation Claims to a litigation trust, the Settlement produces more value for the Debtors' estates than PDSTI's offer. In that context, PDSTI's offer is essentially a settlement offer of $3 million in exchange for a full release of liability on account of the Derivative Litigation Claims; this would have been an offensively low offer on a prepetition basis following the Chancery Court's denial of PDSTI's motions to dismiss, and remains so now. The Debtors are correct to reject it.

conduct an auction is inapplicable" where, as that court had held in a string of prior decisions, the transfer of a claim was "only one element of an integrated transaction" through which settlements "resolved mutual claims," and as such were not "one-way sale[s] requiring scrutiny under § 363." *Id.*, *see also In re Worldpoint Interactive, Inc.*, 335 Fed.Appx. 669 (9th Cir. 2009) (We are not persuaded by Fuchs' contention that the settlement amounted to an asset sale under [*Mickey Thompson*], because both parties to the settlement here released claims.") (internal citations omitted).

6.      As applied by the appellate court most familiar with it, the *Mickey Thompson* test that PDSTI cites only confirms that the Settlement is appropriately analyzed under Bankruptcy Rule 9019.  The Settlement ended the litigation between the Derivative Litigation Plaintiffs and the Debtors regarding the Standing Motion, and resulted in an agreed resolution with respect to claims brought by Kirk Hawkins in his individual capacity.[9]  It is thus the type of multilateral settlement that courts applying *Mickey Thompson* have consistently held is properly analyzed under Bankruptcy Rule 9019.

7.      Even if section 363 of the Bankruptcy Code requires application of some more stringent standard, which it does not, the Debtors exercised their business judgment and determined that the Settlement constitutes the highest or best offer for the estates.  This should come as no surprise.  Among other things, as noted above, the Debtors' larger unsecured non-insider creditors have the option to participate in future recoveries on account of the Derivative Litigation Claims.  PDSTI's "offer" merely caps recoveries to a pro rata share of $3 million.  The math is simple.  PDSTI's argument that the Debtors should have marketed the Derivative Litigation Claims is belied by the factual record of these chapter 11 cases which have, for their

---

[9]     *See Stipulation Granting Kirk Hawkins Limited Relief from the Automatic Stay* [Docket No. 553].

duration, been defined by a limited universe of three interested parties:  the Debtors, PDSTI, and the Derivative Litigation Plaintiffs.  PDSTI's complaints that the Derivative Litigation Claims were not "aggressively marketed in an active market"[10] not only misunderstand the appropriate standard applied when evaluating a proposed settlement under Bankruptcy Rule 9019, but also advocates for a process at odds with the factual record of these chapter 11 cases which, if undertaken, would have been an unjustifiable waste of estate resources.

8.      The Settlement passes muster under the standards applied under either section 363 of the Bankruptcy Code or Bankruptcy Rule 9019, and should be approved.  The Debtors' decision to pursue the Settlement with the Derivative Litigation Plaintiffs was not only far above the "lowest point in the range of reasonableness" given that it returns meaningful near-term value to estate stakeholders, ending costly litigation and providing for a path to concluding these chapter 11 cases, but also, for the reasons set forth herein, in the 9019 Motion and in the Debtor Reply, unquestionably constituted the sound exercise of the Debtors' business judgment.  Accordingly, the Derivative Litigation Plaintiffs respectfully assert that the PDSTI Objection should be overruled, that the 9019 Motion should be granted, and that the Court should enter an order confirming the Plan.

**Reservation of Rights**

9.      The Derivative Litigation Plaintiffs expressly reserve the right to (a) amend or supplement this Joinder and otherwise take any additional or further action with respect to the subject matter hereof, including appearing at the Confirmation Hearing, and (b) be heard before this Court to raise additional arguments or issues in connection therewith. Nothing herein is

---

[10]    PDSTI Obj. ¶¶ 14, 21.

intended to nor shall be construed as a waiver or limitation of any of the rights or remedies of the

Derivative Litigation Plaintiffs, all of which are fully preserved.


Dated: November 1, 2024
Wilmington, Delaware

/s/ *Joshua B. Brooks*
**LANDIS RATH & COBB LLP**
/s/ Richard S. Cobb
Richard S. Cobb (No. 3157)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: cobb@lrclaw.com
       brooks@lrclaw.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Jacob A. Adlerstein, Esq. (*pro hac vice*)
Jeffrey J. Recher, Esq. (*pro hac vice*)
Sean A. Mitchell, Esq. (*pro hac vice*)
Tyler F. Zelinger, Esq. (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: jadlerstein@paulweiss.com
       jrecher@paulweiss.com
       smitchell@paulweiss.com
       tzelinger@paulweiss.com

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Claudia R. Tobler, Esq. (*pro hac vice*)
2001 K. Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: ctobler@paulweiss.com

*Counsel to the Derivative Litigation Plaintiffs*